# Exhibit "B"



September 10, 2021

<u>**Via E-Mail Only**</u>
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:   **Board of Education of the City School District of the City of New York**
      **and**
      **United Federation of Teachers, Local 2, AFT, AFL-CIO**
      **(Impact Bargaining)**

Dear Counsel:

      Enclosed please find my Award in the above referenced matter.

      Thank you.

                                        Sincerely,

                                        Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

```
--------------------------------- X
In the Matter of the Arbitration
                                   X
        between
                                   X
BOARD OF EDUCATION OF THE CITY               Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF     X
NEW YORK
                                   X
          "Department"
                                   X
        -and-
                                   X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO              X
                                   
          "Union"                  X

--------------------------------- X
```

**APPEARANCES**

> **For the Department**
>   Renee Campion, Commissioner of Labor Relations
>   Steven H. Banks, Esq., First Deputy Commissioner
>   and General Counsel of Labor Relations
>
>
>
> **For the Union**
>   STROOCK & STROOCK & LAVAN, L.L.P.
>       Alan M. Klinger, Esq.
>
>
>   Beth Norton, Esq., UFT General Counsel
>   Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021.  The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic.  During that time, we have seen substantial illness and loss of life.  There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant.  Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible.  Yet, municipal employees have often borne great risk.  The Department and the UFT are no exception.  The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year.  Educators at all levels strove to deliver the best experience possible under strained circumstances.  For this

2

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning.  They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters.  In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate.  That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits.  This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.  That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

5

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

**I.** **Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

6

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

    A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)— with contraindications delineated in CDC clinical

considerations for COVID-19 vaccination.  Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for  conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

10

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. **Leave**

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

    i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

    ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

    iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

> vii.   All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. Separation

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

17

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK        )
                         )    ss.:
COUNTY OF NASSAU         )


I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


DOE.UFT.Impact Bargaining.awd

18