# Exhibit "E"

# Nelson Madden Black

475 Park Avenue South, Suite 2800
New York, New York 10016
Telephone: (212) 382-4300
nelsonmaddenblack.com

Sarah E. Child (212) 382-4306
schild@nelsonmaddenblack.com

New York City Commission on Civil Rights
22 Reade Street
New York, NY 10007

Re: Unlawful Denial of Mr. Gennaro Agovino's Religious Exemption Request

To whom it may concern,

We represent Mr. Gennaro Agovino, a 26-year civilian employee at the NYC Department of Correction ("DOC"), and write to demand that his religious exemption request from DOC's employee vaccination requirement be granted, as its denial is in violation of the First Amendment to the United States Constitution, among other laws.

On October 27, 2021 at 11:07 a.m., Mr. Agovino received an email from the DOC informing him that he was required to be vaccinated by October 29, 2021. A true and correct copy of this email is attached as Exhibit A. The email stated that he could request a reasonable accommodation **by the same day at 5 p.m.** This was the first time Mr. Agovino had heard about the vaccination requirement and the religious exemption process from the DOC. Mr. Agovino hastily compiled his materials and submitted them by the close of that business day. His application is attached as Exhibit B. At 4:42 p.m. on November 17, Mr. Agovino received an email indicating that his request was denied. The denial stated that accommodating Mr. Agovino would be an undue hardship to the DOC. It is attached as Exhibit C.

## Mr. Agovino's Religious Beliefs

To receive protection under the First Amendment, an individual must demonstrate that his beliefs are religious in nature and sincerely held. *Sherr v. Northport-East Northport Union Free School Dist.*, 672 F. Supp. 81, 92, 94 (E.D.N.Y. 1987). Religion "includes all aspects of religious observance and practice, as well as belief . . . ." 42 U.S.C.S. § 2000e(j). "The Supreme Court and Second Circuit have each declared religion to involve the 'ultimate concerns' of individuals, and the Second Circuit has stated that one touchstone of a religion is present where a believer will categorically disregard elementary self-interest rather than transgressing religious tenets." *Sherr*, 672 F. Supp. at 92 (citations removed); *id*. at 93-94 (finding plaintiffs' beliefs to be religious in nature when they "are replete with reference to 'God' and reveal that these beliefs are rooted in matters of 'ultimate concern' to the [plaintiffs], and plaintiffs' very refusal to have their children immunized and ensuing legal battle . . . manifests a dedication to their principles that may seem to an outsider to fly in the face of the[ir] best interests"). This may include an individual accepting an adverse employment action when the only alternative is to transgress his deeply held religious beliefs.

The Equal Employment Opportunity Commission has also issued guidance with respect to the definition of "religious" beliefs, explaining that "Title VII defines 'religion' very broadly. It

includes traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, and Buddhism. It also includes religious beliefs that are new, uncommon, not part of a formal church or sect, or only held by a small number of people." *What You Should Know: Workplace Religious Accommodation*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/laws/guidance/what-you-should-know-workplace-religious-accommodation (last visited November 21, 2021).

"Sincerity analysis," on the other hand, "seeks to determine the subjective good faith of an adherent . . . . The goal, of course, is to protect only those beliefs which are held as a matter of conscience." *Int'l Soc'y for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 441 (2d Cir. 1981). "Attempts to ascertain the sincerity of claims of religious belief must be undertaken with extreme caution." *Sherr*, 672 F. Supp. at 94. Significantly, "the verity of the underlying belief" is a forbidden inquiry. *Id.*; *Farina v. Bd. Educ.*, 116 F. Supp. 2d 503, 507-508 (E.D.N.Y. 2000) (citation omitted) ("[t]he Court must also take care to avoid making impermissible assessments of the credibility of the beliefs themselves. The beliefs need not be consistent with the dogma of any organized religion, whether or not the plaintiffs belong to any recognized religious organization").

One way to show that a belief is sincere is to demonstrate that the adherent "acts in a manner []consistent with that belief," *id.*, but even this is not required. Indeed,

> [a] person need not rigidly adhere to each and every tenet of his faith in order to qualify as a sincere believer. Religions, as most things, are practiced in degrees of adherence. . . . Plaintiffs must be free to follow those religious principles they deem most important and no inference of insincerity may be found to flow from their failure to follow the whole gamut of their religion's tenets. Were it otherwise, any deviation from established religious norms would brand the schismatic a heretic. It is not for the Court to determine how devout a follower [an applicant for exemption] is; rather, it need only determine that a sincere religious belief underlies their present claims.

*Allanson v. Clinton Cent. School Dist.*, No. 84-174, slip. op. at 15 (N.D.N.Y. May 7, 1984); *see* EEOC Guidance ("[a] religious practice may be sincerely held by an individual even if newly adopted, not consistently observed, or different from the commonly followed tenets of the individual's religion.").

Mr. Agovino's religious beliefs wholly satisfy both of these elements, and he is thus entitled to a religious accommodation. Mr. Agovino was baptized as a baby and has been a Christian his entire life. As discussed in his enclosed personal statement, Mr. Agovino has a sincerely held religious belief that he has been created in the image of God, as stated in Genesis 1:26. Therefore, any vaccine—such as the Pfizer or Moderna vaccines—that interferes with the function of the human immune system or gives genetic code instructions to a cell that do not originate from the DNA in that cell would, according to his sincerely held religious beliefs, interfere with God's creation. Mr. Agovino also objects to the Johnson & Johnson vaccine because it was manufactured using aborted fetal cells, and deriving any personal benefits from an abortion, no matter when it occurred, would violate his sincerely held religious beliefs in the sanctity of human life and the biblical principle that life begins at conception, as contemplated by Psalm 139:13-16 and Jeremiah 1:5. He believes that this would make him complicit in an abortion, which would violate one of the Ten Commandments that govern his behavior as a Christian, as articulated in Exodus 20:13 ("You shall not murder").

Furthermore, Mr. Agovino has not received any vaccinations, including the flu shot, since he

2

was a child, which also demonstrates the sincerity of his religious beliefs.

## **Appeal Process Option Two is Unconstitutional**

Regarding the appeal procedures discussed in the agreement between Mr. Agovino's union, the Service Employees International Union ("SEIU"), and the City of New York, attached as Exhibit D, Option Two is completely unlawful, as acknowledged by Corporation Counsel for the City of New York in *Keil v. City of New York*, 21-2711 (2d Cir. 2021) and *Kane v. City of New York*, 21-2678 (2d Cir. 2021).

Indeed, the criteria outlined in I.B.6 of Exhibit D are flagrantly unconstitutional on their face, as they require employees to submit a letter from their clergy and state that only individuals in recognized and established religious sects and whose religious leaders have not publicly spoken in favor of the vaccine can receive exemptions. Such requirements flout the First Amendment, all the case law interpreting the First Amendment from the Supreme Court to the Courts of this State, as well as the guidance from the Equal Employment Opportunity Commission on these issue. *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981) (disagreement among sect workers as to whether their religion made it sinful to work in an armaments factory irrelevant to whether belief was religious in nature because, "[t]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); *Sherr*, 672 F. Supp. at 81 (holding unconstitutional a statutory scheme that conditioned eligibility for a religious vaccination exemption on documentation from clergy and membership in an established religious group); *see also Farina*, 116 F. Supp. 2d at 507-508 (finding that sincerely held beliefs "need not be consistent with the dogma of any organized religion, whether or not plaintiffs belong to any recognized religious organization," that individuals asserting religious objections to a public school vaccination "had no obligation to provide documentation from [their] church regarding their beliefs," and that requirement imposed by the school secretary that such individuals "obtain a letter from [their church]" was "misplaced"); *What You Should Know: Workplace Religious Accommodation*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/laws/guidance/what-you-should-know-workplacereligious-accommodation (last visited November 21, 2021) ("Title VII defines 'religion' very broadly. It includes traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, and Buddhism. It also includes religious beliefs that are new, uncommon, not part of a formal church or sect, or only held by a small number of people.")[1]

## **Appeal Process Option One**

Mr. Agovino will avail himself of Option One, provided that the City-wide panel comply with the First Amendment, over and above Title VII, as "Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." *CBOCS W., Inc. V. Humphries*, 553 U.S. 442, 455 (2008). Indeed, "[i]n most of the cases alleging religious

---

[1] As a result of the unconstitutionality of the standards articulated above, the City of New York has agreed in both *Keil* and *Kane* to give fresh consideration to the plaintiffs' religious exemption requests in those cases and has even provided assurances that the hundreds of NYC Department of Education employees whose requests were denied will also get an opportunity for a more legally compliant process.

discrimination under Title VII, the employer is a private entity rather than a government, and the first amendment to the Constitution is therefore not applicable to the employment relationship." *Brown v. Polk Cnty.*, 61 F.3d 650, 654 (8th Cir.1995). When a litigant has mounted a constitutional challenge and not a Title VII challenge, however, a court is "constrained to apply" a constitutional standard "and not Title VII standards." *United Black Firefighters Ass'n v. Akron*, 976 F.2d 999, 1012 (6th Cir. 1992). Thus, any argument that granting Mr. Agovino a religious exemption request is an "undue hardship," such as the one outlined within his denial letter, is invalid as a matter of law.

Regarding the First Amendment, the DOC's policy must survive strict scrutiny–which means that it must be narrowly tailored to achieve a compelling governmental interest. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021). That is because the policy at issue is not generally applicable. *Id.* at 1876. Indeed, Mr. Agovino's denial letter unabashedly admits that "the public frequently visits detainees and interacts with Members of Service" and that "they may introduce COVID-19 into the facilities where it can be transmitted to Members of Service and detainees within our custody." This is precisely the type of situation the Supreme Court contemplated in *Fulton*, in which it stated that a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's interests in a similar way." *Fulton*, 141 S. Ct. at 1877. The DOC is not permitted under the First Amendment to infringe on Mr. Agovino's religious beliefs in the name of a compelling public health interest while simultaneously leaving "appreciable damage to that supposedly vital interest unprohibited." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 547 (1993). Its policy of allowing visitors from the public at large interact with both detainees and Members of Service certainly works appreciably more damage to its governmental interest than allowing Mr. Agovino to remain unvaccinated, particularly given the specific facts of his case. Mr. Agovino is a non-uniformed Member of Service who works in an office trailer on Rikers Island. He comes into contact with ten or fewer people daily. He does not work directly with detainees or enter the jails to perform his functions. In fact, he does not come into contact with any Members of Service who even go into the jails. He therefore presents less of a threat to detainees and Members of Service than members of the public, who are not required to be vaccinated. Mr. Agovino was able to fulfill his duties remotely during the height of the pandemic. He is also willing to wear a mask and engage in weekly testing.

Even assuming that the DOC's vaccination policy advances compelling government interests (a theory which is undermined by the underinclusiveness of the requirement, *Lukumi*, 508 U.S. at 579), the availability of accommodations for individuals with religious objections, such as working remotely, masking, and mandatory testing, demonstrates that that such a policy, as applied to Mr. Agovino, is not narrowly tailored to pursue such interests.

For these reasons, we respectfully request that you grant the appeal of Mr. Agovino's religious exemption request, or he will be forced to take further legal action.

Respectfully,

*Sarah E. Child*

Sarah E. Child, Esq.

Enclosures

4

# EXHIBIT A



Wed 10/27/2021 11:07 AM

DOC Staff Info

Reasonable Accommodations & NYC Workforce Vaccine Mandate

To ☐ DL - Everyone, DOC

## *On Behalf of the EEO Division*

**Due to the October 20, 2021 order of the commissioner of health and mental hygiene**, all **non-uniform staff a**re required to be vaccinated with at least one dose of a COVID-19 vaccines by **Friday, October 29, 2021**, at 5pm.  Proof of vaccination should be sent to the Human Resources division at crushcovidupdates@doc.nyc.gov by **5pm Friday October 29, 2021.** For staff who receive the first dose of a two-dose vaccine, proof of the second dose must be provided to the Human Resources division within 45 days of submitting proof of the first dose. Any unvaccinated non-uniform employees will be placed on unpaid leave until proof of vaccination is provided.

**All uniform staff assigned to CHS clinics, west facility, NIC infirmary, Elmhurst and Bellevue hospital wards are subject to this mandate and must get vaccinated with at least one dose of the COVID-19 vaccine by October 29, 2021** or be reassigned to a non-medical post. Proof of vaccination must be submitted to the Human Resource division at crushcovidupdates@doc.nyc.gov by 5pm Friday October 29, 2021.  For staff who receive the first dose of a two-dose vaccine, proof of the second dose must be provided to the Human Resources division within 45 days of submitting proof of the first dose.

**All other uniform staff** must submit proof of vaccination to the Human Resources division at  crushcovidupdates@doc.nyc.gov by 11:59pm on **November 30, 2021**.  For staff who receive the first dose of a two-dose vaccine, proof of the second dose must be provided to the Human Resources division within 45 days of submitting proof of the first dose. Beginning December 1, 2021, uniform employees who have not provided proof of vaccination will be placed on unpaid leave until the required proof of vaccination is provided. **A deadline for reasonable accommodation request submissions for uniform staff subject to the November 30, 2021 vaccine deadline will be provided at a later date.**

Employees who are required to be vaccinated with at least one dose of a COVID-19 vaccine by 5pm Friday, October 29, 2021 and need to request a Reasonable Accommodation must contact the Office of EEO by emailing EEODESK@DOC.NYC.GOV or calling 718-546-0861. For employees subject to the above deadline, **all reasonable accommodation requests must be received  by October 27, 2021 at 5PM.** Employees who file reasonable accommodations requests on or before October 27, 2021, must continue to submit weekly negative PCR test results while their accommodation request is under consideration or on appeal.

# EXHIBIT B



## CORRECTION DEPARTMENT
## CITY OF NEW YORK

## REQUEST FOR REASONABLE ACCOMMODATION

Form: RRA-1
Eff.: 09/14/15
Ref.: Dir. #2232R-B



### SECTION I - TO BE COMPLETED BY APPLICANT / EMPLOYEE

**A) Applicant / Employee's Data:**

Last Name: Agovino     First Name: Gennaro     Rank/Title: Dir Purchase     Shield/ID #: ▮

Address: ▮     Town/Borough: Douglaston

State/Province: NY     Postal Code: 11362     Telephone #: ▮

*Please check one below*

☐ Job Applicant     ☒ Department Employee

**B) Applicant information** *(complete this section only if you are applying for a job with the department or undergoing the selection process)*

Position / Title Applied for: _____

Location of Position *(if known):* _____

Part(s) of employment process for which an accommodation is requested   *(Check all that apply):*

☐ Job Application     ☐ Interview     ☐ Other: _____
*(Write in description)*

Department Contact Person *(if known):* _____     Telephone #: _____

**C) Complete this section only if current employee:**

Civil Service Title / Office Title : Administrative Procurement Analyst

Work Telephone Number: 546-8662

Work Assignment Location: 110 Construction Way, Rikers Island

**D) Type of Accommodation Sought** *(check one):*

☐ Disability
☒ Religious
☐ Victim of: Domestic Violence / Sex Offenses / Stalking
☐ Pregnancy, Pregnancy Related Conditions

**E) Reasonable Accommodation Request:**
*(Identify the situation which requires an accommodation. Be specific and attach additional sheets if necessary.)*

Is the condition for which you are requesting an accommodation?  *(Select one):*

☒ Permanent
☐ Temporary. If temporary, anticipated date accommodation is no longer needed _____.
☐ Unknown     **Date**

### SECTION-E  CONTINUED ON OTHER SIDE



| | CORRECTION DEPARTMENT<br>CITY OF NEW YORK | |
|---|---|---|
| | REQUEST FOR REASONABLE ACCOMMODATION | Form: RRA-1<br>Eff.: 09/14/15<br>Ref.: Dir. #2232R-B |



## SECTION I - TO BE COMPLETED BY APPLICANT / EMPLOYEE *(Continued)*

**E)  Reasonable Accommodation Request:**

**Describe the nature of the reasonable accommodation requested and how the accommodation will assist you to perform the essential functions of the position held or desired, or to enjoy the benefits and privileges of employment.** *(Attach additional sheets and present supporting documentation as appropriate).*

SEE ATTACHED 600AR INTRADEPARTMENTAL MEMORANDUM

If the need for an accommodation is not obvious, you may be required to provide documentation.

Verification by a health professional or a disability service provider (e.g. ACCESS-VR, NYS Commission for the Blind and Visually Impaired) for your reasonable accommodation must meet the following criteria:

a)  Documentation must provide diagnosis of mental or physical disability and include a recommendation for a specific accommodation.

b)  The documentation must be written on the official letterhead of the qualified health professional or professional health organization.

c)  The health professional's credentials must be identified.

d)  The documentation must be dated and signed by the health professional. Describe the limitations in detail as they currently exist and only in relationship to the specific job, and state whether the disability is permanent or temporary.

e)  If temporary, specify the date the disability is expected to no longer require accommodation.

f)  Indicate the extent to which the accommodation will permit the employee to perform the essential functions of the job or enjoy the benefits and privileges of employment.

Note: You are responsible for any expense incurred in providing medical documentation to the agency from your provider(s). If the agency determines that a second opinion is needed from a provider selected by the agency, the agency will be responsible for the expenses for additional information from that provider.

In addition, by executing this request, you grant the Equal Employment Opportunity Office permission to speak with your health care provider directly in the event that further details regarding your condition may be relevant to your request for an accommodation.

**Applicant / Employee's Signature:** *Germarie Agonine*   **Date:** 10/27/2021

*DO NOT WRITE BELOW THIS LINE*

## SECTION II - ADMINISTRATIVE USE ONLY

600ar

New York City Department of Correction - Intradepartmental Memorandum

| | | |
|---|---|---|
| Date | : | October 27, 2021 |
| To | : | EEO Reasonable Accommodation |
| From | : | Gennaro Agovino, Director of Small Purchases, CWOD, ID # 54387 |
| Subject : | | Reasonable Accommodation from the Vaccination Mandate |

Please be advised that I am requesting a Reasonable Accommodation from the Vaccination Mandate under Title VII of the Civil Rights Act of 1964 to excuse me from having to receive a COVID-19 vaccine by obtaining weekly testing and submission of negative PCR results which will not cause undue hardship and/or disruption to the Department and further request that no adverse employment action be taken against me on account of my sincerely held religious beliefs.

In good conscience I cannot receive a COVID-19 vaccine because to do so would violate my sincerely held Christian beliefs. The Bible teaches that God created human beings in his image (Genesis 1:26). This means that human life is sacred and abortion is against God's will. God created the human body and its immune system to function as He created it; in His likeness. Any vaccine that uses fetal cell lines from abortions to produce and manufacture a vaccine is against God's will. This applies to the Johnson & Johnson vaccine. Other current COVID-19 vaccines are against God's will because they interfere with the function of the human immune system by giving genetic code instructions to the cell that does not originate from the DNA in the cell. This applies to Moderna and Pfizer mRNA vaccines. God designed for DNA in the cell nucleus to give genetic code instructions, not the vaccines. Therefore, I firmly believe that mNRA vaccines violate God's will for humanity.

As a Christian, I believe that life begins at conception and ends at natural death. The Scriptures reveal that God know us even before we are conceived; (Psalms 139:13-16) "For you created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well. My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the Earth. Your eyes saw my unformed body; all the days ordained for me were written in Your book before one of then came to be." (Jeremiah 1:4-5) "The word of the Lord came to me, saying, 'Before I formed you in the womb I knew you, before you were born I set you apart; I appointed you as a prophet to the nations.'"

Hence, it is my sincerely held religious belief that human life is sacred and abortion is murder, a violation of one of the Ten Commandments given to Christians by God. (Exodus 20:13 'You shall not murder.") and for this reason, it would violate my beliefs to cooperate with or be complicit in abortion in any way. The such would constitute a sin against God The Father for which I would be held morally accountable by Him.

Thank you for your consideration.

Respectfully submitted,

*Gennaro Agovino*

# EXHIBIT C



**NEW YORK CITY DEPARTMENT OF CORRECTION**
**Vincent Schiraldi, Commissioner**

**Elizabeth Lundi, Esq.**
**Assistant Commissioner of EEO & EEO Officer**
**Equal Employment Opportunity**
**75-20 Astoria Blvd, Suite #390, East Elmhurst,**
**New York, 11370**
**718-546-0861, Fax 718-278-6027**

November 10, 2021

Re: <u>Reasonable Accommodation request – Letter of Determination</u>

Dear Gennaro Agovino:

The Office of EEO received your reasonable accommodation request on October 27, 2021 wherein you requested to be exempt from the COVID-19 vaccine due to your Christian faith. The Department of Correction ("the Department") has reviewed your request and cannot accommodate your request.

You requested to be exempt from the COVID-19 vaccine due to your religious beliefs. Your request cannot be accommodated because it presents an undue hardship to the Department as it presents a direct threat to members of service, the public and those detained by the Department.

The Department provides for the care, custody and control of persons accused of crimes or convicted and sentenced to one year or less of jail time. The facilities maintained by the Department are often confined spaces with narrow passages that do not always allow for social distancing. The layout and the duration of time people spend near each other in the facilities allows for the easy transmission of COVID-19. Due to this, many Members of Service have contracted COVID-19 during the pandemic, and some Members of Service and detainees have died due to the virus. Furthermore, the Department interacts with visiting members of the public on a regular basis. Since the public frequently visits detainees and interacts with Members of Service, they may introduce COVID-19 into the facilities where it can be transmitted to Members of Service and to detainees within our custody. The Department's primary responsibility is the care, custody and control of a captive population.

Since we are charged with the health and safety of detained individuals, COVID-19 presents a direct and unique threat to this Department. Getting vaccinated is an important measure to protect the health, safety and wellbeing of those in our custody, as well as the health, safety and wellbeing of fellow Members of Service. Asymptomatic transmission of COVID-19 is possible; an individual can transmit COVID-19 to others unknowingly and without any symptoms. Therefore, masks and weekly testing may be insufficient to control the spread of COVID-19 in the Department. Getting vaccinated will help the Department fulfill its mission of care, custody and control. The CDC has indicated that you are less likely to contract COVID-19 and/or become seriously ill from COVID-19 if you are vaccinated.

At the Department, many non-uniformed Members of Service work directly with detainees or enter the jails to perform their functions. Additionally, non-uniformed Members of Service work closely and in collaboration with uniformed Members of Service in non-jail and/or office settings. These uniformed Members of Service assigned to non-jail Commands are regularly redeployed to the jails to cover staffing shortages. Therefore, it is possible for non-uniformed Members of Service to transmit COVID-19 to these officers who could then introduce COVID-19 into the jail facilities

while they are redeployed. It is imperative that non-uniformed employees who perform functions in the jails or who work with uniformed Members of Service in non-jail settings also receive the COVID-19 vaccine to protect both their coworkers and detainees.

Please be advised that you may appeal this decision online through www.nyc.gov/vaxappeal.  You must appeal within three business days from receipt of this determination. For employees who do not have agency e-mail, you should notify the agency EEO Officer, Assistant Commissioner Elizabeth Lundi, of your desire to appeal within three business days of this determination, and the agency EEO Officer will file the appeal for you. If you are a union member, please also consult with your union to determine if you have a right to appeal this decision through arbitration.  A list of unions that may have arbitration agreements is included on a separate page with the waiver that must be completed in order to seek arbitration to appeal this determination.

Should you have any questions, please call Bijan Vafegh at (718) 546-0868 or Nancy Bleakley at (718) 546-0943.

Sincerely,

*Bijan Vafegh*

Bijan Vafegh, Esq., Disability Rights Coordinator, EEO

**Please note that the following unions have arbitration agreements:**

District Council 37, Teamsters Local 237, Organization of Staff Analysts, Uniformed Sanitationmen's Association, Local 831 IBT, SEIU Local 300, Sanitation Officers Association, Uniformed Sanitation Chiefs Association, CWA 1180, CSBA, Probation Officers, Local 246 SEIU, CWA Local 1181, CWA Local 1182, Doctors Council, Local 621, IUOE Local 30, IUOE Local 15, DC-9 Local 806, DC-9 Local 1969, NYSNA, Fire Alarm Dispatchers, Deputy Sheriffs, MMP, Steamfitters.

If you are a member of the above-mentioned unions and wish to appeal this decision through arbitration, please complete the below waiver:

I, [*name*], acknowledge that Department of Correction's EEO Office has denied my [*medical or religious*] accommodation request. I am aware that I am entitled to appeal this denial via the central Citywide appeal panel. I understand that by executing this Waiver I am agreeing to appeal the denial of my accommodation request to Scheinman Arbitration and Mediation Services (SAMS). I understand that the SAMS arbitration shall be conducted in accordance with [*insert applicable local agreement*]. The SAMS arbitration decision and award shall be final and binding and enforceable in any appropriate tribunal in accordance with Article 75 of the Civil Practice Law and Rules. As a condition of proceeding to SAMS arbitration on this appeal, I agree not to file any action or proceeding against either the City of New York or the Department of Correction or any and all past or present officials, employees or represents of the City of New York challenging the accommodation process and/or denial and do hereby acknowledge, release and discharge the City of New York and the Department of Correction from all liability, claims, demands, causes of action, obligations, damages and grievances that arise out of my request for an accommodation and the SAMS arbitration and award, except that nothing in this Waiver precludes me from commencing an Article 75 proceeding in connection with the SAMS arbitration and award.

# EXHIBIT D

## Memorandum of Agreement
## Between Local 300, Service Employees International Union (SEIU) (the "Union") and
## the City of New York (the "City")

**WHEREAS;** The Commissioner of the Department of Health and Mental Hygiene has issued an order (the "Order") mandating that all city employees be vaccinated against COVID-19 no later than 5pm on October 29, 2021 which was ratified by the Board of Health on November 1, 2021; and

**WHEREAS;** the parties desire to satisfy their bargaining obligations with regard to the processes and rules surrounding the implementation of the Order and desire to reach agreement regarding a process for requests for exemptions to this mandate and the leave status of those who do not comply with the mandate;

**NOW THEREFORE,** the parties agree as follows:

I.      **Exemption and Accommodation Requests & Appeal Process**

Employees who are seeking an exemption from the vaccine mandate based on religious and/or medical reasons shall follow their normal agency procedure for requesting a reasonable accommodation.  The Agency shall make a determination based upon applicable law. An employee who is unvaccinated and who is denied an exemption may appeal within three (3) business days of receipt of the agency determination by selecting one of the two options listed below:

A.  Employees may choose to appeal to a central City panel consisting of DCAS, Law and either DOHMH for medical exemptions or the City Commission on Human Rights (CCHR) for religious exemptions, subject to the terms set forth below:

   1.      The City panel will make appeal decisions on medical and religious requests as required by law;
   2.      The City panel shall decide the appeals based on the documentation submitted to the Agency and there shall be no live hearing;
   3.      If the appeal is granted, the Panel will determine the nature of the reasonable accommodation to be provided, based on the nature of the employee's request and input from the employing agency;
   4.      Employees who submitted their initial reasonable accommodation request to their Agency by end of day[1] on November 2nd, will remain working and on payroll, subject to weekly COVID testing, pending the initial determination of the Agency and/or the determination of the employee's appeal by the City panel[2]. Employees who submit

---

[1] For purposes of this agreement, "end of day" shall mean 11:59pm.

[2] To the extent such employees filed after October 27th and were placed on leave without pay on November 1st, they will be returned to payroll effective the day after execution of this agreement and will remain working and on payroll, subject to weekly COVID testing, pending the initial determination of the Agency and/or the determination of the employee's appeal by the City panel.

1

their request after November 2nd but by end of day on November 5th will remain working and on payroll, subject to weekly COVID testing, after the request has been submitted and pending the initial determination of the Agency, but may be placed on Leave without Pay pending appeal. Employees who submit their request after November 5th will be placed on Leave without Pay starting November 1st and will remain on such leave pending the determination of the employee's request.

5.  For those employees who have been placed on leave without pay status, if their appeal is granted by the City panel, the employee shall be granted excused leave with pay retroactive to the date they were placed on leave without pay.

B.  As an alternative to the above Option 1 appeal process, an employee seeking a medical or religious exemption to the vaccine mandate may choose to appeal to Scheinman Arbitration and Mediation Services (SAMS), subject to the terms set forth below:

1.  As a condition of filing an appeal to arbitration, employees shall be required to affirmatively waive their individual right to seek an accommodation through any other legal means or process or to bring a legal challenge to the process or the denial of an accommodation request, except the employee may bring an Article 75 appeal.

2.  Employees who submitted their initial reasonable accommodation request to their Agency by end of day on November 2nd, will remain working and on payroll, subject to weekly COVID testing, pending the initial determination of the Agency and/or the determination of the employee's appeal by SAMS. Employees who submit their request after November 2nd but end of day on November 5th will remain working and on payroll, subject to weekly COVID testing, after the request has been submitted and pending the initial determination of the Agency, but may be placed on Leave without Pay pending appeal. Employees who submit their request after November 5th will be placed on Leave without Pay starting November 1st and will remain on such leave pending the determination of the employee's request.

3.  If an employee's appeal is granted by SAMS, the employee shall be granted excused leave with pay retroactive to the date they were placed on leave without pay.

4.  Appeal decisions issued by SAMS will be final and binding and subject only to an Article 75 appeal.

5.  SAMS will make appeal decisions on medical requests based on the following medical reasons:

    a.  Full Medical Exemptions to the vaccine mandate shall only be considered where an individual has a documented contraindication such that an individual cannot receive any of the 3 authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one type of vaccine will be a precaution for the other type of vaccine, and may require consultation with an allergist.

    b.  Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

        i.  Within the isolation period after a COVID-19 infection;

2

    ii.  Within 90 days of monoclonal antibody treatment of COVID-19;

    iii.  Treatments for conditions as delineated in CDC clinical considerations, with understanding that CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

    iv.  Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

Length of temporary medical exemptions for these conditions may vary, and staff member must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described above.

6.    SAMS will only grant appeals based on religious exemptions if it is in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

7.    A panel of arbitrators identified by SAMS shall hear these appeals and may request that the employee or the agency submit additional documentation. The assigned arbitrator may also request information from City doctors as part of the review of the appeal documentation. The assigned arbitrator, at his/her discretion, will either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the panel requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The City will be represented at the hearing by attorneys from the Office of Labor Relations (OLR) and/or the NYC Law Department. The expedited hearing shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the Arbitrator's request must be provided to the agency at least one business day before the hearing or the issuance of the written decision without hearing.

8.    Appeal decisions shall be expedited without full Opinion.

9.    The City shall cover all arbitration costs from SAMS under this process. To the extent that the arbitrator requests additional medical documentation or information from the agency, or consultation with City doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the City.

10. An employee who is granted a medical or religious exemption or medical accommodation by SAMS shall be allowed to continue working and remain on payroll, subject to a weekly COVID testing requirement. No other exemption or reasonable accommodation alternatives shall be permitted.

## II.   Leave

A. Any unvaccinated employee who has not requested an exemption pursuant to Section I, or who has requested an exemption which has been denied, may be placed by the agency on leave without pay effective November 1, 2021 through November 30, 2021 except as provided under the terms of Section I above. Such leave may be unilaterally imposed by the agency and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

B. Except as otherwise noted herein, this leave shall be treated consistent with other unpaid leaves within the City for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health benefits. As with other City leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the agency prior to November 30, 2021 shall have a right of return to the same work location as soon as is practicable but in no case more than one week following notice and submission of documentation to the agency. With regard to employees who become vaccinated while on such leave without pay and provide appropriate documentation to the agency of a first dose between November 1, 2021 and November 5, 2021, the parties will meet and confer under the jurisdiction of Mediator Martin F. Scheinman to address how to deal with the leave of absence for the period of November 1 through the employee's vaccination date.

E. Pregnancy/Parental Leave
    i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before October 29, 2021 (e.g. has a due date no later than January 29, 2022), may utilize sick leave, annual leave, and/or compensatory time prior to the child's birth date, but not before October 29, 2021. Upon giving birth, they shall be eligible for paid family leave ("PFL") or FMLA in accordance with existing law and rules.
    ii. No documentation shall be necessary for this use of accrued leave, other than a doctor's written assertion that the employee is in her third trimester as of October 29, 2021.
    iii. In the event that an eligible employee exhausts accrued leave prior to giving birth and has not submitted proof of vaccination, that employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child.
    iv. If not otherwise covered by existing FMLA or leave eligibility, an employee who exhausts their leave before the birth of the child will be eligible to be in an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section).

4

v.      All other eligibility and use rules regarding use of sick leave, annual leave, compensatory time, paid family leave, and FMLA remain in effect.

F.   The parties agree that if an employee has a pre-scheduled use of annual leave scheduled after November 1st and the employee is on leave without pay due to the vaccine mandate through that period, that the annual leave will be restored for future use if the employee becomes vaccinated and returns to work. For example, if an employee is on leave without pay from November 1 through November 20 prior to being vaccinated, and had pre-scheduled vacation for the week of November 8, the five days of annual leave will be restored to the employee's bank. If an employee has a leave request which was approved prior to October 20th and covers November 1st and any consecutive days thereafter, the employee may continue on leave until they return to the office but must ensure vaccination information is submitted before their first day back at work in order to avoid being placed on Leave without Pay.

## III.   Separation

A.   During the period of November 2, 2021 through November 16, 2021 any employee who is on leave without pay due to vaccination status may opt to separate from the agency. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the agency which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the agency, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health benefits through June 30, 2022, unless they have health insurance available from another source (e.g., a spouse's coverage or another job).

B.   During the period of November 17, 2021 through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through June 30, 2022. In order to extend this leave pursuant to this Section and continue to receive the commensurate benefits, an employee must file a form created by the agency which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health benefits through June 30, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the agency before June 30, 2022, shall have a right to return to the same work location as soon as is practicable but in no case more than two weeks following notice to the agency. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by June 30, 2022 will be deemed to have voluntarily resigned.

C.  If an employee submits a reasonable accommodation and an appeal under Section I(A) or I(B) above is pending on or after November 10th, the applicable "opt-in" period under Section III(A) and (B) shall be one week after conclusion of the appeal, i.e. the employee must "opt-in" by end of day on the 5th business day after the appeal decision is issued.

D.  Beginning December 1, 2021, the agency will seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions contained herein, all parties retain all legal rights at all times relevant herein.

E.  Employees may not use accrued time to cover periods of leave without pay due to the vaccination mandate. However, if an employee files an application for retirement with the applicable retirement system, and signs a waiver established by the City to reflect that the employee is irrevocably resigning from employment, then the employee shall be permitted to exhaust applicable leave balances prior to retirement in accordance with ordinary agency practices.

IV.  The parties recognize that the above terms and conditions satisfy any bargaining obligation related to the impact and/or procedures related to implementation of the vaccination mandate. The undersigned Union agrees to withdraw from participation in Case No. BCB-4457-21 (INJ) and BCB-4458-21. The City acknowledges its obligation to bargain the impact and/or procedures related to implementation of the vaccination mandate, which have been addressed by the terms of this Agreement.

**FOR THE CITY OF NEW YORK**

BY: _____

RENEE CAMPION
Commissioner of Labor Relations

**FOR LOCAL 300, SEIU**

BY: _____

JAMES GOLDEN
President

Dated: ___11/4___, 2021

6