# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------ x

| | |
|---|---|
| THE NEW YORK CITY MUNICIPAL LABOR COMMITTEE, by its Chair HARRY NESPOLI; et al,<br><br>Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK, et al.,<br><br>Defendants. | AFFIRMATION OF DANIEL POLLAK IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>Index No. 151169/2022 |

------------------------------------------------------------------------ x

**DANIEL POLLAK**, an attorney admitted to practice before the Courts of the State of New York, affirms, pursuant to Rule 2106 of the Civil Practice Law and Rules ("CPLR") and under penalty of perjury, that the following is true and correct:

1. I am an Associate Commissioner with the New York City Office of Labor Relations ("OLR"). OLR represents the New York City Mayor in the conduct of all labor relations between the City of New York and labor unions representing employees of the City. I have held this title since October 2018. Prior to that date, and for approximately three years, I served as an Assistant Commissioner at OLR. In my current role, I participated in collective bargaining negotiations with the Plaintiff unions concerning the implementation of the COVID-19 vaccine mandate applicable to City employees. As such, I am fully familiar with the relevant facts of this case.

2. I submit this affirmation in opposition to Plaintiffs' application for a preliminary injunction and temporary restraining order.

3. The sources of the information contained in this affirmation are my own personal knowledge, the books and records of OLR, and information received by certain officers or agents of OLR or the City of New York.

**A. Impact Bargaining/Negotiations Concerning the COVID-19 Vaccine Mandate**

4. On October 20, 2021, the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), issued an order mandating COVID-19 vaccination for all City employees (the "City Order"). Prior to that, on August 24, 2021, the DOHMH Commissioner issued a separate order imposing the same requirements; namely, COVID-19 vaccination, on employees of the New York City Department of Education ("DOE") (the "DOE Order").[1]

5. Following the issuance of the DOE order, certain Plaintiff unions proceeded to mediation and arbitration which resulted in binding awards. Those unions were the United Federation of Teachers ("UFT"), the Council of School Supervisors and Administrators ("CSA"), Teamsters Local 237, and International Union of Operating Engineers ("IUOE") Local 891.

6. Certain other Plaintiff unions engaged in negotiations with the City regarding the DOE Order, and then following the City Order, which resulted in memoranda of agreement ("MOAs"). Those unions were District Council 37, the Uniformed Sanitationmen's Association, the Uniformed Sanitation Officers Association, the Uniformed Sanitation Chiefs Association, Teamsters Local 237 (for City Order), Communications Workers of America Locals 1180, 1181, and 1182, the Organization of Staff Analysts, the Civil Service Bar Association, the United Probation Officers Association, the Fire Alarm Dispatchers Benevolent Association, the

---

[1] The DOE Order was superseded by DOHMH Commissioner's Orders dated September 15, and 28, 2021, which expressly permitted for religious and medical accommodations, and extended the date for DOE employees to come into compliance with the Order.

Deputy Sheriffs Association, the New York State Nurses Association, Doctor's Council SEIU, SEIU Locals 246, 300, and 621, International Brotherhood of Electrical Workers Local 3, Boilermakers Local Lodge 5, New York City District Council of Carpenters, IUOE Locals 15 and 30, Locals 1969 and 806 of Painters District Council 9, Plumbers Local 1, Steamfitters Local 638, and the International Organization of Masters, Mates, and Pilots.

7. A third and final group of Plaintiff unions either did not come to agreement with the City or chose not to engage in any negotiations at all concerning the impact of the City Order, and instead, unsuccessfully challenged the vaccination mandate in the Courts. The majority of those unions represent much of the City's uniformed services, and include: the Police Benevolent Association ("PBA"), the Lieutenant's Benevolent Association ("LBA"), the Uniformed Firefighters Association ("UFA"), the Uniformed Fire Officers Association ("UFOA"), the Correction Officers Benevolent Association ("COBA"), the Sergeants Benevolent Association ("SBA"), the Detectives Endowment Association ("DEA"), the Correction Captains Association ("CCA"), the Assistant Deputy Warden/Deputy Wardens Association ("ADW/DWA"), and the Captains Endowment Association ("CEA").

8. The terms of the MOAs applicable to DOE largely mirrored the arbitration awards issued with respect to the UFT, CSA, Teamsters Local 237, and IUOE Local 891. Namely, they provide that unvaccinated employees who do not receive a medical or religious accommodation exempting them from the DOE Order can elect to either (1) separate from service with an incentive and retain health benefits through September 5, 2022, or (2) remain on an extended unpaid leave through September 5, 2022 while receiving health benefits and retaining the right to return should they become vaccinated or the DOE order is vacated.

9. The terms of the MOAs regarding the City order had certain variations, but similarly provided that an unvaccinated employee can elect to either (1) separate from service with an incentive and retain health benefits through June 30, 2022, or (2) remain on an extended unpaid leave through June 30, 2022, while receiving health benefits and retaining the right to return should they become vaccinated or the City Order is vacated.

10. If an unvaccinated employee (who did not otherwise obtain a medical or religious accommodation) did not select either of these options by a set deadline, the Awards/MOAs provide that "[b]eginning December 1, 2021, the [agency] will seek to unilaterally separate" such employees.

11. As Plaintiff unions aptly (and repeatedly) point out, the awards reserved to the parties "all legal rights at all times relevant herein." That, plainly, includes the City and DOE's right to unilaterally separate employees who do not satisfy a condition of employment; here, COVID-19 vaccination.

12. City agencies routinely separate employees, without disciplinary charges or hearings, for failing to meet a condition of employment. This includes employees who do not meet statutory residency requirements or who fail to maintain a license or certification required to perform their job. For example, numerous City jobs require a commercial driver's license ("CDL"). At both the Department of Transportation ("DOT") and Department of Environmental Protection ("DEP"), employees in such jobs who lose their CDL will be placed on leave without pay for some period of time (6 months at DOT, and one year at DEP), after which they will be separated if they fail to regain their CDL by that date.

13. The City's automated personnel system, called NYCAPS, contains codes agencies must enter to indicate the reason for termination of an employee. One such code is for

failure to maintain job requirements. Since 2017, 189 City employees have been separated with this reason code.

14. Plaintiffs, in paragraphs 67-77 of the Complaint, insinuate that the City was not going to engage in impact bargaining, and only did so once the Municipal Labor Committee ("MLC") demanded it. Not so. On October 20th (the same day the City Order was publicly announced) OLR sent letters to every union inviting them to contact OLR to engage in impact bargaining. OLR also informed all unions that the City was willing to bargain about alterations to the default policy concerning the reasonable accommodation ("RA") and leave without pay ("LWOP") processes that were issued on October 20th. MLC subsequently (on October 25th), brought two proceedings before the New York City Office of Collective Bargaining, claiming that the City failed to bargain with the unions in good faith with respect to the City Order. The Board of Collective Bargaining denied requests for leave to file for injunctive relief, and the underlying proceedings are currently ongoing.

### B. The Affected Employees

15. To be clear, at issue here is the small subset (approximate 0.5%) of the City's nearly 400,000 employee workforce who: (1) have not sought or been denied, including through an available appeal process, a medical or religious accommodation exempting them from the DOE and City Orders; (2) have refused to avail themselves of *any* of the leave or separation options negotiated by their unions; and (3) have not taken *any* steps to come into compliance with the DOE or City Orders despite being provided with months of health insurance while on unpaid leave and performing no work for the City. These are employees who have simply chosen no option at all.

- 6 -

16. The numbers are as follows: as of January 31 there were approximately 2,300 employees in this group. As of February 9, that number is down to approximately 1,600. That number may drop even further prior to February 11.

Dated:    New York, New York
          February 10, 2022

                                                              */s/ Daniel Pollak*
                                                              DANIEL POLLAK