UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

NEW YORKERS FOR RELIGIOUS LIBERTY, INC,
GENNARO AGOVINO, CURTIS CUTLER, LIZ
DELGADO, JANINE DEMARTINI, BRENDAN
FORGARTY, SABRINA KOLENOVIC, KRISTA O'DEA,
DEAN PAOLILLO, DENNIS PILLET, MATTHEW
RIVERA, LAURA SATIRA, FRANK SCHIMENTI,
JAMES SCHMITT, individually and on behalf of all other          No.: 22-cv-752
persons similarly situated,

                                                      Plaintiffs,

                        - against -


THE CITY OF NEW YORK; ERIC ADAMS, in his
official capacity as Mayor of the City of New York, DAVE
CHOKSHI, in his official capacity as Health Commissioner
of the City of New York, and ROBERTA REARDON, in
her capacity as New York State Commissioner of Labor
,
                                                      Defendants.
--------------------------------------------------------------------- x

### DEFENDANTS CITY OF NEW YORK, ERIC ADAMS AND DAVE CHOKSHI'S MEMORANDUM OF
### LAW IN OPPOSITION TO PLAINTIFFS'
### MOTION FOR A PRELIMINARY INJUNCTION

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants City, Adams and Chokshi
100 Church Street
New York, New York 10007

*Of Counsel:*
Lora Minicucci
Bilal Haider

# PRELIMINARY STATEMENT

Since September, there have been nearly a dozen lawsuits commenced in state and federal courts challenging the vaccination mandates applicable to City and DOE and employees. All of these challenges have included requests for preliminary injunctions based on constitutional due process violations, like that claimed here, and all have been rejected. See, e.g., Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al., Index No. 85229/20121 (N.Y. Sup., Rich. Cnty.)(City Order); In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty) (City Order); In the matter of the Application of Correction Officers' Benevolent Association, Inc v. City of New York, Index No. 161034/2021 (N.Y. Sup, N.Y. Cnty) (City Order); Maniscalco v. N.Y. City Dept. of Educ., No. 21 Civ.5055 (E.D.N.Y.) (BMC) (DOE Order); Kane v. de Blasio, 21 Civ. 7863 (S.D.N.Y.) (VEC) (DOE Order); Keil v. The City of New York, et al., 21 Civ. 8773 (SDNY)(VEC) (DOE Order); The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) (DOE Order). In rejecting each of these applications for injunctive relief, each Court has determined that termination for failure to comply with the City or DOE vaccination made does not constitute irreparable harm sufficient to warrant injunctive relief.

Critically, on February 8, 2022, the unions representing the Plaintiffs herein that are employed by an agency of the City of New York, filed an emergency motion seeking a temporary restraining order and preliminary injunction to enjoin the terminations of employees that had not complied with the applicable vaccination mandate issued by the New York City Department of Health and Human Hygiene Commissioner. See The New York City Municipal Labor Committee, et al. v. City of New York, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.)

(hereinafter "MLC TRO").  Among other things, the Plaintiffs in the MLC TRO – which amounted to approximately 30 unions – argued that the anticipated terminations were violative of the their members' due process rights and therefore must be enjoined.

On February 10, 2022, the City and DOE filed an opposition to this motion.  That same day, the Court issued an order declining to enter the temporary restraining order and scheduling a hearing on the preliminary injunction for March 1, 2022. See Order, dated February 10, 2022, in The New York City Municipal Labor Committee, et al. v. City of New York, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.). The Court also issued a brief interim order which stated: "The Court declines to grant plaintiffs' request, in its proposed Order to Show Cause (NYSCEF Doc. No. 26), for an order temporarily restraining defendants from terminating certain employees represented by plaintiffs pending the hearing on plaintiffs' complaint. Plaintiffs have failed to demonstrate a sufficient likelihood of success on the merits, a reasonable risk of irreparable harm, or that the equities balance in their favor to justify such relief." See Interim Order, dated February 10, 2022, in The New York City Municipal Labor Committee, et al. v. City of New York, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.). For the Court's convenience, a copy of the Order and Interim Order, as well as the City and DOE's opposition to the MLC TRO, are annexed hereto.

As such, the unions representing many of the Plaintiffs herein have already attempted to obtain the exact same relief as sought here.  Each and every such attempt has failed. So too must this one.

Furthermore, at 2:30 p.m. today, Judge Matsumoto issued a 46 page order in Broecker v. N.Y.C. Dep't of Educ., No. 21 CV 6387 (KAM)(RLM) denying the same injunctive relief sought here.  The plaintiffs are in Broecker are tenured DOE teachers who – in their emergency application – sought to enjoin their terminations for failure to comply with the vaccine mandate applicable to DOE employees.  Judge Matsumoto's decision denied this

application.  See Broecker, No. 21 CV 6387 (KAM)(RLM) at Dkt. No. 89.**STATEMENT OF**

**FACTS**

### I.      DOE ORDER

On August 24, 2021, the Commissioner of the DOHMH, Dave A. Chokshi, issued a lawful order requiring all DOE employees to show proof of at least one dose of vaccination against COVID-19 by October 1, 2021 (hereinafter "DOE Order").  See DOE Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf (last accessed Feb. 9, 2022).  The DOE Order states, in pertinent part, that: "No later than October 1, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below: a. DOE staff must provide proof of vaccination to the DOE; b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer . . ."  See id.

The DOE Order was immediately the subject of four legal challenges brought in state and federal court.  See Maniscalco v. N.Y. City Dept. of Educ., No. 21-cv-5055 (E.D.N.Y.); Kane v. de Blasio, 21 Civ. 7863 (VEC) (S.D.N.Y.); Keil v. The City of New York, et al., 21 Civ. 8773 (SDNY)(VEC)(same); The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).  In each challenge, the plaintiffs sought to enjoin the enforcement of the DOE Order as applied to DOE employees. Id.  In MLC, Maniscalco, Keil and Kane, the respective Court denied the plaintiffs' application for a temporary restraining order and/or preliminary injunction seeking to enjoin the enforcement of the DOE Order.

### II.      CITY ORDER

On October 20, 2021, Commissioner Chokski issued the City Order to require COVID-19 vaccination for City employees and certain City contractors which required that by 5:00 p.m. on October 29, 2021, City employees must provide proof to the agency or office where

they work that: (1) they have been fully vaccinated against COVID-19; or (2) they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or (3) they have received the first dose of a two-dose COVID-19 vaccine (hereinafter "City Order"). <u>See</u> City Order at <u>https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf</u> (last accessed Feb. 9, 2022). The City Order required that any City employee not providing the above-described proof must be excluded from their assigned work location beginning on November 1, 2021. <u>Id.</u> The City Order specifically provided that "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law." <u>Id.</u>

The City Order was also immediately the subject of multiple legal challenges. <u>See Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al.</u>, Index No. 85229/20121 (N.Y. Sup., Rich. Cnty.); <u>In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al.</u>, Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty) (DOHMH Order); <u>In the matter of the Application of Correction Officers' Benevolent Association, Inc v. City of New York</u>, Index No. 161034/2021 (N.Y. Sup, N.Y. Cnty). Each court that considered the validity of the City Order found it to be legally sound and enforceable. Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations engaged in impact bargaining with the other unions representing City employees, including the unions representing Plaintiffs herein.

The City and dozens of unions and/or locals were able to successfully negotiate an agreement with respect to the leave and separation procedures for those City employees. (<u>See</u> Affirmation of Daniel Pollack dated February 10, 2022 and filed in New York State Supreme Court, County of New York on February 10, 2022 in the matter of <u>The New York City Municipal Labor Committee, by its Chair Harry Nespoli, et al. v. City of New York, et al.</u>, Index No.

151169/2022 ("Pollack Aff"), annexed to the Declaration of Bilal Haider dated February 11, 2022 as Exhibit A at 6.  These agreements are nearly identical to each other.  The processes established by these agreements apply to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response.  See id.  In these agreements, unions and/or locals agreed that employees who have not requested an exemption, or whose request was denied, may be placed on LWOP by their employing agency starting October 4, 2021.  See id.

In agreeing to place non-compliant employees on LWOP, these unions and/or locals agreed that their members who did not comply with City Order – and did not receive an accommodation --  would be ineligible to perform work for the City and therefore would not receive any pay for the period of time these employees were non-compliant.  See id.  While on LWOP, employees continued to be eligible for health insurance.  Id.  Employees who submitted proof of vaccination before November 30, 2021, were eligible to return to their position within one week of submitting their documentation to their agency.  Id.

The agreements also set forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of LWOP with health benefits.  See id. City employees who did not want to comply with the City Order could opt to either separate from service by October 29, 2021, and receive enhanced payment of accrued sick leave and health insurance through June 30, 2022, unless they were eligible for health insurance from another source.  Id.

Alternatively, as a second option, employees could have opted to have their leave without pay extended to June 30, 2022, and maintain health coverage through that date.  Id.  For an employee who elects to extend their LWOP and who does not comply with the City Order by

the end of the leave period, these unions and/or locals **agreed** that the employee will be deemed to have voluntarily resigned.  Id.

In addition, these unions and/or locals agreed that on or after December 1, 2021, the City **shall seek to unilaterally separate** employees who remain out of compliance with the City Order and have not applied for either the extended leave or separation.  Id.  This clause is significant because it is not permissive.  Rather, the use of the word **shall** in the agreements (as opposed to – for example – using the word "may"), requires the City to seek to unilaterally separate non-compliant employees.

A third and final group of these unions and/or locals either did not come to agreement with the City or chose not to engage in any negotiations at all concerning the impact of the City Order, and instead, unsuccessfully challenged the vaccination mandate in the Courts. The majority of those unions represent much of the City's uniformed services, and include: the Police Benevolent Association ("PBA"), the Lieutenant's Benevolent Association ("LBA"), the Uniformed Firefighters Association ("UFA"), the Uniformed Fire Officers Association ("UFOA"), the Correction Officers Benevolent Association ("COBA"), the Sergeants Benevolent Association ("SBA"), the Detectives Endowment Association ("DEA"), the Correction Captains Association ("CCA"), the Assistant Deputy Warden/Deputy Wardens Association ("ADW/DWA"), and the Captains Endowment Association ("CEA").  See Pollak Aff, ¶ 7.

Employees covered by these unions were not entitled to the benefits negotiated by other unions, i.e. separation from employment with enhanced payment of accrued paid time off, or extension of leave without pay and with health benefits.  However, all employees – regardless of whether their unions reached an agreement with the City – could avail themselves of the below-described reasonable accommodation process.

### III.         REASONABLE ACCOMMODATION PROCESS

Pursuant to local, state and federal law, the City is required as an employer to provide reasonable accommodations to qualified employees with disabilities, unless to do so would cause undue hardship or present a direct threat to the health and safety of others.  See Affirmation of Eric Eichenholtz dated February 9, 2022 and filed in New York State Supreme Court, County of New York on February 10, 2022 in the matter of The New York City Municipal Labor Committee, by its Chair Harry Nespoli, et al. v. City of New York, et al., Index No. 151169/2022 ("Eichenholtz Aff."), annexed to the Declaration of Bilal Haider dated February 11, 2022  as Exhibit A at 3. The City is also required under applicable laws to reasonably accommodate an employee whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless providing the accommodation would create an undue hardship or present a direct threat.  Id.  In the typical course, under the City's EEO Policy, the agency's EEO Office must notify the employee within 30 days of the conclusion of the cooperative dialogue if their request was granted or denied.  Under the City's EEO Policy, employees may appeal the denial of an accommodation to their agency head.  Id. at 5.

In response to the City and DOE Orders, the City established additional robust procedures specific to requests for vaccination-related accommodations in an effort to address the anticipated increase in accommodation requests that would be made by City employees. Id. at 7. One day after the issuance of the City Order, on October 21, 2021, DCAS issued guidance in connection with the City Order, which included the "FAQ on New York City Employees Vaccine Mandate," and a document entitled "Applying for a Reasonable Accommodation from the Covid-19 Vaccine Mandate."  See https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last accessed Feb. 9, 2022); These documents laid out the

guidelines for seeking an exemption from the DOHMH Order through a reasonable accommodation request.  See Eichenholtz Aff. at 8.

Any City employee who is denied a reasonable accommodation by their agency has the right to appeal that denial to the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel").  See Eichenholtz Aff. at 12.  The Citywide Panel was created specifically in response to the DOHMH Order to consider appeals filed by employees whose accommodation requests had been denied by their respective agency.  See Eichenholtz Aff. at 13.  The purpose of the Citywide Panel is to ensure that employees who are denied a reasonable accommodation can have their appeals heard and considered consistent with the standards established by the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, and the New York City Human Rights Law.  See Eichenholtz Aff. at 14.

The above-described process – and the further processes described in the Eichenholtz Affidavit – is uniform for all City agencies.  See Eichenholtz Aff. at 40.

## ARGUMENT

In order to justify a preliminary injunction, plaintiffs must demonstrate: 1) irreparable harm absent injunctive relief; 2) a likelihood of success on the merits; 3) the balance of equities tips decidedly in their favor; and 4) that the public interest weighs in favor of granting an injunction. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).   An injunction is unwarranted because plaintiffs cannot demonstrate any of these requirements.

### A.  PLAINTIFFS CANNOT SHOW IRREPARABLE HARM

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'"  Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018

U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).   In making a showing of irreparable harm, plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989). In addition, an irreparable injury is one "for which a monetary award cannot be adequate compensation." Dexter 345 Inc. v. Cuomo, 663 F.3d 59, 63 (2d Cir. 2011).

In their Memorandum, Plaintiffs briefly and summarily contend that any time a party alleges that constitutional right may be violated, a preliminary injunction must follow.  Not so.  Plaintiffs are evidently under the misimpression that they can satisfy their burden of showing that they will suffer irreparable harm by their mere allegations, without offering any evidence, that defendants actually violated their First Amendment rights by enforcing the City and DOE Orders. This is simply not the law.

To be sure, the Supreme Court has observed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).  However, "[e]ven when a complaint alleges First Amendment injuries, . . . irreparable harm is not presumed and must still be shown."  Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).  Plaintiffs are still required to present evidence that they, in fact, have sustained a loss of their First Amendment freedoms, and will suffer another loss of such freedoms if the injunction is not granted.  A showing of theoretical or conjectural harm is insufficient. See Latino Officers Association v. Safir, 170 F.3d 167, 171 (2d Cir. 1999).

Moreover, just yesterday, the New York Supreme Court denied a temporary restraining order seeking to enjoin the termination of City and DOE employees.  The Court issued a brief interim order which stated: "The Court declines to grant plaintiffs' request, in its proposed Order to Show Cause (NYSCEF Doc. No. 26), for an order temporarily restraining defendants

from terminating certain employees represented by plaintiffs pending the hearing on plaintiffs' complaint. Plaintiffs have failed to demonstrate a sufficient likelihood of success on the merits, a reasonable risk of irreparable harm, or that the equities balance in their favor to justify such relief." See Interim Order, dated February 10, 2022, in The New York City Municipal Labor Committee, et al. v. City of New York, Index No. 151169/2022 (N.Y. Sup., N.Y. Cnty.).

Thus, plaintiffs' ability to establish irreparable harm turns on whether they can demonstrate that defendants have impaired their Free Exercise rights by implementing the City and DOE Orders. In other words, "[b]ecause the violation of a constitutional right is the irreparable harm asserted here, the two prongs of the preliminary injunction threshold merge into one: in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." Turley v. Giuliani, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000).

## B. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### I. VACCINE MANDATES ARE CONSTITUTIONAL

Fundamental rights, such as First Amendment Rights under the United States Constitution, do not overcome the state interest in keeping the public at large safe and healthy. Whitlow v. Cal. Dep't of Educ., 203 F. Supp. 3d 1079 (S.D. Cal. 2016), citing Prince v. Massachusetts, 321 U.S. 158, 64 S. Ct. 438 (1944). The right to practice religion freely does not include liberty to expose the community or a child to communicable disease or the latter to ill health or death. Prince, 321 U.S. at 166-67. Courts have ruled time and again that compulsory vaccination is constitutional. See Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905); see also Phillips v. City of N.Y., 775 F.3d 538, 542-43 (2d Cir. 2015); V.D. v. New York, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) (challenges to vaccination mandates for children to attend school upheld); see also Sherr v. Northport-East Northport Union Free Sch. Dist., 672 F. Supp 81,

83 (E.D.N.Y. 1987) ("It has long been settled that one area in which religious freedom must be subordinated to the compelling interests of society involves protection against the spread of disease."). There can be no doubt, therefore, that the vaccination mandate, as set forth by the Health Commissioner's Orders, are constitutional.

Challenges to the DOE's and City's vaccine mandate have failed time and again. Here, at the close of the second year of a global pandemic and yet another wave of hospitalizations, City and DOE employees must be protected from COVID-19. Plaintiffs may have challenges to the individual determinations on their specific applications for religious exemptions, but the Orders which mandates the vaccines and, most importantly, excludes unvaccinated City employees is crucial to keeping the City functioning and safe.

## II. Plaintiffs Are Unlikely to Succeed on their First Amendment Claims

### a. Free Exercise

"In order to prevail on a Free Exercise Clause claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'" Okwedy v. Molinari, 69 Fed. Appx. 482, 484 (2d Cir. 2003) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)). "It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long as the government can 'demonstrate a rational basis for [the] enforcement' of the rule, policy or statute, and the burden is only an incidental effect, rather than the object, of the law." Id.; see also Employment Div. v. Smith, 494 U.S. 872, 879 (1990) ("the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)")(internal quotations omitted). As such, "[w]here the

government seeks to enforce a law that is neutral and of general applicability . . . it need only demonstrate a rational basis for its enforcement."  <u>Fifth Ave. Presbyterian Church v. City of New York</u>, 293 F.3d 570, 574 (2d Cir. 2002); <u>see also Smith</u>, 494 at 879.

Crucial to the instant case is the Supreme Court's holding that when the government acts as an employer, it has more leeway in regulating its employees and curtailing their rights than it does when it acts as a sovereign.  <u>See Engquist v. Oregon Dep't of Agr</u>., 553 U.S. 591, 598-600 (2008) ("[T]here is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'")(citations omitted).

An employee is not entitled to the accommodation of his or her choice.  <u>Cosme v. Henderson</u>, 287 F.3d 152, 158 (2d Cir. 2002).  The Second Circuit holds that "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  <u>Id</u>.  Further, courts have declined to find an employer's "failure to accommodate" an employee's religious activity, without more, to constitutes a violation of the Free Exercise clause.  <u>See Smith</u>, 494 U.S. at 879-880.

In any event, the policy at issue here, namely the City Order, applies equally to all City employees.  As such, the relevant inquiry is whether there is a rational basis for the enforcement of the COH Order.  Thus, the City Order requires City employees to submit proof that they are fully vaccinated, or have received a single dose vaccine or the second dose of a two-dose vaccine, or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter.  <u>Id.</u>  Notably, the City Order itself allows for both religious and medical accommodations.  <u>Id</u>.

Despite this, plaintiffs argue that the City Order is not "neutral law" and therefore strict scrutiny applies. Plaintiffs are incorrect. "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." Smith, 494 U.S. at 884. Accordingly, "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993). Under strict judicial scrutiny, a law is unconstitutional unless the government can show that it is necessary to achieve a compelling interest. See Miller v. Johnson, 515 U.S. 900, 920 (1995). However, as noted above, the City Order is applicable to all City employees and is facially neutral. As such, the obligation to comply with these standards does not invoke the strict scrutiny standard. See Fifth Ave. Presbyterian Church, 293 F.3d at 574.

Plaintiffs' argument that the City Order is not facially neutral because of statements from the governor and the former mayor. Courts have rejected this argument as the Commissioner of Health of the City of New York is the official who promulgated the Vaccine Mandate and because the document itself is clearly neutral on its face. The City Order specifically states that medical and religious accommodations are permitted. Further, a policy is facially neutral unless it is "specifically directed at [a] religious practice." See Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 878 (1990). The City Order is facially neutral because it makes no mention of religious practices. Indeed, "prohibiting the exercise of religion . . . is not the object of [COH ORder] but [is] merely the incidental effect of a generally applicable and otherwise valid provision." Smith, 494 U.S. 878. Thus, strict scrutiny does not apply.

Next, plaintiffs contend that the City Order is not of "generally applicability" because some employees were allowed to work from home when they tested positive for COVID-19, while those who were not granted a religious exemption were not allowed to work from home.

*See* Pl. Memorandum at 13. This argument too misses the mark. The City Order is of generally applicability because it applies equally to all City employees. The Supreme Court jurisprudence permits the government – when it acts as an employer – more leeway in regulating and curtailing the rights of employees than when implementing policies that apply to non-employees. <u>See</u> <u>Engquist</u>, 553 U.S. at 598-600. Thus, the COH Order may be limited to just City employees.

In reading this requirement into the equal protection clause, the Supreme Court specifically ruled out equal protection claims challenging different applications of discretion to different employees because permitting such would serve to constitutionalize all decisions by a public employer concerning its employees:

"[If] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. " <u>Engquist,</u> 553 U.S. 607-608. Plaintiffs here are attempting to do precisely what the Supreme Court said they cannot. They are attempting to constitutionalize the discretionary decisions of the executive branch.

Nevertheless, even applying the rational basis test to plaintiffs' argument, their claim would nonetheless fail because the City has articulated a rational basis for treating plaintiffs differently than other similarly-situated City employees. Moreover, it is improper to compare plaintiffs to an employee who is recovering from COVID-19 as that is not a permanent condition, being unvaccinated is. <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005) (explaining that to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high").

Plaintiffs, nonsensically, also argue that the mandates are both overinclusive and underinclusive. Plaintiffs grouse that, in their opinion, the mandate should not apply to City employees working from home, but should apply to individuals who are not employed by the City of New York. As set forth above, these mandates are applicable to all City employees

Finally plaintiffs complain that the mandates are not generally applicable because they do not apply to the general public. Yet again, Plaintiffs fail to understand what has been set forth in numerous previous actions. Generally applicable means that the order applies the same to similarly situated individuals, here City employees. This mandate applies in the same way to employees from the Fire Department, or the Police Department.

Accordingly, plaintiffs' Free Exercise Claim will not succeed on the merits.

**b. Establishment Clause**

To the extent plaintiffs ae alleging an Establishment Clause claim, that too also fails. To survive an Establishment Clause challenge, Defendants' conduct in issuing the COH Order: (1) must have a secular purpose; (2) must neither advance nor inhibit religion as its primary effect, and (3) must not foster an excessive government entanglement with religions. Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). Here, defendants can demonstrate all three. First, it is clear that the purpose of the COH Order is secular in nature. Second, as indicated above, the COH Order does not have the primary effect of advancing or inhibiting religion. Indeed, the COH Order permits for religious accommodation and therefore it cannot be said to inhibit the practice of any religion. Finally, the COH Order does not foster government entanglement with religions in that it allows for religious accommodations without reference to or preference for one religion over another. In so doing, the COH Order does not favor one religion over another nor does it accommodate the needs of some religions without

extending accommodations to other religions. For these reasons, plaintiffs' Establishment Clause claim will likely not succeed

c. Substantive due process

Courts have ruled time and again that compulsory vaccination is constitutional. _See Jacobson v. Commonwealth of Massachusetts,_ 197 U.S. 11 (1905); see also Phillips v. City of N.Y., 775 F.3d 538, 542-43 (2d Cir. 2015); V.D. v. New York, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) (challenges to vaccination mandates for children to attend school upheld). Here, in connection with the City Vaccination Mandate, plaintiffs, via the Impact Arbitration Decision, are receiving more due process than is required by the Constitution, and, as a result, their substantive due process claim is entirely unavailing, and would be subject to dismissal upon motion, if not sua sponte. See Marino v. Town of Branford, No. 17-CV-1828 (MPS), 2018 U.S. Dist. LEXIS 17285, at *45 (D. Conn. Feb. 2, 2018) (dismissing claim where the plaintiff did "not include any allegations or present any evidence suggesting that his medical certificate or license would be revoked or his employment terminated without the full due process hearing he requests").

Indeed, the City and DOE Orders have been found to pass constitutional muster in connection with multiple substantive due process challenges. See, e.g., Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al., Index No. 85229/20121 (N.Y. Sup., Rich. Cnty.)(City Order); In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty) (City Order); In the matter of the Application of Correction Officers' Benevolent Association, Inc v. City of New York, Index No. 161034/2021 (N.Y. Sup, N.Y. Cnty) (City Order); Maniscalco v. N.Y. City Dept. of Educ., No. 21 Civ.5055 (E.D.N.Y.) (BMC) (DOE Order); Kane v. de Blasio, 21 Civ. 7863 (S.D.N.Y.) (VEC) (DOE Order); Keil v. The City of New York, et al., 21 Civ. 8773 (SDNY)(VEC) (DOE Order); The New York City Municipal Labor Committee

("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) (DOE Order).   In all cases, the Courts disagreed and denied plaintiffs' applications.

Specifically, in Maniscalco, by Memorandum Decision and Order dated September 23, 2021, Judge Brian M. Cogan denied plaintiffs' motion for a preliminary injunction.  See 2021 U.S. Dist. LEXIS 184971, at *8.  Relying on Jacobson v. Massachusetts, 197 U.S. 11, 26-27 (1905), in which, as stated by Judge Cogan, "the Supreme Court held that a vaccine mandate enacted by state of Massachusetts without any exceptions for adults – including for medical or religious reasons – was constitutional, and not a deprivation of any right secured by the U.S. Constitution," 2021 Dist. LEXIS 184971, at *8 (emphasis added), Judge Cogan held that plaintiffs were unlikely to succeed on the merits.  Judge Cogan concluded that whereas "[r]equiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as 'a plain, palpable invasion' of [plaintiff's substantive due process] rights, not having any real relation to the public health crisis, . . . mandating a vaccine approved by the FDA does not."  Id.  Judge Cogan also found for the City on the balance of equities and public interest elements of the preliminary injunction standard.  Id. at *9-11.  A few days later, on September 29, 2021, the Court in the MLC case similarly denied petitioner's application for an Order to Show Cause seeking to have the DOE Order enjoined.

Thus, the constitutionality of the City  Order – as it pertains to plaintiffs' substantive due process claims – has already been litigated and decided.  Both the Second Circuit and the Supreme Court has determined that the City and DOE Orders do not implicate any substantive due process rights so as to warrant the issuance of a preliminary injunction.  As such, plaintiffs will not succeed on this claim.

## IV. PLAINTIFFS' CASE IS INFACT THIRTEEN INDIVIDUAL AS-APPLIED CHALLENGES TO THE DENIALS OF THEIR ACCOMMODATION REQUESTS

Plaintiffs contend that they challenge the Health Commissioner's Order on both a "facial" and "as-applied" basis. *See* Compl. ¶ 2. "A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual[; whereas] [a]n 'as-applied challenge' . . . requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 174-175 (2d Cir. 2006) (internal citations and quotation marks omitted).

As discussed *supra*, the vaccination mandate is not, on its face, unconstitutional. Because plaintiffs essentially seek review of the determinations made in their own individual cases, there can be no doubt that their challenges are "as-applied."

Analyzing plaintiffs' claims on this basis, it becomes apparent that each of the individual plaintiffs have very specific facts and circumstances surrounding their applications for religious exemptions and their appeals and denials. As discussed *infra*, if plaintiffs wish to further appeal any ultimate denial of their accommodation requests, they may do so by bringing a proceeding under Article 75 of the New York Civil Practice Law and Rules. See NY CPLR Section 7501. As such, a preliminary injunction of the entire Health Commissioner's order regarding their particular cases at this stage is neither appropriate nor necessary. See Thomas v. City of N.Y., 143 F.3d 31, 34 (2d Cir. 1998) ("an Article III court cannot entertain a claim which is based upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks omitted). Because plaintiffs have not yet exhausted their appeals, their challenges to the vaccination mandate are both unripe and unfit for a preliminary injunction here.

## V.    THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS

Even if plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor.  Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020).  To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief.  Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008) (citing Amoco Production Co., 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of defendants. In the midst of a public health crisis, in which 900,000 people have lost their lives in the United States alone, with 39,000 of those deaths in New York City, and countless others have become severely ill, plaintiffs have made the personal decision based on their purported religious beliefs to decline a vaccination that has full FDA approval. They cannot foist that view on others, certainly not to impede considered public policy during a pandemic, by soliciting the Court to enjoin the City Vaccination Mandate, and thereby jeopardize the health and safety of employees and citizens of the City of New York.

Against this, defendants present the compelling – indeed, overwhelming – public interest in limiting the spread of COVID-19 in to those receiving services from City employees , other City employees, and the community at large. Moreover, mandating vaccination for employees supports, if not ensures, that essential services will continue, uninterrupted. This is a critical juncture for requiring vaccination against COVID-19.

Here, any purported abstract harm to plaintiffs or their putative class that could result from receiving the COVID-19 vaccine, or refusing to get the vaccine despite not having an exemption, does not *decidedly* outweigh the defendants' interest in limiting the spread of COVID-19 to unvaccinated children and their families.  See Trump, 943 F.3d at 674 ("Even if the balance of these hardships/equities tips in favor of Appellants, which is debatable, it does not do so 'decidedly'") (citations omitted).  Therefore, plaintiffs' motion must be denied.

## VI.     AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

Courts must also consider whether the granting of the requested relief contravenes the public interest.  Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115 (2d Cir. 1975).  The Supreme Court has recognized that stemming the spread of COVID-19 is a compelling public interest. Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63, 67 (2020).  Nevertheless, plaintiffs ask this court to grant the injunction to preserve their private interest in continuing to receive and benefits from the City and choosing not to be vaccinated, while ignoring the public interest in mandating vaccination against COVID-19 to reduce its spread. Plaintiffs thus elect to place their own salary, benefits, and personal views about vaccination in the public interest and, therefore, deserving of protection.  Such vainglorious prioritization maliciously ignores a central tenet of the COH Order and the Vaccination Mandate.  It is the health and safety of New Yorkers, and the broader goals of stemming the illness and death that continue to result from the spread of COVID-19, that is in the public interest.  If granted, an injunction would altogether vitiate that public interest, by permitting unvaccinated teachers and school staff to possibly endanger, through the unchecked spread of COVID-19, promote the spread of a particularly virulent strain of the virus.

## CONCLUSION

For the foregoing reasons, and those provided in defendants' October 4, 2021 brief (Dkt. 31), plaintiffs' motion for a preliminary injunction must be denied.

Dated:  New York, New York
    February 11, 2021

          GEORGIA M. PESTANA
          Corporation Counsel of the
           City of New York
          Attorney for Defendants City,
           Adams and Chokshi
          100 Church Street
          New York, New York 10007
          212-356-4074
          lminicuc@law.nyc.gov


      By:  _____/s/_____
         Lora Minicucci/Bilal Haider
         Assistant Corporation Counsels