# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

NEW YORKERS FOR RELIGIOUS LIBERTY, INC., GENNARO AGOVINO, CURTIS CUTLER, LIZ DELGADO, JANINE DEMARTINI, BRENDAN FOGARTY, SABINA KOLENOVIC, KRISTA O'DEA, DEAN PAOLILLO, DENNIS PILLET, MATTHEW RIVERA, LAURA SATIRA, FRANK SCHIMENTI, JAMES SCHMITT, individually and on behalf of all other persons similarly situated,

                Plaintiffs,

- against -

THE CITY OF NEW YORK; ERIC ADAMS, in his official capacity as Mayor of the City of New York, DAVE CHOKSHI, in his official capacity as Health Commissioner of the City of New York, and ROBERTA REARDON, in her capacity as New York State Commissioner of Labor,

                Defendants.

---

Case No. 1:22-cv-00752

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## ORAL ARGUMENT AND HEARING REQUESTED

Jonathan Robert Nelson (JN-8796)
Barry Black (BB-4602)
Sarah Child (SC-1011)
NELSON MADDEN BLACK LLP
475 Park Avenue South, Suite 2800
New York, NY 10016
Telephone: (212) 382-4300
jnelson@nelsonmaddenblack.com

Sujata S. Gibson (SG-8846)
GIBSON LAW FIRM, PLLC
408 W. Martin Luther King, Jr. St.
Ithaca, NY 14850
(607) 327-4125
sujata@gibsonfirm.law

*Attorneys for Plaintiffs and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    I.    PLAINTIFFS HAVE STANDING ............................................................................ 1

    II.   PLAINTIFFS MEET THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION ................................................................................................ 3

        A.  Defendants' Misstate the Legal Standard ............................................................. 3

        B.  Plaintiffs Are Likely to Succeed on the Merits ..................................................... 4

           1.  The Mandates Are Neither Neutral Nor Generally Applicable ................ 4

           2.  The Mandates Are Unconstitutional as Applied to any Religious Objector Because the City Violated the First Amendment in Implementing Them ........................................................................ 4

           3.  The Mandates Are Unconstitutional as Applied to any Religious Objector Because They Violated Substantive Due Process Rights .......... 6

        C.  Plaintiffs Are Suffering Ongoing Irreparable Harm ............................................. 7

    III.  AN EVIDENTIARY HEARING IS WARRANTED .................................................. 8

    IV.  PLAINTIFFS HAD NO OBLIGATION TO JOIN ADDITIONAL PARTIES ......... 10

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza L.L.C. v. Pyett*,
   556 U.S. 247 (2009) .................................................................................................................. 3

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004) .................................................................................................................. 3

*Brown v. Board of Education*,
   347 U.S. 483 (1954) .................................................................................................................. 5

*Elrod v. Burns*,
   427 U.S. 347 (1976) .................................................................................................................. 9

*Employment. Division v. Smith*,
   494 U.S. 872 (1990) .................................................................................................................. 4

*Fengler v. Numismatic Americana, Inc.*,
   832 F.2d 745 (2d Cir. 1987) ..................................................................................................... 9

*Fulton v. City of Philadelphia.*,
   141 S. Ct. 1868 (2021) .............................................................................................................. 4

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) .................................................................................................................. 4

*Kane v. de Blasio*,
   2021 U.S. App. LEXIS 35102 (2d Cir.. 2021) ......................................................................... 3

*Larson v. Valente*,
   456 U.S. 228 (1982) .................................................................................................................. 5

*Leebaert v. Harrington*,
   332 F.3d 134 (2d Cir. 2003) ..................................................................................................... 7

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
   138 S. Ct. 1719 (2018) .......................................................................................................... 2, 6

*Pavano v. Shalala*,
   95 F.3d 147 (2d Cir. 1996) ....................................................................................................... 3

*Roman Catholic Diocese v. Cuomo*,
   141 S. Ct. 63 (2020) .................................................................................................................. 7

*S. Bay United Pentecostal Church v. Newsom*,
    141 S. Ct. 716 (2021) ................................................................................................ 9, 10

*Spiteri v. Russo*,
    No. 12-CV-2780 (MKB) (RLM), 2013 U.S. Dist. LEXIS 128379 (E.D.N.Y. Sept. 7, 2013) . 7

*Wash. v. Glucksberg*,
    521 U.S. 702 (1997) ....................................................................................................... 7

*We the Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d Cir. 2021) ........................................................................................... 4

**Other**

Fed. R. Civ. P. 19 ................................................................................................................ 10

## PRELIMINARY STATEMENT

Defendants failed to address or refute, <u>and should therefore be deemed to have conceded</u>, several key claims and points of law raised in Plaintiffs' motion including (among others):

- The Vaccine Mandates fail the *Coercion* test;

- As a state actor, "reasonable accommodations" and "undue hardship" are not available to Defendants under a Title VII process, which constitutes a formal mechanism for granting exceptions and is therefore not generally applicable;

- Defendants' unfettered discretion in evaluating religious exemption requests, quite literally a "formal mechanism for granting exceptions," is subject to strict scrutiny under *Fulton*;

- The City lacked neutrality and violated First Amendment standards in their denials of Plaintiffs' religious exemption requests. *See, e.g.*, Schmitt Dec. ¶¶ 19, 27; Schimenti Dec. ¶¶ 41, 51; Cutler Dec. ¶ 32; Delgado Dec. ¶¶ 20, 22; Paolillo Dec. ¶ 47;

- Maintaining a discriminatory policy as one of the options, failing to require written decisions, and issuing conclusory autogenerated emails stating "denied" and "does not meet criteria" places all applicants at risk of arbitrary denial and does not meet the minimal standards under Title VII of the Civil Rights Act of 1964 and the New York State and City Human Rights Laws, let alone the First Amendment;

- It is Defendants' burden to show that they used the "least restrictive means" to burden Plaintiffs' religious rights, they presented no evidence on this point, and they failed to explain why the less restrictive means proposed would not suffice;

- Plaintiffs have demonstrated *Sampson/White* exogenous injury which constitutes irreparable harm.

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING

Defendants acknowledge that the City continues to offer the SAMs criteria (which require discrimination against unorthodox religious employees and openly preference certain religions such as Christian Science) as an option, despite the Second Circuit's holding that such standards are unconstitutional. However, they argue that this does not trigger strict scrutiny because "none

1

of the Plaintiffs utilized this appeals process" and therefore "lack standing[.]" Defs.' Br. at 19, 23. Defendants also argue that to the extent Plaintiffs were forced to utilize the openly discriminatory option, they lack standing because the process was created through binding arbitration.

But whether the Plaintiffs availed themselves of the discriminatory process is irrelevant; the fact that the City continues to offer an openly discriminatory religious exemption policy evidences a clear lack of neutrality towards employees with unorthodox religious views. *See Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 2217 (2018) ("factors relevan" to government neutrality include "'the historical background of the decision . . ., the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision making body") (citations removed). Neutrality assessments have nothing to do with "standing" to challenge the particular indicia of animus.

Nor does it matter that the SAMs criteria were originally drafted in arbitration between unions and the City. The Second Circuit was so unpersuaded by this argument in the *Kane* and *Keil* cases that defendants there dropped it, and it holds no more weight here. In this case, too, Defendants provided no evidence that any of Plaintiffs' collective bargaining agreements contain a clear and unmistakable waiver of their right to litigate (rather than arbitrate) discrimination claims. Absent such a waiver in the underlying contract, employees have standing to pursue their Constitutional claims in this Court. The Second Circuit rejected the notion that the *Kane*/*Keil* plaintiffs could not bring their claims because "[d]efendants have not identified any provision in the relevant collective bargaining agreements that 'clearly and unmistakably' requires union members . . . to arbitrate their constitutional claims. *14 Penn Plaza L.L.C. v. Pyett*, 556 U.S. 247,

274 (2009)." *Kane v. de Blasio*, 2021 U.S. App. LEXIS 35102, *43, n.* 15 (2d Cir. 2021).

Defendants also argue that since certain Plaintiffs have not yet heard back from the Citywide Panel, their challenges are unripe. Defs' Br. at 23. But Plaintiffs' denials continue to come in every day. *See, e.g.*, New Declaration of S. Kolenovic ¶ 5; New Declaration of K. O'Dea ¶ 5. In any event, exhaustion of remedies is not required when it would be futile to do so, which is invariably the case here. *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996). Moreover, the coercion is most certainly felt by each and every single plaintiff, whether the executioner's blade has already struck or his arm is yet raised high.

## II. PLAINTIFFS MEET THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION
### A. Defendants' Misstate the Legal Standard

Defendants mistakenly assert that "[i]n seeking a preliminary injunction, Plaintiffs bear the burden on all points, and defendants have no burden to rebut their claims." Defs.' Br. at 13. They cite *Ashcroft v. ACLU*, 542 U.S. 656, 669 (2004) for this proposition, but *Ashcroft* holds the opposite. In *Ashcroft*, the Supreme Court held: "[w]hen plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Id.* at 665. As the Second Circuit has articulated repeatedly,

> [b]ecause they seek a preliminary injunction, Plaintiffs bear the initial burden of establishing a likelihood of success on the merits. In the context of their First Amendment claim, this means that Plaintiffs must show that they are likely to succeed on their claim that Section 2.61 is not a neutral or generally applicable rule. If they succeed at that step, the burden shifts to the State to show that it is likely to succeed in defending the challenged Rule under strict scrutiny.

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) (*Cf. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 (2006) ("the burdens at the

3

preliminary injunction stage track the burdens at trial.")).

### B. Plaintiffs Are Likely to Succeed on the Merits

#### 1. The Mandates Are Neither Neutral Nor Generally Applicable

Defendants argue that, under *Fulton*, the only way a law or policy can be deemed <u>not</u> generally applicable is if it carves out exemptions for secular but not religious conduct. Defs.' Br. at 22. Defendants fail to acknowledge another exception to general applicability under *Fulton*, which is one that creates a mechanism for individualized exemptions. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1872 (2021). This is precisely the case here, as the Citywide Panel determines "which reasons for not complying with the policy are worthy of solicitude," *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990), and exercised that discretion in unconstitutional ways.

The Mandates are also decidedly not neutral, in that Mayor de Blasio admitted to the press that the City intended to preference Christian Scientists and to discriminate against employees with unorthodox religious views, such standards were codified in the SAMs arbitration procedures that Defendants admit "remain," Def.'s Br. at 19, and the Citywide Panel procedures continue the trend. There is no question that strict scrutiny applies.

#### 2. The Mandates Are Unconstitutional as Applied to any Religious Objector Because the City Violated the First Amendment in Implementing Them

By admitting that the SAMs standards—which the Second Circuit struck down as unconstitutional in *Keil v. City of New York* and *Kane v. de Blasio*—"remain," Defs.' Br. at 19, the City acknowledges that the First Amendment violation persists. Such standards openly preference certain religious denominations, violating the Establishment Clause, and require religious orthodoxy, violating the Free Exercise Clause. The fact that the City never denounced

4

these standards but offered them as an alternative to the Citywide Panel taints the entire process. Just as it would be unlawful to offer one policy preferencing white employees and another "separate but equal" policy for everyone else, it is unlawful to offer a policy preferencing orthodox beliefs and specifically Christian Scientists. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 495 (1954).

Defendants claim that because the unions "wanted" to offer the unconstitutional and discriminatory process as well as the discriminatory one, that somehow the City is not liable for adopting the official policy to discriminate. Government actors cannot offer and enforce policies which allow a preference for one religious doctrine over another, regardless of what others may encourage them to do. *Larson v. Valente*, 456 U.S. 228, 244 (1982).

Defendants also argue Plaintiffs have made no showing that the City's religious exemption policies prefer one religion over another because "the vaccine mandates have been found to be constitutional by countless courts." Defs.' Br. at 18. Defendants also conflate this case with a host of other New York decisions that did not even involve First Amendment challenges. *Police Benevolent Ass'n of the City of New York, Inc. v. de Blasio*, 85229/2021 (Sup. Ct. Richmond Cnty.) (advancing no claims under the First Amendment); *In re Application of Andrew Ansbro, as President of the Uniformed Firefighters Ass'n v. de Blasio*, 159738/2021 (Sup. Ct. N.Y. Cnty) (same); *In re Application of Correction Officers' Benevolent Ass'n v. City of New York*, 161034/2021 (Sup. Ct. N.Y. Cnty.) (same); *Maniscalco v. N.Y. City Dep't of Educ.*, No. 21 Civ. 5055 (E.D.N.Y. 2021) (same); *The New York City Mun. Labor Comm. v. The City of New York*, 158368/2021 (Sup. Ct. N.Y. Cnty.) (same); *The N.Y. City Mun. Labor Comm. v. City of New York*, 151169/2022 (Sup. Ct. N.Y. Cnty.) (same); *Garland v. N.Y. City Fire Dep't*, 21-cv-6586 (E.D.N.Y. 2021) (same); *Broecker v. NYC Dep't of Educ.*, 21-cv-6387 (E.D.N.Y. 2021) (same). Perhaps most

significantly, in the two cases Defendants cited that did advance First Amendment challenges, the district court's decision to denying injunctive relief was reversed by the Second Circuit on those very claims—a fact which is glaringly missing from Defendants' recitation. *Kane v. de Blasio*, 21-2678 (Nov. 28, 2021 Order) (finding that religious exemption standards violated First Amendment and vacating district court's denial of injunctive relief); *Keil v. City of New York*, 21-2711, ECF. No. 118 (2d Cir.) (Nov. 28, 2021 Order) (same).

As the Supreme Court repeatedly affirms, "even [a] slight suspicion" of lack of neutrality is per se unconstitutional regardless of whether a regulation otherwise forwards a compelling interest. *See, e.g.,* M*asterpiece Cakeshop, Ltd.,* 138 S. Ct. at 1731 (holding that the City violated plaintiffs' First Amendment rights because a decision-maker stated publicly that religious objections to gay marriage are not a valid religious belief). Ultimately, the City never even attempted to explain why strict scrutiny is satisfied, and it is decidedly not.

### 3. The Mandates Are Unconstitutional as Applied to any Religious Objector Because They Violated Substantive Due Process Rights

In arguing that there is no substantive due process violation, Defendants only state one of the tests used to establish such a claim, Defs.' Br. at 24, which is whether the government took action that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Spiteri v. Russo*, No. 12-CV-2780 (MKB) (RLM), 2013 U.S. Dist. LEXIS 128379, at *107 (E.D.N.Y. Sept. 7, 2013). But,

> [i]n assessing whether a government *regulation* impinges on a substantive due process right, the first step is to determine whether the asserted right is "fundamental." "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Leebaert v. Harrington*, 332 F.3d 134, 140 (2003). Where the right infringed is fundamental, strict scrutiny is applied to the challenged governmental regulation.

*Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003).

Here, it is well-established that bodily integrity and other rights addressed in the principle brief are fundamental rights. *Wash. v. Glucksberg*, 521 U.S. 702, 722 n.17 (1997) (recognizing that bodily autonomy is "so rooted in our history, tradition, and practice as to require special protection under the Fourteenth Amendment"). And Defendants have not attempted to refute Plaintiffs' argument that strict scrutiny is satisfied, thereby waiving it. Plaintiffs have therefore established a likelihood of success on the merits.

### C.  Plaintiffs Are Suffering Ongoing Irreparable Harm

It is beyond dispute that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 67 (2020), and this includes the use of adverse employment to coerce the violation of sincerely held religious beliefs. Defendants misleadingly cite *Kane* to support their argument, when the Court there found that the "Plaintiffs have . . . shown that they would suffer irreparable harm[.]" *Kane*, 2021 U.S. App. LEXIS 35102, at *26 (2021). This was because, as here, they "demonstrated a likely violation of their First Amendment rights resulting from the manner in which their religious accommodation claims were considered" and "these very procedures require Plaintiffs to forgo suit to avoid harm[.]" *Id*. at n.18. Moreover, Defendants' citations to *Broecker* and *Garland* are irrelevant, when plaintiffs in neither case alleged First Amendment harms.

Plaintiffs have plainly demonstrated a First Amendment violation; Defendants have even acknowledged this by stating that the stricken SAMs standards remain. The Citywide Panel's procedures fare no better, and Plaintiffs are being coerced into violating their religious beliefs

7

every day—the very definition of irreparable harm. New Kolenovic Dec. ¶¶ 9-13; New O'Dea Dec. ¶¶ 11-14; New Cutler Dec. ¶¶ 11-16; Michael Dailey Dec. ¶¶ 15-22.

Defendants bafflingly argue that *Sambrano v. United Airlines* does not apply because the coercion there was felt by employees whose religious exemptions were "granted" but who were placed on indefinite leave without pay ("LWOP"), while employees here whose exemptions were granted remained on payroll. First, that is not the case for all plaintiffs, as the DOE placed employees with pending requests on LWOP. Second, the relevant comparison is between employees subject to coercion. The *Sambrano* employees whose religious exemptions were "granted" more closely resemble those whose requests were denied here since they both suffered consequences for refusing to be vaccinated. Furthermore, the employees here are subject to even more coercion than those in *Sambrano*, because they have to sign a waiver before opting in to LWOP, and their leave lasts only a few months. *USN Seals 1-26 v. Biden*, 22-10077, ECF No. 19 (Order Denying Defendants' Motion) (5th Cir. 2022) (finding irreparable harm because vaccine mandate "crush" plaintiffs' free exercise by "pitting their consciences against their livelihoods").

Most importantly, the ongoing coercion for *all* plaintiffs, whether awaiting decision, denied, or on leave without pay because they signed a waiver, is clear, and falls squarely within the type of irreparable harm noted in *Elrod v. Burns*, 427 U.S. 347 (1976). No compensation can later make whole a person who, as a result of coercion, violates religious doctrine or tenets of faith.

### III. AN EVIDENTIARY HEARING IS WARRANTED

"On a motion for preliminary injunction, where 'essential facts are in dispute, there must be a hearing . . . and appropriate findings of fact must be made." *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747 (2d Cir. 1987).

8

In their opposition to Plaintiffs' request for an evidentiary hearing, Defendants quote an expressly overruled concurrence by Chief Justice Roberts in *South Bay United Pentecostal Church v. Newsom*. The notions of deference Justice Roberts described there do not obviate a government's burden to prove that its approach to safeguarding public health is narrowly tailored, and a hearing is therefore warranted here.

In his non-binding concurrence written at the start of the pandemic, Chief Justice Roberts stated that the "Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States." S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613 (2020). Lower courts quickly took this up as an affirmation of a public health exception to strict scrutiny review, and Defendants cite it in support of their argument that they should be shielded from an evidentiary hearing. However, in a subsequent decision in the same case, Chief Justice Roberts clarifies that this oft-cited concurrence does not allow courts to avoid strictly scrutinizing constitutional violations, asserting "I adhere to the view that the 'Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States.' **But the Constitution also entrusts the protection of the people's rights to the Judiciary. Deference, though broad, has its limits**." *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021) (emphasis added). The concurrence collectively issued by Justices Gorsuch, Alito and Thomas leaves little doubt that the Supreme Court no longer tolerates deviation from strict scrutiny based on public health:

> In cases implicating this form of "strict scrutiny," courts nearly always face an individual's claim of constitutional right pitted against the government's claim of special expertise in a matter of high importance involving public health or safety. . . .. The whole point of strict scrutiny is to test the government's assertions, and our precedents make plain that it has always been a demanding and rarely satisfied

9

> standard. Even in times of crisis—perhaps especially in times of crisis—we have a duty to hold governments to the Constitution.

*Id.* at 718 (citations omitted).

Questions of fact are clearly present and they should be explored at an evidentiary hearing.

## IV. PLAINTIFFS HAD NO OBLIGATION TO JOIN ADDITIONAL PARTIES

Defendants make a one-sentence argument that Plaintiffs failed to join the Child Study Center, Consolidated Edison, and St. Bernard's Catholic Academy, without so much as citing the governing rule. Defs.' Br. at 11. That rule states that joinder is required if " in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

Here, full relief can certainly be afforded without the joinder of these parties because the private employee Plaintiffs were not facing a vaccination directive or constitutiona violations absent the City's Mandates. *See, e.g.*, DeMartini Dec. ¶¶ 33, 36; Satira Dec. ¶¶ 18, 20. Indeed, Plaintiffs could not have even brought the constitutional challenges in the Complaint against their non-state actor private employers. Furthermore, Plaintiffs' employers have claimed no interest in this litigation, and the City cannot incur double liability for imposing its own mandates.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant their motion for a preliminary injunction pending the resolution on the merits of the present action.

10

Dated: New York, New York

March 8, 2022

| **GIBSON LAW FIRM, PLLC** | **NELSON MADDEN BLACK LLP** |
|---|---|
| */s/ Sujata S. Gibson* | |
| By: Sujata S. Gibson, Esq. | By: Barry Black |
| 408 W Martin Luther King, Jr. St. | Jonathan R. Nelson |
| Ithaca, NY 14850 | Sarah E. Child |
| (607) 327-4125 | 475 Park Avenue South, Suite 2800 |
| sujata@gibsonfirm.law | New York, NY 10016 |
| | (212) 382-4300 |
| | bblack@nelsonmaddenblack.com |

*Attorneys for Plaintiffs and the Class*

11