| | |
|---|---|
| GIBSON LAW FIRM, PLLC | NELSON MADDEN BLACK LLP |
| Sujata S. Gibson, Esq. | Jonathan R. Nelson, Esq. |
| 832 Hanshaw Rd. S | 475 Park Ave. S., Suite 2800 |
| Ithaca, NY 14850 | New York, NY 10016 |

April 20, 2022

**By ECF**
Hon. Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *New Yorkers for Religious Liberty, Inc. et al. v. The City of New York et al.*
              Case No.: 22-cv-00752-DG-VMS

Dear Judge Scanlon:

We write to set forth the nature of deposition discovery that we request in connection with Plaintiffs' motion for a preliminary injunction. For reference, we attach hereto a complete and accurate copy of all disclosures received to date (Exhibit A, Exhibit B and Exhibit C). As the attached responses show, deposition discovery is needed to understand basic elements of the process and criteria employed to deny religious accommodation.

1. <u>Depositions are Necessary to Determine the Criteria Panelists were Instructed to Use</u>

Plaintiffs demanded "all documents concerning information or instructions *provided or available to* persons involved in the Citywide Panel's consideration and determination of Plaintiffs' appeals concerning how to evaluate appeals, including without limitation any standards or procedures to be followed or not to be followed (e.g., the SAMS standards) in adjudicating appeals." In response, Defendants produced only a short string of emails reflecting a conversation between Law Department supervising attorney Eric Eichenholtz and what appears to be one redacted law department panelist. Ex. A [DEF001-003]. It is not believable that no other instructions were to panelists other than these few communications between two members of the Law Department. The emails produced themselves reference additional communications that took place regarding criteria to use, which we need to better understand, since the emails show that instruction provided likely violated statutory and constitutional standards.

For example, the redacted panel member writes: "I'm mostly seeing folks expressing their view that all COVID vaccines contain or were tested using fetal stem cells...My understanding from our conversation is that those would not constitute sincerely held religious beliefs, but what would?" Ex. A [DEF001]. A blanket instruction to deny religious objections based on concerns about the use of aborted fetal cells, which the redacted panelist appears to acknowledge she was given, violates constitutional and statutory standards. Such an instruction raises alarm, particularly since Plaintiffs reported that they were told that their beliefs about abortion are "wrong" by many of Defendants' agents. Nonetheless, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.,* 450 U.S. 707, 714 (1981). The blanket instruction referenced here shows animus towards religious concerns about abortion and is highly relevant to this case. *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018).

Similarly, other comments appear to reflect hostility toward all personally held religious beliefs and similarly necessitate depositions to clarify intent and background. For example, the redacted panelist wrote: "I just want to make sure my entries are okay. For a request based on the religion of 'dudeism' from the movie the Big Lebowski, I wrote request based on personal preference rather than sincerely held religious belief...Are entries like that sufficient?? Do I need to elaborate?" Attorney Eichenholtz answered, "Yes, those are fine. They are more internal, allowing us to understand the basis of the vote."

Because the Panel chose to employ internal shorthand rather than provide a written decision setting forth reasons that can be adequately addressed in court, we need to depose the redacted panelists and the other panelists who reviewed Plaintiffs' submissions so that we can understand what that shorthand means and what criteria and standards were employed. It is also important to understand context for what appear to be hostile statements such as references to "dudeism" and to inquire about the examples provided by Attorney Eichenholtz for what constitutes a "valid" religious objection to use as a reference for what would qualify.

2. <u>Individual Panelists need to explain the reasons they denied Plaintiffs' appeals.</u>

The requests for religious accommodation submitted by eight of the Plaintiffs were denied by nine panelists of the Citywide Appeals Panel, according to Defendants' spreadsheet discovery responses. <u>Exhibit C</u>. Eric Eichenholtz referred to "weekly conferences" in his affidavit previously submitted to this Court in this matter; if any of the Plaintiffs' cases were discussed in such meetings, we are entitled to know what was said there. For the most part, it appears that the panelists voted on their own, without consulting other panelists (although we are entitled to know whether or not that is true). Since that is the case, in order to understand the basis for each decision, Plaintiffs need to depose all nine panelists. No single panelist is capable of testifying on behalf of the entire panel, either about what the understood the criteria and standards to be or how they made individual determinations.

Several decisions were annotated with findings that Plaintiffs' objections were not religious in nature, or were contradicted by a history of prior vaccinations or by use of products that were allegedly made using fetal material from abortions. Plaintiffs are entitled to probe the factual basis and reasoning involved in each of those conclusions. "Undue hardship" was cited in the panel record spreadsheet as a reason given by panelists Rozen, Montalban and Fillow for denial of the application submitted by Plaintiff Agovino and by panelists Rozen, Montalban and Eichenholtz for denial of Plaintiff Kolenovic's application. But the cursory invocations cited in the spreadsheet do not satisfy the requirements set forth in City, State and Federal law for a demonstration of the reasons given for "undue hardship" determinations:

Under Title VII, 42 U.S.C. Section 2000e(j), "[t]he employer violates the statute unless it *'demonstrates* that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'" 42 U. S. C. § 2000e(j) (emphasis supplied). *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("Thus, the burden is on the Defendants in this case, as a matter of federal law, to show facts to the court to defend its denial of Plaintiffs' religious accommodation requests."). The materials produced by Defendants in discovery so far do not disclose any factual basis on which they could have reached the conclusion that any accommodation request represented an undue hardship to them. If the panel members had no factual input from the agencies involved, their "undue hardship" determinations are indefensible. While the Defendants proclaim that the panelists relied on no undisclosed materials, Plaintiffs are entitled to probe this assertion in depositions.

2

The panelists were also required to adhere to City and State law standards. Plaintiffs are entitled to inquire into whether or not they did so.

> "Importantly, in contrast to Title VII which does not define 'undue hardship' in the context of religious accommodation, the NYCHRL adopts a rigorous definition of an employer's 'undue hardship' as 'an accommodation requiring significant expense or difficulty,' and mandating that '[t]he employer shall have the burden of proof to show such hardship.' N.Y.C. Admin. Code § 8-107(3)(b). In determining whether an economic undue hardship exists, courts are explicitly instructed to consider the following factors:
>
> (i) the identifiable cost of the accommodation, including the costs of loss of productivity and of retaining or hiring employees or transferring employees from one facility to another, in relation to the size and operating cost of the employer;
>
> (ii) the number of individuals who will need the particular accommodation to a sincerely held religious observance or practice; and
>
> (iii) for an employer with multiple facilities, the degree to which the geographic separateness or administrative or fiscal relationship of the facilities will make the accommodation more difficult or expensive."

*Litzman v. New York City Police Dep't*, 2013 U.S. Dist. LEXIS 162968, *20 (S.D.N.Y. 2013) (quoting N.Y.C. Admin. Code § 8-107(3)(b)); *see also Makinen v. City of NY*, 857 F3d 491, 495 (2d Cir. 2017) (internal quotation marks omitted) (explaining that Second Circuit has construed the NYCHRL "more liberally than its State and federal counterparts"); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citing The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) (although Title VII's analytical framework is applicable to the NYCHRL, claims under the City law must be reviewed "'independently from and more liberally' than their federal counterparts"); *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78, (2011) (requiring the NYCHRL to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible").

The NYSHRL also adopts this rigorous definition and puts the burden on the employer to demonstrate that denial is appropriate. N.Y. Exec. Law, Art. 15 § 296(2)(d)(iii)(A)-(E).

The First Amendment also requires the party denying a request for religious exemption to show that they have considered alternatives and rejected them on constitutionally valid grounds. *Fulton v City of Philadelphia,* 593 U.S. ___ (2021).

In last week's conference, the Court raised a concern about Plaintiffs' desire to elicit information concerning the panel's deliberative processes and reasoning in their cases. Such information is central to Plaintiffs' case, however – Plaintiffs have alleged that the panel decisions were tainted by bias and predicated by improper and bad faith interpretations of the law and unconstitutional inferences from Plaintiffs' factual statements on their own behalf. Thus, the Court should permit questioning about the panels' decision making.

While the deliberative process privilege "protects from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated," *Schomburg v. Bologna*, 298 F.R.D. 138, 144 (S.D.N.Y. 2014), the "historical

and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery." *Children First Found., Inc. v. Martinez*, 2007 U.S. Dist. LEXIS 90723, *26-27 (N.D.N.Y. 2007) (reversed in part on other grounds) (internal citation marks removed); *see id.* ("However, if the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation then the deliberative process privilege evaporates"); *Marisol A. by Forbes v. Giuliani*, 1998 U.S. Dist. LEXIS 3719, *20-21 (S.D.N.Y. 1998) (exception to deliberative process privilege exists when "the decision-making process itself is the subject of the litigation"). This is precisely the case here, as the neutrality of the Citywide Panel members as well as their decision-making processes are at issue in this litigation.

Furthermore, before the Court can even find that the deliberative process privilege applies, it is necessary for Defendants to make a "threshold showing that the deliberative process privilege attaches," *Walls v. City of New York*, 502 F. Supp. 3d 686, 698 (E.D.N.Y. 2020) (Scanlon, J.), which Defendants have not done. *See also Bailey v. City of New York*, 2015 U.S. Dist. LEXIS 97871, *20 (E.D.N.Y. 2015) (Scanlon, J.) ("the burden of establishing this qualified privilege rests with the party asserting the privilege"). Indeed, when specifically probed on this point in last week's discovery conference, counsel for Defendants indicated that they were primarily concerned with Citywide Panel members not being able to remember the details of Plaintiffs' applications, not whether it was proper for Citywide Panel members to be questioned concerning this content in the first place. ECF No. 63 at 29:5-31:19 (transcript of 4/13/2022 discovery conference).

Respectfully submitted,

/s/ *Sujata S. Gibson*  /s/ *Jonathan R. Nelson*
Counsel for Plaintiffs  Counsel for Plaintiffs


cc: Counsel of Record (via ECF)