UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NEW YORKERS FOR RELIGIOUS LIBERTY,
INC., GENNARO AGOVINO, CURTIS CUTLER,
LIZ DELGADO, JANINE DEMARTINI,
BRENDAN FOGARTY, SABINA KOLENOVIC,
KRISTA O'DEA, DEAN PAOLILLO, DENNIS
PILLET, MATTHEW RIVERA, LAURA SATIRA,
FRANK SCHIMENTI, JAMES SCHMITT,
individually and on behalf of all other persons
similarly situated,

                Plaintiffs,

      -against-

THE CITY OF NEW YORK; ERIC ADAMS, in his
official capacity as Mayor of the City of New York,
DAVE CHOKSHI, in his official capacity as Health
Commissioner of the City of New York, and
ROBERTA REARDON, in her capacity as New York
State Commissioner of Labor,

              Defendants.

No. 22 Civ. 00752 (DG) (VMS)

---

## STATE DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendant*
28 Liberty Street
New York, New York 10005
(212) 416-8625
Shi-Shi.Wang@ag.ny.gov

SHI-SHI WANG
Assistant Attorney General

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 4

I.    The Statutory and Regulatory Framework for Unemployment Insurance ................... 4

    A.    Labor Law Establishes New York's UI Fund ............................................................. 4

    B.    The New York State UI Program and Initial Eligibility for UI Benefits ....................... 4

    C.    The Exclusive Procedure for Challenging UI Benefit Determinations ....................... 5

    D.    Disqualification from UI Benefits .............................................................................. 6

II.   VACCINE MANDATES AS A LAWFUL CONDITION OF EMPLOYMENT ........... 6

    A.    The COVID-19 Pandemic and Development of Vaccines ......................................... 6

        i.    New York City's Employer Vaccine Mandates Against COVID-19 ............ 6
        ii.   New York State Employer Vaccine Mandates Against COVID-19 .............. 7

III.  DOL Issues FAQ #6 in Response to Employer Vaccine Mandates ............................. 8

IV.   Procedural History nd Allegations Against Commissioner Reardon ........................... 8

V.    Status of the Named and Unnamed Plaintiffs' UI Applications    ……………………10

LEGAL STANDARDS .............................................................................................. 10

ARGUMENT ............................................................................................................. 13

I.    PLAINTIFFS' MOTION SHOULD BE DENIED AS IT SEEKS FINAL RELIEF ....... 13

II.   THE *BURFORD* ABSTENTION DOCTRINE APPLIES ............................................. 14

III.  PLAINTIFFS LACK ARTICLE III STANDING .......................................................... 17

IV.   PLAINTIFFS' CLAIMS ARE NOT RIPE .................................................................... 19

V.    PLAINTIFFS' CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY .................... 20

    A.    Plaintiffs' Claims for Damages and Retroactive Relief are Barred ........................... 20
    B.    The *Ex Parte Young* Exception for Prospective Relief does not apply ...................... 21

VI.   PLAINTIFFS CANNOT PREVAIL ON THEIR FIRST AMENDMENT CLAIMS .. 23

A.    DOL's Process for Determining UI Benefits Are Subject to Further Appeal ............ 23

B.    Vaccine Mandates Prior to the COVID-19 Pandemic Have Been Lawful ................. 24

C.    Plaintiffs Fail to Allege FAQ #6 Violates the Free Exercise Clause .......................... 26

D.    Plaintiffs Fail to Allege FAQ #6 Violates the Establishment Clause ......................... 30

VII.    PLAINTIFFS HAVE NOT SHOWN IMMINENT IRREPARABLE HARM ............ 30

CONCLUSION ...................................................................................................................... 32

**Table of Authorities**

**Cases**                                                                                                    **Page(s)**

*Abadi v. City of New York*,
    No. 21 Civ. 8071, 2022 WL 347632 (S.D.N.Y. Feb. 4, 2022) ...............................................24

*Abbott Labs. v. Adelphia Supply USA*,
    No. 15 Civ. 5826, 2015 WL 10906060 (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom* 670 Fed. App'x 6 (2d Cir. 2016).......................................................................................11

*Alliance of Auto. Mfrs., Inc. v. Currey*,
    984 F. Supp. 2d 32 (D. Conn. 2013).....................................................................................14

*Almanzar v. Zam Realty Mgmt. Co., LLC*,
    No. 11 Civ. 1168, 2011 WL 5865259 (S.D.N.Y. Nov. 21, 2011) .........................................16

*Barchha v. TapImmune, Inc.*,
    No. 12 Civ. 8530, 2013 WL 120639 (S.D.N.Y. Jan. 7, 2013)......................................... 12-13

*Broecker v. New York City Dep't of Educ.*,
    No. 21 Civ. 6387, 2022 WL 426113 (E.D.N.Y. Feb. 11, 2022)...............................................24

*Canaday v. Koch*,
    608 F. Supp. 1460 (S.D.N.Y. 1985).......................................................................................14

*Carr v. Ross*,
    81 A.D.2d 999 (3d Dep't 1981) ..............................................................................................23

*Caviezel v. Great Neck Pub. Schs.*,
    500 F. App'x 16 (2d Cir. 2012) ..............................................................................................24

*Caviezel v. Great Neck Pub. Schs.*,
    739 F. Supp. 273 (E.D.N.Y. 2010), *aff'd,* 500 F. App'x 16 (2d Cir. 2012).............................24

*Chrysafis v. Marks*,
    2021 WL 5563571 (E.D.N.Y. Nov. 29, 2021).......................................................................18

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985)...................................................................................................31

*Daebo Int'l Shipping Co. v. Americas Bulk Transp.*,
    No. 12 Civ. 7960, 2013 WL 2149595 (S.D.N.Y. May 17, 2013)...........................................22

*Daniels v. Am. Airlines Inc.*,
    19 Civ. 3110, 2022 WL 493573 (E.D.N.Y. Feb. 17, 2022)....................................................16

*De Grego v. Levine*,
    362 N.Y.S.2d 207 (3d Dep't 1974), *aff'd*, 39 N.Y.2d 180 (1976).........................................15

i

*Delaware Riverkeeper Network v. NYSDEC*,
788 Fed. App'x 65 (2d Cir. 2019)..................................................................................................17

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006).........................................................................................................16

*Detective Endowments Association, et al. v. City of New York, et al.*,
Index No. 650656/2022 (Sup. Ct. N.Y. Cnty., June 10, 2022)...................................................24

*Deutsche Alt-A Secs. Mortg. Loan Trust v. DB Structured Prods.*,
958 F. Supp. 2d 488 (S.D.N.Y. July 23, 2013)...........................................................................22

*Doninger v. Niehoff*,
527 F.3d 41 (2d Cir. 2008)...........................................................................................................31

*Edelman v. Jordan*,
415 U.S. 651 (1974).....................................................................................................................20

*Elrod v. Burns*,
427 U.S. 347 (1976).....................................................................................................................30

*Employment Div., Dept. of Human Resources of Ore. v. Smith*,
494 U.S. 872 (1990)......................................................................................................... 2, 26-28

*Ex Parte Young*,
209 U.S. 123 (1908)......................................................................................................... 20-21

*Ferrelli v. Unified Ct. Sys.*,
No. 22 Civ. 0068, 2022 WL 673863 (N.D.N.Y. Mar. 7, 2022)....................................................7

*Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund. Corp.*,
388 F. Supp. 3d 145 (E.D.N.Y. 2019) .........................................................................................18

*Garland v. New York City Fire Dep't*
2021 WL 5771687 (E.D.N.Y. Dec. 6, 2021) ........................................................................24, 29

*Gan v. City of New York*,
996 F.2d 522 (2d Cir. 1993)..........................................................................................................19

*Gladstone v. Catherwood*,
319 N.Y.S.2d 664 (3d Dep't 1971), aff'd, 30 N.Y.2d 576 (1972) ...............................................15

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007).............................................................................................................30

*Grauman v. Equifax Info. Servs., LLC*,
20 Civ. 3152, 2021 WL 3239865 (E.D.N.Y. July 16, 2021) ........................................................17

*Green v. Mansour*,
   474 U.S. 64 (1985)..................................................................................................21, 22

*Guitard v. United States Sec'y of Navy*,
   967 F.2d 737 (2d Cir. 1992)...........................................................................................30

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
   No. 21 Civ. 00038, 2021 WL 535485 (S.D.N.Y. Feb. 12, 2021) ..........................................31

*Huminski v. Corsones*,
   386 F.3d 116 (2d Cir. 2004)............................................................................................19

*Idaho v. Coeur d'Alene Tribe*,
   521 U.S. 261, 277 (1997) ...............................................................................................20

*Iqbal v. Ashcroft*,
   556 U.S. 662 (2009)......................................................................................................28

*Jacobson v. Commonwealth of Massachusetts*,
   197 U.S. 11 (1905)........................................................................................................23

*Kachalsky v. Cacace*,
   817 F. Supp. 2d 235 (S.D.N.Y. 2011)...............................................................................13

*Kane v. de Blasio*,
   No. 21 Civ. 7863, 2021 WL 5909134 (S.D.N.Y. Dec. 14, 2021), *aff'd sub
   nom. Keil v. City of New York*, No. 21 Civ. 3043, 2022 WL 619694 (2d Cir.
   Mar. 3, 2022)................................................................................................................13

*Kelly v. N.Y.S. Civ. Serv. Comm'n*,
   No. 14 Civ. 716, 2015 WL 861744 (S.D.N.Y. Jan. 26, 2015) aff'd, 632 F.
   App'x 17 (2d Cir. 2016)..................................................................................................19

*L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. N.Y.*,
    No. 18 Civ. 1902, 2018 WL 2390125 (E.D.N.Y. May 25, 2018) .........................................11

*Lacewell v. Office of Comptroller of Currency*,
   999 F.3d 130 (2d Cir. 2021)............................................................................................17

*League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Super's*,
   737 F.2d 155 (2d Cir. 1984)............................................................................................18

*Levola v. Fischer*,
   403 F. App'x 564 (2d Cir. 2010) ......................................................................................31

*Liberty Mut. Ins. Co. v. Hurlbut*,
   585 F.3d 639 (2d Cir. 2009)............................................................................................14

iii

*Loren v. Levy*,
  2003 WL 1702004 (S.D.N.Y. March 31, 2003) ........................................................20

*Maniscalco v. N.Y. City Dept. of Educ.*,
  No. 21 Civ. 5055, 2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021), *aff'd,* 2021
  WL 4814767 (2d Cir. Oct. 15, 2021)........................................................................24

*Matter of Ansbro v. de Blasio, et al.*,
  Index No. 159738/2021 (Sup. Ct. N.Y. Cnty., Feb. 16, 2022) .................................24

*Matter of Katz v. Comm'r of Lab.*,
  122 A.D.3d 993 (3d Dep't 2014) ..............................................................................23

*Matter of Lamo v. Comm'r of Lab.*,
  205 A.D.3d 1297 (3d Dep't 2022) ...............................................................................6

*Matter of Marsh v. Catherwood*,
  13 N.Y.2d 235 (1963) .................................................................................................5

*Matter of Numrich Gun Parts Corp. v. Rivera, as Commissioner of Labor, et al.*,
  A.D.3d 981, (3d Dep't 2014) ....................................................................................15

*Matter of Schwartfigure v. Hartnett*,
  83 N.Y.2d 296 (1994) ...............................................................................................26

*Matter of Zdunski v. Comm'r of Lab*,
  182 A.D.3d 953 (3d Dep't 2020) ..............................................................................23

*Mills v. State of Me.*,
  118 F.3d 37 (1st Cir. 1997).......................................................................................21

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013)......................................................................................19

*Nachmenson v. N.Y.S. Dep't of Labor*,
  No. 20 Civ. 5873, 2022 WL 1093195, at *2 (E.D.N.Y. Apr. 12, 2022) .................20

*New Orleans Pub. Serv, Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989).................................................................................................13

*New York Progress & Prot. PAC v. Walsh*,
  733 F.3d 483 (2d Cir. 2013)......................................................................................12

*New York State Ct. Clerks Ass'n v. Unified Ct. Sys. of the State of New York*,
  25 F. Supp. 3d 459 (S.D.N.Y. 2014).........................................................................21

*New York v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015)......................................................................................12

iv

*Nnebe v. Daus*,
 644 F.3d 147 (2d Cir. 2011)..................................................................................18

*Okwedy v. Molinari*,
 69 Fed. App'x 482 (2d Cir. 2003)........................................................................25

*Patton v. Dole*,
 806 F.2d 24 (2d Cir. 1986)...................................................................................11

*Pennzoil Co. v. Texaco, Inc.*,
 481 U.S. 1 (1987).................................................................................................14

*Philipps v. City of New York*,
 775 F.3d 538 (2d Cir. 2015).................................................................................24

*Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al.*,
 Index No. 85229/20121 (Sup. Ct. Rich. Cnty. Oct. 27, 2021) *aff'd* 2021 WL 5828792 (2d Dep't Dec. 8, 2021)..........................................................................24

*Saget v. Trump*,
 375 F. Supp. 3d 280 (E.D.N.Y. 2019) .................................................................17

*Shehabeldin v. GSI*,
 11-cv-5853, 2011 WL 6761070 (E.D.N.Y. Dec. 23, 2011)..................................16

*Sherbert v. Verner*,
 374 U.S. 398 (1963)....................................................................................2, 23, 28

*Smith v. Westchester Cnty.*,
 769 F. Supp. 2d 448 (S.D.N.Y. 2011)..................................................................17

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*,
 450 U.S. 707 (1981).........................................................................................2, 23

*V.D. v. New York*,
 403 F. Supp. 3d 76 (S.D.N.Y. 2019)....................................................................24

*Walker v. Comm'r of the NYS Dep't of Labor & Unemployment*,
 No. 14 Civ. 6976, 2015 WL 128028, (E.D.N.Y. Jan. 8, 2015)..............................16

*We The Patriots USA, Inc. v. Hochul*,
 17 F.4th 266 (2d Cir. Nov. 4, 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. Nov. 12, 2021), *cert. denied sub nom*. *Dr. A. v. Hochul*, 142 S. Ct. 2569 (Jun. 30, 2022) ................................................................................................ *passim*

*Weiser v. Koch*,
 632 F. Supp. 1369 (S.D.N.Y. 1986).....................................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...........................................................................................................11

**CONSTITUTIONS**

U.S . const., am. I............................................................................................. *passim*

U.S . const., am. XI.......................................................................................... *passim*

**STATE STATUTES**

N.Y. Labor Law

    § 501............................................................................................................................4
    §§ 511-527 .................................................................................................................5
    § 530............................................................................................................................4
    § 534............................................................................................................................5
    § 535............................................................................................................................5
    § 550............................................................................................................................4
    § 593(1)...................................................................................................................2, 6
    § 593(3)...................................................................................................................2, 6
    § 597............................................................................................................................5
    §§ 620-626 ...........................................................................................................2, 5, 15
    § 624............................................................................................................................6

State Administrative Porcedure Act
    § 102(2)(a)(i).............................................................................................................26
    §§ 100-501 ................................................................................................................26

**FEDERAL STATUTES**

28 U.S.C.A.
    § 1257 (a) ...................................................................................................................6

28 U.S.C.
    § 2201.......................................................................................................................22

42 U.S.C.
    § 1983.......................................................................................................1, 18, 19, 30

American with Disabilities Act.......................................................................................16

Social Security Act ..........................................................................................................4

**FEDERAL REGULATIONS**

20 C.F.R
 § 602.11(a) ............................................................................................................4
 § 602.21(c) ............................................................................................................4


**STATE REGULATIONS**

10 N.Y.C.R.R.
 § 2.61 (Aug. 26, 2021) .........................................................................................7
 § 2.61(a)(2), (c) ...................................................................................................7

43 N.Y. Reg. 6, 6-9 (Sept. 15, 2021) .........................................................................8

44 N.Y. Reg. 25, 10 (June 22, 2022) ........................................................................8

CPLR
 § 5701(a) ..............................................................................................................6
 §5512 ...................................................................................................................6

**MISCELLANEOUS AUTHORITIES**

DOL's "Unemployment Insurance Top Frequently Asked Questions #6",
 https://dol.ny.gov/unemployment-insurance-top-frequently-asked-questions .........................9

*In Preparation for Monday Vaccination Deadline, Governor Hochul Releases
 Comprehensive Plan to Address Preventable Health Care Staffing Shortage*
 (Sept. 25, 2021), https://www.governor.ny.gov/news/preparation-monday-
 vaccination-deadline-governor-hochul-releases-comprehensive-plan-address .........................9

New York City DOE Order, August 24, 2021, available at
 https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-
 3.pdf....................................................................................................................7

UIPL No. 04-01, Payment of Compensation and Timeliness of Determinations
 during a Continued Claim Series, issued October 27, 2000,
 https://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=1746 .............................................4

Defendant Roberta Reardon, Commissioner of the New York State Department of Labor ("DOL") ("Commissioner Reardon"), respectfully submits this memorandum of law, the accompanying Declarations of Stephen M. Geskey ("Geskey Decl.") and Lars E. Thompson ("Thompson Decl."), and all attached exhibits, in opposition to Plaintiffs' Motion for a Preliminary Injunction ("PI") (ECF Nos. 86, 86-1, 87, 87-1).

## PRELIMINARY STATEMENT

Plaintiffs New Yorkers For Religious Liberty, Inc. ("NYFRL") and thirteen current and former New York City and private sector employees (the "Named Plaintiffs")[1] bring this putative class action pursuant to 42 U.S.C. § 1983 "individually and on behalf of all other persons similarly situated" against the City Defendants[2] and Commissioner Reardon, seeking to enjoin the City's COVID-19 vaccine mandates and also compel DOL to grant unemployment insurance ("UI") benefits to "anyone who is unable to work due to a vaccine requirement." ECF No. 77 ("Am. Compl.") at ¶¶ 22-39, 40, 43, 289, 123-124 (prayer for relief).

Almost five months into this Action, and six months after a putative class member was allegedly denied UI benefits on January 10, 2022 (*id*. at ¶ 527), Plaintiffs filed the instant PI motion on June 27, 2022 against Commissioner Reardon. ECF Nos. 86, 86-1. Plaintiffs claim irreparable harm absent a PI from this Court to enjoin "the [DOL] from denying [UI] benefits to any employee terminated or suspended for failure to take a COVID vaccine despite asserting sincere religious objection." *Id*. at 2. (Proposed Order To Show Cause)[3] (emphasis added).

---

[1]    Plaintiffs Matthew Rivera works for Consolidated Edison, Inc. and Janine DeMartini worked for the Child Study Center of New York. Am. Compl. at ¶¶ 26, 32.

[2]    The City Defendants are the City of New York, Mayor Eric Adams, and former New York City Department of Health and Mental Hygiene Commissioner Dave Chokshi. Am. Compl. at ¶¶ 36-38.

[3]    Pagination corresponds to CM/ECF.

Plaintiffs' PI request should be denied for failing to meet the stringent standard to issue a PI and as *per se* deficient because they seek relief unavailable by PI: final relief rendering all of the underlying UI benefit claims fully resolved. ECF 86. Contrary to Plaintiff's claims, if the City's mandates are a lawful condition of employment, DOL does not need to further determine whether the City mandates were "narrowly tailored to impose the least restrictive burdens on" Plaintiffs' religious beliefs. Am. Compl. at ¶¶ 531, 569. This is because a claimant's mere failure to meet a lawful condition of employment is a valid basis to deny UI benefits. *See* N.Y. Labor Law ("Labor Law") §§ 593(1) and (3).

Plaintiffs' PI motion should be denied for six additional reasons.

***First***, Plaintiffs cannot show a likelihood of success on the merits because dismissal of their claims under the *Burford* abstention doctrine is appropriate here, given that Labor Law Sections 620-626 sets forth the exclusive administrative appeal process for either the claimant or the former employer to seek review of a disputed UI claim. *See* Point I, *infra.* Notably, the UI benefits decisions Plaintiffs cite in their PI motion utilized analogous state administrative and state court appeals before reaching the United States Supreme Court.[4]

Even though framed as "enjoining" DOL from denying UI benefits, what Plaintiffs actually seek is for this Court to grant UI benefits to anyone who objects to the COVID-19 vaccines on religious grounds, regardless of whether the employer, who has a legal right to contest those claims, would oppose and appeal those decisions. There is no basis to order this extraordinary relief of granting UI benefits (maximum 26 weeks at the weekly maximum of $504.00) to the entire uncertified putative class.

---

[4]    *See Sherbert v. Verner,* 374 U.S. 398 (1963) (appeal from Supreme Court of South Carolina); *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.,* 450 U.S. 707 (1981) (appeal from Indiana Supreme Court, which reviewed appeal from the State Employment Security Review Board); *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990) (appeal from Oregon Court of Appeals).

*Second*, Plaintiffs lack Article III standing to sue Commissioner Reardon. *See* Point II, *infra.* Specifically, this matter is not properly before this Court because only four of the thirteen Named Plaintiffs have even applied for UI and none have exhausted their remedies through the exclusive state administrative and state court appeal process.[5] Where Plaintiffs choose not to engage in the process available to them, they are causing their own injuries.

*Third,* as there is no live case or controversy until all levels of appeal have been exhausted in state court, up through and including the New York State Court of Appeals, Plaintiffs' claims against DOL are not ripe. *See* Point III, *infra.*

*Fourth,* to the extent Plaintiffs seeks damages and retroactive declaratory relief against Commissioner Reardon, those claims are barred by the Eleventh Amendment. *See* Point IV, *infra.* In addition, the *Ex Parte Young* exemption for prospective injunctive relief does not apply.

*Fifth,* Plaintiffs' First Amendment claims are unlikely to succeed on the merits. Plaintiffs cite to DOL's "Unemployment Insurance Top Frequently Asked Questions #6" ("FAQ #6") as evidence of an alleged "blanket disqualification policy" to deny UI benefits to those who oppose the COVID-19 vaccine on religious grounds. Am. Compl. at ¶ 385. But the plain language of FAQ #6 is neutral and does not single out religious conduct. *See* Point V, *infra.*

*Sixth,* Plaintiffs have not shown that they will suffer irreparable injury absent the requested PI because their asserted harms are financial. *See* Point VI, *infra.* Plaintiffs also cannot rely on infringement of their First Amendment rights to establish irreparable harm because they fail to demonstrate a clear and substantial likelihood of success on those claims. Moreover, their nearly five-month delay in filing this PI undercuts their claims of irreparable harm.

---

[5]    While characterized as the "administrative appeal process" throughout this memorandum, this term contemplates any portion of the appeal process available at DOL, including request for reconsideration, requests for hearings before an independent Administrative Law Judge, and appeals to the Unemployment Insurance Appeal Board, which can then be appealed to the New York Supreme Court, Appellate Division, Third Judicial Department.

**STATEMENT OF FACTS**

I.    **The Statutory and Regulatory Framework for Unemployment Insurance**

    A.    <u>**Labor Law Establishes New York's UI Fund**</u>

Article 18 of Labor Law Section 501 provides that "the public good and the well-being of the wage earners of this state require the enactment of this measure for the compulsory setting aside of financial reserves for the benefit of persons unemployed through no fault of their own." N.Y. Labor Law § 501. The UI Fund "consists of contributions, interests, penalties and monies from the re-employment service fund … and of moneys credited to this state pursuant to …the federal social security act, of property and securities acquired by and through the use of the moneys belonging to the fund, and of interest earned thereon." N.Y. Labor Law at § 550.

Commissioner Reardon is the exclusive fiduciary of the UI Fund. *Id.* at § 530. She makes all rules and regulations and, subject to civil service, appoints those officers and employees necessary to the administration of the law. *Id*. at § 530.

    B.    <u>**The New York State UI Program and Initial Eligibility for UI Benefits**</u>

The New York State UI program is a federally approved and certified state unemployment compensation program and is required to operate in conformity with federal unemployment compensation laws and regulations, including the Federal Unemployment Tax Act, the Social Security Act, and Chapter V of Title 20 of the Code of Federal Regulations. Indeed, DOL has an obligation not only to provide prompt payment to eligible claimants, but also "to require accuracy in order to ensure that payments are not made when they are not due."[6] 20 C.F.R §§ 602.11(a) and 602.21(c).

---

[6]    UIPL No. 04-01, Payment of Compensation and Timeliness of Determinations during a Continued Claim Series, issued October 27, 2000, https://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=1746

In order to be eligible for UI benefits, a claimant must have worked in New York within the last 18 months, and meet the definition of "total unemployment," which "means the total lack of any employment on any day." N.Y. Labor Law § 522. In addition, a claimant must have worked for at least two calendar quarters during the past year and been paid wages for work in at least two calendar quarters during the claimant's base period. *Id.*[7] A claimant must also (1) have lost employment through no fault of their own, (2) be ready, willing and able to work, and (4) be actively seeking work. *Id*. at § 527.

### C.      The Exclusive Procedure for Challenging UI Benefit Determinations

Whether a claimant initially qualifies for UI benefits pursuant to Sections 511 through 527 of the Labor Law is first interpreted and applied by the DOL Commissioner. *See* N.Y. Labor Law § 597. Thereafter, the Commissioner's initial determination is reviewable before an independent referee, also known as an Administrative Law Judge ("ALJ"). *Id.* at § 620. The ALJ has the duty "to hear and decide" appeals of the initial UI determination "in accordance with the [relevant] provisions of the [Labor Law] and to conduct … hearings … as may be required by the [UIAB]." *Id.* at § 620. Decisions by the ALJ can then be appealed to the Unemployment Insurance Appeal Board ("UIAB"). *Id*. at § 621. ALJs are under the supervision of the UIAB. *Id.* § 535. The UIAB "consists of five salaried members, not more than three of whom shall be adherents of the same political party." *Id.* at § 534. It is the function of the members of the UIAB, acting in their quasi-judicial capacity, to determine any disputed claims and to maintain an index of authority for its decisions. *Id*. UIAB's construction and application of the Labor Law is controlling over that of the Commissioner. *Matter of Marsh v. Catherwood,* 13 N.Y.2d 235,

---

[7]      A claimant's "base period" is defined as either "the first four of the last five completed calendar quarters ending with the week immediately preceding the filing of a valid original claim" or "the last four completed calendar quarters ending with the week immediately preceding the filing of a valid original claim." *Id*. at § 520.

239 (1963).[8] Decisions by the UIAB can be appealed to the New York State Supreme Court, Appellate Division, Third Judicial Department. N.Y. Labor Law § 624. Decisions by the Appellate Division may be appealed to the New York Court of Appeals. CPLR §§ 5701(a), 5512. Those decisions may be reviewed by the United States Supreme Court. 28 U.S.C.A. § 1257(a).

### D. Disqualification from UI Benefits Is A Factual Determination

A claimant is ineligible for UI benefits if they voluntarily separate from employment without good cause or for misconduct. N.Y. Labor Law at § 593(1), (3). State court decisions have further defined those terms. "Whether a claimant has voluntarily left his or her employment without good cause is a factual issue for the [UIAB] to resolve and its decision will be upheld if supported by substantial evidence, despite evidence in the record that could support a contrary result." *Matter of Lamo v. Comm'r of Lab.,* 205 A.D.3d 1297, 1298 (3d Dep't 2022).

### II. Employer Vaccine Mandates As A Lawful Condition Of Employment

### A. The COVID-19 Pandemic and Development of Vaccines

In March 2020, both New York State and New York City declared a state of emergency due to the emergence of the COVID-19 pandemic. Am. Compl. at ¶¶ 45, 46. In light of that emergency, the U.S. Food and Drug Administration ("FDA") issued emergency use authorizations for COVID-19 vaccines in December 2020 for certain age groups. *Id.* at ¶ 51.

### i. New York City's Employer Vaccine Mandates Against COVID-19

On August 24, 2021, the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") issued an order requiring all Department of Education ("DOE")

---

[8]     Except where indicated, internal citations, quotation marks, brackets, and ellipses are omitted from case citations throughout this memorandum of law.

employees to show proof of at least one dose of vaccination against COVID-19 by October 1, 2021. ("DOE Order").[9]

On October 20, 2021, DOHMH issued a second City Order to require COVID-19 vaccination for all New York City employees and certain contractors by October 29, 2021. ECF No. 99-2. The City Order required that any City employee not providing proof of vaccination must be excluded from their assigned work location beginning on November 1, 2021. *Id.*

**ii.    <u>New York State Employer Vaccine Mandates Against COVID-19</u>**

On August 26, 2021, the New York State Department of Health ("DOH") issued an emergency rule entitled "Prevention of COVID-19 transmission by covered entities" ("the DOH Vaccine Mandate"). *See* 10 N.Y.C.R.R. § 2.61 (Aug. 26, 2021). The DOH Vaccine Mandate requires covered healthcare entities to "continuously require" employees to be fully vaccinated against COVID-19 if they "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61(a)(2), (c).

On September 15, 2021, the DOH Vaccine Mandate was formally published in the New York Register accompanied by a full set of required documentation, including a Regulatory Impact Statement and findings to support the need for emergency action. *See* Prevention of COVID-19 Transmission by Covered Entities, 43 N.Y. Reg. 6, 6-9 (Sept. 15, 2021).[10]

On September 27, 2021, the New York State Unified Court System ("UCS") issued a vaccine mandate that required all employees to be vaccinated against COVID-19. *See Ferrelli v. Unified Ct. Sys.,* No. 22 Civ. 0068, 2022 WL 673863, at *2 (N.D.N.Y. Mar. 7, 2022).

---

[9]    https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf

[10]    DOH made the rule permanent in June 2022. 44 N.Y. Reg. 25, 2022 NY Reg Text 601321 (Jun. 22, 2022).

### III.   DOL Issues FAQ #6 in Response to Employer Vaccine Mandates

As both public and private sector employers began issuing COVID-19 vaccine mandates beginning in or around August and September of 2021, DOL began receiving a high volume of calls from the general public seeking information on whether employees who do not comply with these vaccine mandates would still be eligible for UI benefits. Geskey Decl. at ¶ 6. Consistent with DOL's longstanding practice of issuing guidance to the public, and to efficiently respond to the increasing number of calls and inquiries from New Yorkers regarding this topic, on or about September 21, 2022, DOL issued FAQ #6 as follows:

**6. If a worker refuses to get vaccinated, will they be eligible for UI benefits?**

Like all UI claims, eligibility will depend on the circumstances as each claim is unique and reviewed on a case-by-case basis. Workers in a healthcare facility, nursing home, or school who voluntarily quit or are terminated for refusing an employer-mandated vaccination will be ineligible for UI absent a valid request for accommodation because these are workplaces where an employer has a compelling interest in such a mandate, especially if they already require other immunizations. Similarly, a public employee who works in a public setting and is subject to a local government mandate to submit proof of vaccination or negative testing may be disqualified from the receipt of UI if they refuse to get vaccinated or tested. In contrast, a worker who refuses an employer's directive to get vaccinated may be eligible for UI in some cases, if that person's work has no public exposure and the worker has a compelling reason for refusing to comply with the directive.[11]

Geskey Decl. at ¶ 8 at Ex. B. The purpose of any FAQ is to educate the public on their rights and obligations with a reminder that claims are subject to a case by case review. *Id*. at ¶ 5. Answers in FAQs are not binding rules or predeterminative of a claim. *Id*. at ¶¶ 4, 9, Ex. A.

### IV.   Procedural History and Allegations Against Commissioner Reardon

On February 10, 2022, Plaintiffs filed their initial Complaint against the City Defendants and Commissioner Reardon. ECF No. 1. At that time, they did not seek any emergency relief

---

[11]   https://dol.ny.gov/unemployment-insurance-top-frequently-asked-questions In their Amended Complaint, Plaintiffs did not quote the complete FAQ #6, leaving out the last sentence. Am. Compl. at ¶ 385.

against Commissioner Reardon. On February 11, 2022, this Court denied Plaintiffs' Temporary Restraining Order ("TRO") against City Defendants. ECF No. 7, 34. Plaintiffs and the City Defendants engaged in expedited discovery in connection with Plaintiffs' PI motion thereafter sought, which concluded on June 3, 2022. *See* Docket Entry dated June 1, 2022.

On June 17, 2022, Plaintiffs filed an Amended Complaint. ECF No. 77. On June 27, 2022, Plaintiffs filed a Motion for an Order to Show Cause for a PI and TRO against City Defendants, ECF No. 85, and a separate PI motion against Commissioner Reardon, ECF Nos. 86, 87. On June 28, 2022, Plaintiffs filed a new Memorandum of Law in Support of their Motion for a PI and TRO and City Defendants filed their Memorandum of Law in Opposition of Plaintiffs' Motion for a TRO. ECF Nos. 88, 89. On June 29, 2022, this Court denied Plaintiffs' second TRO against the City. *See* Minute Order, ECF No. 91.

In their Amended Complaint, Plaintiffs allege that New York State Governor Kathy Hochul ("Governor Hochul") personally believes accepting the COVID-19 vaccine is consistent with her Christian faith. Am. Compl. at ¶ 278 ("In place of a cross, she wears a golden 'Vaxed' necklace.") Plaintiffs then speculate that Governor Hochul conveyed her own religious views regarding the vaccine to Commissioner Reardon by "instruct[ing] [DOL] to deny unemployment compensation to anyone who is unable to work due to a vaccine requirement." *Id.* at ¶ 289; *see also* ECF No. 86-1 at 8 (citing Governor Hochul's Press Release dated September 25, 2021).[12] The press release does not mention Governor Hochul's personal beliefs and instead cites to the DOH vaccine mandate, a policy created by DOH. *Id.* Plaintiffs then claim that Governor Hochul ordered Commissioner Reardon to issue FAQ #6, and that FAQ #6 is a "blanket disqualification

---

[12] *In Preparation for Monday Vaccination Deadline, Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage* (Sept. 25, 2021), https://www.governor.ny.gov/news/preparation-monday-vaccination-deadline-governor-hochul-releases-comprehensive-plan-address.

policy" that denies UI benefits to those who oppose the Covid-19 vaccine on religious grounds. Am. Compl. at ¶ 385. Plaintiffs allege that FAQ #6 on its face violates the Free Exercise and Establishment clauses of the First Amendment, the New York State Constitution and the New York City Human Rights Law. *Id.* at ¶ 599.

## V.    Status of the Named and Unnamed Plaintiffs' UI Applications

Out of the thirteen Named Plaintiffs, only four have applied for UI benefits. Am. Compl. at ¶¶ 23, 24, 27-34. Krista O'Dea and Liz Delgado were initially denied UI benefits. *Id.* at ¶¶ 383-84, 440. A Named Plaintiff allegedly applied for UI benefits and is still waiting for an initial determination. *id.* at ¶¶ 414 (Sabina Kolenovic). One unnamed putative class member was denied UI benefits, while another had their initial denial overturned by an ALJ and is currently receiving UI benefits. *Id.* at ¶¶ 532, 539.

After this Action was filed, DOL reviewed the complete claimant files for each named Plaintiff for the period March 1, 2020 to July 25, 2022. Thompson Decl. at ¶ 2. DOL does not have any UI applications or records for seven of the Named Plaintiffs: (1) Gennaro Agovino, (2) Curtis Cutler, (3) Frank Schimenti, (4) Dean Paolillo, (5) Dennis Pillet, and (6) Brendan Fogarty, (7) Matthew Rivera. *Id.* at ¶ 3. In addition, although there is a representation that Sabina Kolenovic applied for UI benefits, DOL cannot find any records despite searching for her full name, date of birth, and last four digits of her social security number. *Id.* at ¶ 4.

In addition, Plaintiff Janine DeMartini applied for and received the full 26 weeks of UI payments, but on July 12, 2022, DOL disqualified her because she stated on her initial application that she was laid off due to lack of work, when in fact she had been terminated for not complying with her employer's vaccine mandate. Thompson Decl. at ¶ 6. DeMartini's time to request a hearing before an ALJ expires on August 11, 2022. *Id.*

10

Similarly, Plaintiff James Schmitt initially received four weeks of UI benefits, but was determined ineligible on July 5, 2022, due to a protest filed by his former employer. *Id.* at ¶ 6. Based on Schmitt's initial claim, DOL determined that his overpayment of benefits was not the result of fraud or willful misrepresentation, and no overpayment was issued. *Id.* However, DOL mailed him a determination of ineligibility on July 6, 2022. *Id.* He has until August 5, 2022 to appeal this determination and ask for a hearing before an ALJ. *Id.*

DOL also denied Plaintiffs Liz Delgado, Krista O'Dea, and Laura Satira's applications for UI benefits, although Satira's claim may have been the subject of identity theft. *Id.* at ¶ 7 and Table A, n. 1. Delgado and Satira have not appealed their denials, and their time to appeal has expired. *Id.* O'Dea did appeal her denial to an ALJ and received a decision on June 30, 2022 that upheld DOL's initial denial. *Id.* at Table A. O'Dea has until August 1, 2022 to appeal to the UIAB. *Id.* at ¶ 7. An unnamed putative class member was allowed UI benefits after the ALJ overruled DOL's ineligibility determination on March 2, 2022. *Id.* at ¶ 8, Table B. Another unnamed class member's ineligibility determination was affirmed by the UIAB. *Id.*

## LEGAL STANDARDS

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Patton v. Dole,* 806 F.2d 24, 28 (2d Cir. 1986) (holding that PIs "should not be granted as a routine matter"). Specifically, the movant bears the burden of establishing, by clear and convincing evidence, that (a) it is likely to succeed on the merits; (b) it is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in its favor; and (d) an injunction is in the public interest. *See Winter*, 555 U.S. at 20; *see Abbott Labs. v. Adelphia Supply USA*, No. 15 Civ. 5826, 2015

11

WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom* 670 Fed. App'x 6 (2d Cir. 2016) (plaintiff is required to "carry the burden of persuasion by a clear showing for each factor").

The final two factors – the balance of equities and the public interest – "merge when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. N.Y.*, 2018 WL 2390125, *13 (E.D.N.Y. May 25, 2018). Where First Amendment rights are at issue, the test reduces to a single prong: "the likelihood of success on the merits is the dominant, if not decisive, factor." *New York Progress & Prot. PAC v. Walsh,* 733 F.3d 483, 488 (2d Cir. 2013).

In addition, the Second Circuit has "held the movant to a heightened standard" where (i) an injunction is "mandatory" (i.e., altering the status quo, rather than maintaining it), or (ii) the injunction "will provide the movant with substantially all the relief sought." *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, the movant must show "a clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the PI is in the public interest. *Id.*

Finally, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *See We The Patriots USA, Inc. v. Hochul (WTP)*, 17 F.4th 266, 279 (2d Cir. Nov. 4, 2021), *opinion clarified,* 17 F.4th 368 (2d Cir. Nov. 12, 2021), *cert. denied sub nom. Dr. A. v. Hochul,* 142 S. Ct. 2569 (Jun. 30, 2022).

**ARGUMENT**

I.     **PLAINTIFFS' MOTION SHOULD BE DENIED AS IT SEEKS THE ULTIMATE RELIEF IN THIS CASE**

Plaintiffs' PI request against Commissioner Reardon is *per se* deficient because it seeks relief unavailable by PI: final relief rendering all of the underlying claims fully resolved. *See* ECF No. 86 at 2. PIs are designed solely to provide relief "which is interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive." *Barchha v.*

12

*TapImmune, Inc.,* No. 12 Civ. 8530, 2013 WL 120639, at *2 (S.D.N.Y. Jan. 7, 2013). A PI does "not grant relief properly awarded only in a final judgment." *Id*. Here, Plaintiffs do not seek to maintain the status quo. Even though framed as "enjoining" DOL from denying UI benefits, what Plaintiffs want this Court to do is grant UI benefits to anyone who objects to the COVID-19 vaccines on religious grounds, regardless of whether the employer, who has a legal right to contest those claims, would oppose or appeal those decisions. *See* ECF No. 86 at 2.

Plaintiffs seek the final relief in their PI as in their Amended Complaint. *See* ECF No. 77 at 124.[13] Even the declaratory relief sought – a declaration that DOL cannot deny UI benefits "to persons who refuse vaccination on the basis of religious conviction" – would be resolved if the Court were to grant the requested mandatory injunction. *Id.* Thus, even before weighing the substantive validity of the requested injunction, Plaintiffs' motion should be denied as seeking final relief beyond the purview of a PI.

## II. PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS BECAUSE THE *BURFORD* ABSTENTION DOCTRINE APPLIES

"The *Burford* abstention doctrine serves to protect complex state administrative processes from undue federal interference." *Kachalsky v. Cacace*, 817 F. Supp. 2d 235 (S.D.N.Y. 2011). This doctrine provides that federal courts should abstain from asserting jurisdiction "where the exercise of federal review … would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). Generally, "*Burford*-type abstention is ordered to avoid needless conflict with the state's administration of its own affairs." *Weiser v. Koch,* 632

---

[13]    In addition, "because the Court has not certified the class, it lacks the power to order Defendants to take action regarding persons beyond the named Plaintiffs." *Kane v. de Blasio,* No. 21 Civ. 7863, 2021 WL 5909134, at *7 (S.D.N.Y. Dec. 14, 2021), *aff'd sub nom. Keil v. City of New York,* No. 21 Civ. 3043, 2022 WL 619694 (2d Cir. Mar. 3, 2022).

F. Supp. 1369, 1384 (S.D.N.Y. 1986); *see also Canaday v. Koch*, 608 F. Supp. 1460, 1468 (S.D.N.Y. 1985) (holding that *Burford* abstention "permits federal courts to exercise their discretion to refrain from interfering in …areas which are primarily of state concern and prerogative"). The Second Circuit has identified three factors to aid courts in determining whether federal interference would disrupt state efforts: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one another debatable construction to a state statute; and (3) whether the subject matter is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009).[14] All three factors weigh in favor of abstention here.

First, UI benefits are determined by a complex regulatory scheme that impacts not only Plaintiffs, but all New Yorkers. *See supra* 4-6. State law also expressly provides a three-tiered review process for challenges to UI determinations by both the claimants and their former employers. This process includes 30 days for a claimant to request a hearing before an ALJ, 20 days to appeal an ALJ decision to the UIAB, 30 days to appeal an UIAB decision to the Appellate Division, Third Judicial Department, and by permission, to the New York State Court of Appeals and ultimately, to the United States Supreme Court. *Id*. Plaintiffs' speculation that ALJs serve "at the direction of Commissioner Reardon or with her knowledge or consent," Am. Compl. at ¶ 529, as discussed above, is inaccurate. *See supra* 5-6.

As one court explained, "candidates for *Burford* abstention typically are cases in which the state has delegated oversight of a scheme involving both statues and regulations to a state agency in partnership with state courts." *Alliance of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 53 (D. Conn. 2013). That is precisely the relationship between DOL, the administrative

---

[14]    The Supreme Court has noted that "the various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11, n. 9 (1987).

tribunals that oversee challenges to UI eligibility determinations, and the New York State court system here. An injunction by this Court automatically granting UI benefits to anyone with religious objections against taking the COVID-19 vaccine would contravene the administrative and state court appeal process to which each claimant and each claimant's employer has a legal right to pursue. N.Y. Labor Law § 626 ("The procedure herein … shall be the sole and exclusive procedure notwithstanding any other provision of law.") *see also Matter of Numrich Gun Parts Corp. v. Rivera, as Comm'r of Labor, et al*., A.D.3d 981 (3d Dep't 2014) ("Labor Law § 626 makes it clear that the procedures set forth in Labor Law § 620 through 625 are the exclusive method for challenging unemployment insurance determinations.").

Given this three-tiered state administrative procedure, some Plaintiffs initially denied UI benefits may still be able to recover benefits upon the conclusion of a successful appeal. *See* Am. Compl. at ¶ 539 (unnamed class member had initial UI denial overturned by ALJ on appeal). Plaintiffs ask this Court to bypass the exclusive state court administrative scheme and award all "persons" the ultimate relief of UI benefits regardless of the merits of the application. *Id*. at 124-125 (prayer for relief). Such relief is barred by the abstention doctrine and risks inconsistent determinations between the federal and state courts. Moreover, the New York state courts have been fully capable of reviewing constitutional claims with respect to UI determinations. *See e.g., De Grego v. Levine*, 362 N.Y.S.2d 207, 208 (3d Dep't 1974), *aff'd,* 39 N.Y.2d 180 (1976) (holding the denial of UI benefits violated claimant's First Amendment rights to free speech); *Gladstone v. Catherwood,* 319 N.Y.S.2d 664, 666 (3d Dep't 1971), *aff'd,* 30 N.Y.2d 576 (1972) (holding that denial of UI benefits to claimant whose discharge resulted from his refusal to cut his hair and conform to employer's rules relating to physical appearance did not violate his constitutional rights).

15

Federal district courts in this Circuit have dismissed similar challenges on abstention grounds. In fact, this court has specifically held "to the extent that Plaintiff seeks to appeal his denial of unemployment benefits, this Court is not the proper forum for such claims. The handling of unemployment insurance benefits claims was committed to the administrative process by the New York Legislature. Only after a decision by the administrative agency may an adverse decision be appealed to the courts of the state." *Daniels v. Am. Airlines Inc.,* No. 19 Civ. 3110, 2022 WL 493573, at *9, n.12 (E.D.N.Y. Feb. 17, 2022); *see also Shehabeldin v. GSI,* No. 11 Civ. 5853, 2011 WL 6761070, at *2 (E.D.N.Y. Dec. 23, 2011) (holding that the federal district court has "no subject matter jurisdiction over this [UI] claim"); *Almanzar v. Zam Realty Mgmt. Co., LLC,* No. 11 Civ. 1168, 2011 WL 5865259, at *3 (S.D.N.Y. Nov. 21, 2011) (same).

In *Walker v. Comm'r of the NYS Dep't of Labor & Unemployment,* the plaintiff, who alleged that he was fired in violation of the American with Disabilities Act, filed a TRO and PI against DOL seeking the restoration of his UI benefits. No. 14 Civ. 6976, 2015 WL 128028 at *2 (E.D.N.Y. Jan. 8, 2015). The court denied the PI because "courts in this district have found no subject matter jurisdiction over denial of state unemployment benefits." *Id.* at *6. The court further advised Plaintiff "to pursue his remedies before [DOL] and in state court," even though it recognized that the process can be "frustrating." *Id.* The court also sympathized with the plaintiffs' claims that he was "on the verge of losing [his] room" and had "no money to buy food" or medication, but denied Plaintiff's TRO and PI based on plaintiff's inability to show a likelihood of success of his claims on the merits. *Id.* The Court should abstain under *Burford.*

III.    **PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS BECAUSE THEY LACK ARTICLE III STANDING**

"[T]he threshold question in every federal case" is whether the plaintiffs have standing to sue. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006). This requirement stems

16

from the principle that under Article III of the U.S. Constitution, "federal courts may hear only actual cases or controversies." *Saget v. Trump*, 375 F. Supp. 3d 280, 335 (E.D.N.Y. 2019). The three elements of standing are "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021). The "injury in fact" must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* "[S]tanding is not dispensed in gross," and plaintiffs bear the burden to "demonstrate standing for each claim that they press." *Grauman v. Equifax Info. Servs., LLC*, No. 20 Civ. 3152, 2021 WL 3239865, at *2 (E.D.N.Y. July 16, 2021). Neither the Named Plaintiffs nor NYFRL can satisfy these elements.

First, by their pleadings and DOL records, the Named Plaintiffs lack standing to proceed. Only four of the thirteen Named Plaintiffs allege that they have even applied for UI benefits, only two have been denied UI benefits, and none have completed the state court appeal process. Am. Compl. at ¶¶ 383-386, 414-415, 433-443, 496, 521-522, 527.[15] Moreover, the unnamed Plaintiff who is currently receiving UI benefits and the seven Named Plaintiffs who have not yet applied for UI benefits cannot show injury-in-fact. *Id.* at ¶ 539; Thompson Decl. at ¶¶ 3, 9.[16] For the remaining Plaintiffs who either have not applied for UI at all, or have not appealed their initial denials, their refusal to avail themselves of relief through the exclusive administrative procedure for review of UI determinations in state court deprives them of standing to assert their

---

[15]    Although not alleged to have applied for UI in the Amended Complaint, two additional Named Plaintiffs were found in DOL's system as both having applied for UI benefits. Thompson Decl. at ¶¶ 6, 7.

[16]    Specifically the unnamed Plaintiff, by winning her administrative appeal, already received the substantive relief sought – UI benefits. Her claims are therefore moot. *Delaware Riverkeeper Network v. NYSDEC,* 788 Fed. App'x 65, 66 (2d Cir. 2019) (Article III's case-or-controversy requirement requires that the case "remain alive at all stages of judicial proceedings," because "if an event subsequent to the filing of a lawsuit resolved the controversy, the case should be dismissed as moot."). The Court is permitted to take judicial notice of administrative agency decisions. *Smith v. Westchester Cnty*., 769 F. Supp. 2d 448, 461 n. 12 (S.D.N.Y. 2011).

17

constitutional claims in federal court. *See Chrysafis v. Marks*, 2021 WL 5563571, at *12 (E.D.N.Y. Nov. 29, 2021) (in constitutional challenge to the New York State eviction moratorium, the Court held that plaintiff-landlords had no standing to sue where the injury is "self-imposed and not fairly traceable"). Plaintiffs also cannot represent "similarly situated" class members if they cannot "independently satisfy the requirements of Article III standing." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Thus, at the most elementary level, Plaintiffs cannot show (and have made no attempt to establish) that any alleged injuries they may sustain are "fairly traceable" to the conduct of Commissioner Reardon.

Second, thee Organizational Plaintiff, NYFRL, also lacks representational standing to sue. As a matter of law, an organization cannot assert the rights of its members in a Section 1983 action. *League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984). Applying that holding, the court dismissed the sole organizational plaintiff in *Chrysafis*, the Rent Stabilization Association of NYC, Inc, a trade organization for the residential housing industry. 2021 WL 5563571 at *3 n.3. NYFRL also lacks direct standing to bring claims on its own behalf, as it only alleges its general mission. Am. Compl. at ¶ 22, *cf. Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund. Corp.*, 388 F. Supp. 3d 145, 164-65 (E.D.N.Y. 2019) (finding organizational standing where defendants' conduct required plaintiff to expend significant resources, including hiring a new employee, spend significant funds to place clients in housing, and pay brokers' fees). Thus, the Named Plaintiffs and NYFRL lack standing to bring this case on behalf of themselves and on behalf of others.

## IV. PLAINTIFFS CANNOT SHOW A LIKELIHOOD OF SUCCESS BECAUSE THEIR CLAIMS ARE NOT RIPE

Plaintiffs' allegations against Commissioner Reardon are not ripe. "To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere

hypothetical question." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013). "A claim is not ripe if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Id.* Here, only four of the thirteen Named Plaintiffs allege that they have even applied for UI benefits, only two have been denied UI benefits, and none have appealed those denials. Am. Compl. at ¶¶ 383-386, 414-415, 433-443, 496, 521-522, 527-538. There is no live case or controversy for this Court to adjudicate.

## V.   PLAINTIFFS' CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY

### A.  Plaintiffs' Claims for Damages and Retroactive Relief are Barred

Plaintiffs' claims against Commissioner Reardon also are barred by the Eleventh Amendment. *See* U.S. Const. amend. XI. "To the extent that a state official is sued for damages in h[er] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Plaintiffs name Commissioner Reardon in her official capacity. Am. Compl. at ¶ 39. As such, their claims for compensatory, actual and punitive damages are beyond the subject matter jurisdiction of this Court. *Id.* at ¶¶ 2, 606.

Plaintiffs' further plea for a declaratory judgment that Commissioner Reardon is violating both the U.S. Constitution and "similar provisions in the New York State Constitution and the New York City Charter" is unavailing because the Eleventh Amendment bars retrospective declaratory relief against state officials and a federal court cannot issue a declaratory judgment that state law has been violated. *Id.* at ¶ 599, 124 (prayer for relief); *Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004) ("State officials cannot be sued in their official capacities for retrospective relief under § 1983."); *see Kelly v. N.Y.S. Civ. Serv. Comm'n*, No. 14 Civ. 716, 2015 WL 861744, at *4 (S.D.N.Y. Jan. 26, 2015) *aff'd*, 632 F. App'x 17 (2d Cir. 2016) ("The

19

Eleventh Amendment bars federal courts from enjoining state officers from violating *state* law.") (italics in original).

### B.  The *Ex Parte Young* Exception for Prospective Relief Does Not Apply

There is a "narrow exception to state sovereign immunity," permitting "claims based on federal law violations for prospective injunctive or declaratory relief against state officials." *Nachmenson v. N.Y.S. Dep't of Labor,* No. 20 Civ. 5873, 2022 WL 1093195, at *2 (E.D.N.Y. Apr. 12, 2022). This "limited exception" to the Eleventh Amendment "must be tailored as precisely as possible to vindicate federal rights." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 277 (1997). The exception applies if plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007). In addition, "actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." *Loren v. Levy,* 2003 WL 1702004, at *11 (S.D.N.Y. March 31, 2003).

First, the payment of UI benefits from New York public state funds is not considered prospective relief, but rather retroactive monetary relief against the State, which is barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651, 665, 678 (1974) (reversing lower court award of retroactive public benefits wrongfully withheld as barred by sovereign immunity, because "[t]he funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself").

Second, Plaintiffs cannot seek prospective injunctive relief where they do not allege any facts to suggest any ongoing violation of federal law by Commissioner Reardon, especially when

20

the majority of Plaintiffs have not yet applied for UI benefits. Am. Compl. at ¶¶ 383-386, 414-415, 433-443, 496, 521-522, 527. While Plaintiffs attempt to link certain "hostile" public comments made by Governor Hochul to Commissioner Reardon, her public comments are irrelevant and insufficient to establish any ongoing violation of federal law by Commissioner Reardon. *Id*. at ¶¶ 278, 289. In fact, Plaintiffs fail to acknowledge that the Second Circuit has already held that the very same public comments by Governor Hochul on which Plaintiffs rely here "do not evince animosity towards particular religious practices or a desire to target religious objectors to the vaccine requirements *because* of their religious beliefs. Rather, they suggest that the State wanted more people to obtain the vaccine out of a deep concern for public health, which is a religion-neutral government interest." *WTP*, 17 F.4th at 284 (italics in original).

Even if Plaintiffs seek prospective declaratory relief against Commissioner Reardon, such relief "is not available when the result would be a partial end run around the rest of the Supreme Court's Eleventh Amendment jurisprudence, particularly its limitations on the *Ex Parte Young* doctrine." *Green v. Mansour*, 474 U.S. 64, 71-73 (1985). Plaintiffs in *Mansour* filed class actions claiming that the Michigan Department of Social Services were miscalculating benefits that violated federal aid programs. *Id*. at 64-65. With respect to plaintiff's injunctive relief claims, the *Mansour* Court explained that the relief under *Ex Parte Young* does not apply where the real-world effect of the declaratory judgment would be to provide a federal judgment on the issue of liability against the State, with the hope that it would serve as *res judicata* in state-court proceedings. *Id*. at 73. "The result would be little different than a prohibited direct federal court award of money damages against the state to the extent it would reduce a state court proceeding into a mere accounting session whereby damages or restitution would be computed." *Mills v. State of Me.*, 118 F.3d 37, 55 (1st Cir. 1997); *see also New York State Ct. Clerks Ass'n v. Unified*

21

*Ct. Sys. of the State of New York,* 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014) (same). Similarly, a prospective declaratory judgment by this Court against Commissioner Reardon would reduce the exclusive state court remedy to appeal Plaintiffs' UI benefits to a "mere accounting session." *Id*; *see also Deutsche Alt-A Secs. Mortg. Loan Trust v. DB Structured Prods.,* 958 F. Supp. 2d 488, 507 (S.D.N.Y. July 23, 2013) (holding that a "declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action").

Plaintiffs also seek a declaration that Commissioner Reardon is liable for all denials of Plaintiffs' UI benefits, even though most of the Named Plaintiffs have not yet even applied for UI benefits. This is contrary to the purpose of declaratory judgements, which is to resolve a disputed question of law. *See* 28 U.S.C. § 2201 (declaring the rights and other legal relations of any interested party seeking such declaration). What Plaintiffs actually seek is not a declaratory judgment but a finding of liability against Commissioner Reardon, which is improper for this Court to consider because it would be an "end run" around the Eleventh Amendment. *Mansour*, 474 U.S. at 73.[17] Finally, even if this Court were to grant Plaintiffs' requested declaratory judgment against DOL, Plaintiffs would still not necessarily be entitled to UI benefits because they must meet eligibility and monetary thresholds under the Labor Law that are separate and apart from any claim of religious objection to the COVID-19 vaccine. *See supra* 4-5.

## VI. PLAINTIFFS CANNOT PREVAIL AGAINST COMMISSIONER REARDON ON THEIR FIRST AMENDMENT CLAIMS

### A. DOL's Process for Determining UI Benefits Are Subject To Further Appeal

As relevant here, an employee's failure to comply with an employer's reasonable rules and procedures, even based on religious objections to those rules, has been found to constitute

---

[17]    Moreover, a federal "district court's decision to issue a declaratory judgment is discretionary." *Daebo Int'l Shipping Co. v. Americas Bulk Transp.,* No. 12 Civ. 7960, 2013 WL 2149595, at *2 (S.D.N.Y. May 17, 2013).

disqualifying misconduct or voluntary resignation without good cause. *See Matter of Zdunski v. Comm'r of Lab,* 182 A.D.3d 953, 954 (3d Dep't 2020) (affirming denial of UI benefits due to claimant's failure to attend mandatory LGBTQ+ training based on his religious objection and insistence that there be a mandatory training on Christianity as well); *Matter of Katz v. Comm'r of Lab.,* 122 A.D.3d 993, 994 (3d Dep't 2014) (affirming denial of UI benefits due to claimant's resignation after she was given an assignment when she needed to leave work early for Shabbat).

In *Carr v. Ross,* the Appellate Division articulated the difference between following a condition of employment (medical note required for paid sick leave where claimant's religion forbids him from seeking medical treatment), and employment itself (Jehovah's Witness producing weapons of war that would conflict with his religious beliefs). 81 A.D.2d 999, 999-1000 (3d Dep't 1981). The Appellate Division held "in both *Sherbert* and *Thomas* … the employment itself was religiously objectionable to the employees concerned." Here, the jobs Plaintiffs hold – as plumbers, teachers, medical workers, fire fighters, police officers– are not themselves conflicting with their faith. Am. Compl. at ¶¶ 22-35. Rather, it is the lawful condition of their employment – vaccination – that is objectionable. *Carr,* 81 A.D.2d at 999.

**B. Vaccine Mandates Prior to the COVID-19 Pandemic Have Been Lawful**

The Supreme Court has for over a century upheld the rights of states to enact compulsory vaccination laws. *See Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). Consistent with *Jacobson*, New York has regularly imposed vaccination requirements on healthcare workers, including vaccination for rubella since 1980 and measles since 1991.[18]

---

[18]     *See* Health and Immunization of Employees of Medical Facilities and Certified Home Health Agencies, 3 N.Y. Reg. 6, 6 (Jan. 14, 1981) (rubella); Immunization of Health Care Workers, 13 N.Y. Reg. 16, 16 (Dec. 24, 1991) (measles).

Before the COVID-19 pandemic, federal and state courts have long upheld mandatory vaccination requirements, including those without a religious exemption. *Philipps v. City of New York,* 775 F.3d 538, 542 (2d Cir. 2015) (individual liberties did not overcome vaccination required in the interest of the population as a whole); *Caviezel v. Great Neck Pub. Schs.,* 500 F. App'x 16, 19 (2d Cir. 2012) (summary order) ("[T]he Court finds that the free exercise clause of the First Amendment does not provide a right for religious objectors to be exempt from New York's compulsory inoculation law.");[19] *Workman v. Mingo Cnty. Bd. of Educ.,* 419 F. App'x 348, 353-54 (4th Cir. 2011) (West Virginia's mandatory school vaccine requirements did not violate the Free Exercise Clause); *V.D. v. New York*, 403 F. Supp. 3d 76 (S.D.N.Y. 2019) (court denied parents' PI to stop the repeal of religious exemption to New York's school vaccine law).

At all relevant times, the DOE Order remains lawful, as it creates "a condition of employment." *Broecker v. New York City Dep't of Educ.,* No. 21 Civ. 6387, 2022 WL 426113, at *8 (E.D.N.Y. Feb. 11, 2022); *Maniscalco v. N.Y. City Dept. of Educ.*, No. 21 Civ. 5055, 2021 WL 4344267, at *3 and *10 (E.D.N.Y. Sept. 23, 2021), *aff'd,* 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (same). The same is true for the City Order. In *Garland v. New York City Fire Dep't*, because plaintiffs (i.e. unvaccinated FDNY employees) "failed to satisfy this condition of employment" they were "no longer qualified" to serve as City employees. No. 21 Civ. 6586, 2021 WL 5771687, at *25 (E.D.N.Y. Dec. 6, 2021).[20] Finally, the Second Circuit has affirmed

---

[19]    "Moreover, the Court is aware of no federal court that, after addressing the relevant Supreme Court opinions, has explicitly held that the First Amendment does provide a religious exemption from mandatory inoculation." *Caviezel v. Great Neck Pub. Schs.,* 739 F. Supp. 273, 284 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x 16, 19 (2d Cir. 2012).

[20]    *See also Abadi v. City of New York*, 2022 WL 347632, at *2 (S.D.N.Y. Feb. 4, 2022) (same); *Matter of Ansbro v. de Blasio, et al.,* Index No. 159738/2021, (Sup. Ct. N.Y. Cnty., Feb. 16, 2022) (same); *Detective Endowments Association, et al. v. City of New York, et al.,* Index No. 650656/2022, (Sup. Ct. N.Y. Cnty., June 10, 2022) (same); *See Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al.*, Index No. 85229/20121 (Sup. Ct. Rich. Cnty. Oct. 27, 2021) *aff'd* 2021 WL 5828792 (2d Dep't Dec. 8, 2021) (same).

24

the Eastern District's denial of a PI against the DOH vaccine mandate because plaintiffs in that case did not meet their burden to show that the regulation was "not a neutral law of general applicability under *Smith*, and that the resulting injury does not satisfy rational basis review." *WTP,* 17 F.4th at 273.

### C. Plaintiffs Fail to Allege FAQ #6 Violates the Free Exercise Clause

"In order to prevail on a Free Exercise claim, a plaintiff generally must establish that the object of the challenged law is to infringe upon or restrict practices because of their religious motivation, or that the purpose is …the suppression of religion or religious conduct." *Okwedy v. Molinari*, 69 Fed. App'x 482, 484 (2d Cir. 2003); citing *Church of Lukumi Babalu Ave., Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).

While Plaintiffs allege that FAQ #6 compels them to act against their religious beliefs by choosing between their "religious beliefs and the vaccine requirement" (Am. Compl. at ¶ 371), Plaintiffs simply misinterpret the FAQ. DOL does not categorically deny UI benefits to individuals who quit or are terminated because they refuse to take the COVID-19 vaccine on religious grounds. As FAQ #6 makes clear, benefits are available so long as there was "a valid *request* for accommodation." Geskey Decl. at ¶ 8 at Ex. B. And, for purposes of determining eligibility for UI benefits, a valid request may exist even if an employer was unable or unwilling to provide the accommodation, thereby leading to the employee's resignation or termination. There is thus no basis on this record to presume that Plaintiffs will in fact be denied UI benefits if they lose their jobs based on their religious objections to receiving the COVID-19 vaccines. Plaintiffs are thus fundamentally mistaken to suggest that DOL is forcing them to choose between their "religious beliefs and the vaccine requirement." *Id*. at ¶ 371.

25

In addition, Plaintiffs are wrong for at least two reasons to claim that Commissioner Reardon, "at the behest" of Governor Hochul, issued a "blanket disqualification policy" in or around September 2021 that violates the Free Exercise and Establishment Clause of the First Amendment. Am. Compl. at ¶¶ 289, 385, 599; *see also* ECF No. 86-1 at 8. First, as referenced above, Plaintiffs simply mischaracterize FAQ #6. Second, FAQ #6 is not a formal law, rule, or policy, and thus lacks the "blanket" effect that Plaintiffs ascribe to it. Instead, it provides guidance in response to the increase in questions from the general public regarding UI eligibility and the COVID-19 vaccine. *See* Geskey Decl. at ¶¶ 4, 9, Exs. A, B. The FAQs are not intended to be binding policy and do not qualify as "rules" pursuant to the State Administrative Procedure Act §§ 100-501 ("SAPA"). *Id.* The Court of Appeals has clarified that what triggers a "rule" for the purposes of SAPA is whether the rule applies "fixed, general principle[s] … without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers." *Matter of Schwartfigure v. Hartnett*, 83 N.Y.2d 296, 301 (1994); SAPA § 102(2)(a)(i).

Even if FAQ #6 is considered a binding rule, law, or across-the-board policy that can be challenged on constitutional grounds, it is well-established that the right to free exercise of religion does not relieve an individual of the obligation to comply with a "neutral law of general applicability." *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 879 (1990). To analyze neutrality, courts first consider whether the rule or policy is neutral on its face, and then examine whether its purpose is to target religious conduct. *WTP*, 17 F.4th at 281 ("A law may be not neutral if it explicitly singles out a religious practice, but even a facially neutral law will run afoul of the neutrality principle if it targets religious conduct for distinctive treatment.") A rational basis is all that is required to uphold neutral laws of general applicability,

*i.e.*, a law that does not target, disapprove of, or single out religious groups or practices, even if it "proscribes (or prescribes) conduct that [one's] religion prescribes (or proscribes)." *Id*.

Here, FAQ #6 is neutral because it does not target religious objectors to the COVID-19 vaccine for distinctive treatment. *See Lukumi*, 508 U.S. at 533-54; *Smith,* 494 U.S. at 878 (where an alleged limitation on the exercise of religion "is not the object . . . but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended").[21] By its plain language, FAQ #6 does not mention religious activity at all – in contrast to the COVID-19 executive orders at issue in *Roman Catholic Diocese of Brooklyn v. Cuomo,* which expressly "single[d] out houses of worship" for distinctive treatment. 141 S Ct. 63, 66 (2020). Rather, FAQ #6 provides guidance to all employees who resign or are terminated for refusing vaccination, whether that refusal was based upon a religious objection or for any other reason. *Id*. FAQ #6 also does not dictate the outcome of any particular UI application, as each application is reviewed on a case-by-case basis. *Id.* Indeed, FAQ #6 acknowledges that there are employees who may remain eligible for UI benefits despite refusing vaccination if their "work has no public exposure and the worker has a compelling reason for refusing to comply with the directive." *Id.*

Nor is FAQ #6 rendered not neutral by Governor Hochul's public comments. *See* Am. Compl. at ¶¶ 279. In *WTP*, the Second Circuit considered many of the same statements made by Governor Hochul concerning COVID-19 vaccination and held that "Governor Hochul's expression of her own religious belief as a moral imperative to become vaccinated cannot reasonably be understood to imply an intent on the part of the State to target those with religious

---

[21]    Indeed, Justice Scalia expressly stated that the strict scrutiny rule "respondents favor would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind" including for example, "compulsory vaccination laws." *Smith*, 494 U.S. at 889-89.

beliefs contrary to hers; otherwise, politicians' frequent use of religious rhetoric to support their positions would render many government actions 'non-neutral' under *Smith*." 17 F.4th at 288. Plaintiffs' theory that the Governor intentionally targeted religious claimants is "not a plausible conclusion" and should be rejected in light of binding precedent. *Iqbal v. Ashcroft*, 556 U.S. 662, 682 (2009).

Finally, Plaintiffs allege that FAQ #6 is not generally applicable because it purportedly provides for a mechanism for individualized exemptions and therefore must be subject to strict scrutiny. ECF No. 86-1 at 22, citing *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1871 (2021). The Supreme Court recognized that a policy is not generally applicable if it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Id.* at 1877. That circumstance does not apply here because FAQ #6 does not vest any government official or agency with broad discretion to grant individualized exemptions. To the contrary, each claimant's application continues to be evaluated based on the specific facts presented to determine whether they left employment without good cause. This fact-specific analysis applies to claimants whether they left employment based on a refusal to get a COVID-19 vaccine or some other reason, and whether a COVID-19 vaccine refusal was based on alleged religious grounds or some other grounds. An inherently fact-specific inquiry that applies to each claimant does not create any system of individuals exceptions.

Plaintiffs are thus mistaken to rely on *Sherbert v. Verner*, 374 U.S. 398 (1963), and suggest that all UI compensation schemes fail the general applicability test. As the Supreme Court explained in *Smith*, the scheme at issue in *Sherbert* was not generally applicable because it allowed exceptions for "good cause," which was an undefined standard under that scheme. 494 U.S. at 884. "[W]here the State has in place a system of individual exemptions, it may not refuse

28

to extend that system to cases of 'religious hardship' without compelling reason." *Id*. Here, by contrast, FAQ #6 does not lay out any similarly broad discretionary scheme of individualized exemptions. Rather, FAQ #6 contains criteria that are "objectively defined," to guide the determination of eligibility for UI benefits. For example, FAQ #6 notes how decisions are made regarding objective categories of persons, including healthcare workers, nursing home workers, and school workers. *See WTP,* 17 F.4th at 289.

Therefore, FAQ #6 is a neutral guidance of general applicability and is subject to rational-basis review, a bar that it readily clears because it lays out rational factors to consider when evaluating whether an unvaccinated worker is eligible for UI benefits, including the existence of a vaccine mandate, the job duties and responsibilities, whether there exists "a valid request for accommodation," and the extent of a person's exposure to the public.

### D. Plaintiffs Fail to Allege FAQ #6 Violates the Establishment Clause

The Establishment Clause bars Congress from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend. I. Plaintiffs claim Commissioner Reardon is violating the Establishment Clause because "[DOL]'s policy to deny [UI benefits] to persons who are unemployed because they possessed religious objections to the Mandates violates the Free …Establishment Clauses" of the U.S. Constitution. Am. Compl. at ¶ 599. This circular argument is the only reference to Commissioner Reardon and the Establishment Clause in the entire 665-paragraph Amended Complaint. ECF No. 77. There also is no mention of the Establishment Clause in Plaintiffs' brief in support of their PI against Commissioner Reardon. ECF No. 86-1. While Plaintiffs attempt to allege that the City Defendants violated the Establishment Clause by "expressing denominational preferences for organized religion," *id.* at 19, this does not state a claim against DOL. As such, Plaintiffs fail to

29

show that they are likely to prevail on their Establishment claim against Commissioner Reardon and their motion for a PI should be denied.

## VII.   PLAINTIFFS HAVE NOT SHOWN IMMINENT IRREPARABLE HARM

"To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a [PI] they will suffer an injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Loss of employment, pay, health insurance, UI benefits – while serious and significant, are reparable. *See Guitard v. United States Sec'y of Navy,* 967 F.2d 737, 742 (2d Cir. 1992) ("[I]njuries that generally attend a discharge from employment – loss of reputation, loss of income and difficulty in finding other employment –do not constitute the irreparable harm necessary to obtain a preliminary injunction.")

Plaintiffs attempt to water down this well-established legal standard by relying on *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and argue that "the loss of First Amendment freedoms, for even minimal period of time, unquestionably constitutes irreparable injury." ECF No. 86-1 at 23. Plaintiffs fail to include the fact that *Elrod* involves the political speech of public employees and that the court emphasized that in the political speech context, "the timeliness of political speech is particularly important." *Elrod*, 427 U.S. at 373 n. 29. *Elrod* can also be distinguished because the Supreme Court found the Republican-party Plaintiffs <u>were likely to succeed</u> on their First Amendment claims that the newly elected sheriff affiliated with the Democrat Party threatened to fire them solely based on the fact that they were not registered Democrats. *Elrod,* 427 U.S. at 374. There are many arguments here, however, that Plaintiffs cannot prevail.

Moreover, Plaintiffs' "constitutional" exception would swallow the rule in all Section 1983 cases arising out of an alleged violation of the plaintiffs' rights. The actual rule articulated

30

by the courts is more modest, and is consistent with the general proposition that alleged financial losses are insufficient to show irreparable harm. It holds that "merely asserting a constitutional injury is insufficient to automatically trigger a finding of irreparable harm .... In other words, the Plaintiff must still convincingly show that a violation carries noncompensable damages in addition to money damages." *Garland,* 2021 WL 5771687, at *8 (citing *KM Enters., Inc. v. McDonald*, No. 11 Civ. 5098, 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012)). Thus, where the moving party "alleges but fails to make a strong showing of constitutional harm that cannot be compensated through monetary damages, granting a preliminary injunction is inappropriate." *Id.* (citing *A.H. by and through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021)); *Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir. 2008) ("Even when a complaint alleges First Amendment injuries, … irreparable harm is not presumed and must still be shown.").

Here, Plaintiffs' greater than six-month delay from when the first unnamed plaintiff was denied UI benefits on January 10, 2022 (Am. Compl. at ¶ 527) "severely undermines" their claim of irreparable harm. *Levola v. Fischer*, 403 F. App'x 564, 565 (2d Cir. 2010). "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985). "There is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 21 Civ. 00038, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (quoting *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17 Civ. 8028, 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) (collecting cases)). Plaintiffs' motion for a PI at this late juncture should

31

be denied for failure to show that they will be irreparably harmed in the absence of automatically

receiving UI benefits when they can still apply for UI benefits and appeal any adverse

determinations through state court.

**CONCLUSION**

For the forgoing reasons, Commissioner Reardon respectfully requests that the Court

deny Plaintiffs' motion for a preliminary injunction, and grant such relief as the Court deems

proper.

Dated:  New York, New York
       July 29, 2022

LETITIA JAMES
Attorney General
State of New York

By: _____

Shi-Shi Wang
Assistant Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8625
shi-shi.wang@ag.ny.gov

32