**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
NEW YORKERS FOR RELIGIOUS LIBERTY, INC., et al,


Plaintiffs,

- against -

THE CITY OF NEW YORK, et al,

Defendants.
-----------------------------------------------------------------------x

**REPLY IN SUPPORT OF MOTION TO AMEND**

1:22-cv-00752 (DG) (VMS)

---

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF**
**MOTION TO AMEND FIRST AMENDED COMPLAINT**

---

Gibson Law Firm, PLLC
Sujata S. Gibson, Esq.
120 E. Buffalo St, Ste. 2
Ithaca, NY 14850
(607) 327-4125
Email: sujata@gibsonfirm.law

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT..................................................................................................................1

    I.       Futility Is Not Properly Before the Court at This Stage ....................................1

    II.     The Proposed SAC Pleads Viable Claims .........................................................2

        A.  Defendants Improperly Demand Evidence at the Pleading Stage ................3

        B.  Defendants Mischaracterize Controlling Precedent.....................................3

        C.  The SAC's Constitutional Claims Are Viable Under Established
            Standards.....................................................................................................3

        D.  Defendants' Own Authorities Defeat Their Futility Argument....................4

    III.    Adding Personal Capacity Claims Against Adams and Chokshi Is Not Futile ...5

    IV.   Adding Title VII Claims Is Not Futile ................................................................6

        A.  Title VII Claims Relate Back Under Rule 15(c)..........................................6

        B.  American Pipe Tolling Applies ....................................................................7

        C.  Defendants' Timing Argument Fails on the Facts........................................7

        D.  The Holowecki Standard Is Satisfied...........................................................8

    V.     Adjusting the Named Class Representatives and Parties Is Not Futile ..............8

        A.  Kouames' Claims Are Timely .....................................................................8

        B.  Jurado's Claims Are Timely ........................................................................8

        C.  Smith's Claims Are Timely .........................................................................9

    VI.   The Proposed SAC Complies With Rule 8 .........................................................9

CONCLUSION..............................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*American Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974) ....................................................................................... 7, 8

*Breyette v. Amedore*,
   205 F.R.D. 416, 419 (N.D.N.Y. 2002)................................................................ 7

*Employment Div. v. Smith*,
   494 U.S. 872 (1990)....................................................................................... 5, 6

*HCC, Inc. v. R H & M Mach. Co.*,
   39 F.Supp.2d 317, 322 (S.D.N.Y. 1999) ........................................................... 2

*Holowecki v. Federal Express Corp.*,
    440 F.3d 558, 564 (2d Cir. 2006) ..................................................................... 8

*Johnson v. Al Tech Specialties Steel Corp.*,
   731 F.2d 143, 146 (2d Cir. 1984) ..................................................................... 8

*Kane* v. *De Blasio*,
   19 F.4th 152, (2d Cir. 2021) ......................................................................... 3, 4

*Kane* v. *De Blasio*,
   575 F.Supp. 3d 435 (S.D.N.Y. 2021)................................................................. 3

*Masterpiece Cakeshop v. Colorado C.R. Comm'n*,
   138 S. Ct. 1718, 1730 (2018).......................................................................... 4

*Monell v. Department of Social Services*,
   436 U.S. 658, 691 (1978)................................................................................10

*New Yorkers for Religious Liberty, Inc. v. City of New York*,
   125 F.4th 319 (2d Cir. 2024) ....................................................................1, 3, 9

*Ricciuti v. N.Y.C. Transit Authority*,
   941 F.2d 119, 123 (2d Cir. 1991) ..................................................................2, 3

*Tunnell et al v. City of New York*,
   1:25-CV-01781 (AMD-MMH) .......................................................................7, 8

*Vasquez v. City of New York*,
   No. 22-CV-05068 (EG), ECF No. 83 (E.D.N.Y. June 2, 2025) ................................4

*Whitfield v. City of New York,*
    96 F.4th 504, 528 (2d Cir. 2024)   ...............................................................................9

**Statutes or Rules**

Civil Rights Act of 1964 § 7 ..........................................................................................*passim*

Federal Rule of Civil Procedure 8 ......................................................................... 9, 10

Federal Rule of Civil Procedure 15 ...................................................................... 1, 5, 6

42 U.S. Code § 1983 ................................................................................................... 5

**PRELIMINARY STATEMENT**

Defendants ask this Court to short-circuit normal motion practice by granting them a motion to dismiss they have never filed. Their futility arguments fail on multiple fronts. First, the procedural posture is improper—this Court already determined that amendment should precede any motion to dismiss, and resolving complex constitutional and statutory claims through futility review substitutes judicial speculation for adversarial testing.

Second, defendants grossly mischaracterize controlling law. They cite cases that were reversed in plaintiffs' favor and other decisions where similar claims survived motions to dismiss and even summary judgment for the argument that claims here are not viable. Most importantly, the Second Circuit's recent NYFRL decision both validated these types of claims and imposed heightened pleading requirements that the SAC specifically addresses.

Third, the SAC alleges a systematic scheme of religious discrimination spanning dozens of City agencies. It incorporates substantial evidence discovered during the three-year stay and provides the detailed factual allegations required by NYFRL to meet current pleading standards. The SAC's constitutional, statutory, and class claims are legally viable and factually supported.

This is precisely the type of complex civil rights case where Rule 15's liberal amendment standard should apply with "particular strictness." The motion should be granted.

**ARGUMENT**

**I.      FUTILITY IS NOT PROPERLY BEFORE THE COURT AT THIS STAGE.**

Defendants oppose amendment solely on futility grounds, essentially asking this Court to grant them a motion to dismiss that they have never filed. This puts the cart before the horse. The procedural posture counsels against substantive futility review at this stage. Defendants have not yet answered the First Amended Complaint or filed any dispositive motion. The Court's prior

1

ruling further also counsels against futility review. At the December 2, 2024 conference, Plaintiffs asked the Court if they should seek leave to amend before or after Defendants' anticipated motion to dismiss. The Court stated: "I don't think it makes much sense for the defendants to be putting in a letter now challenging your -- in advance of a motion to dismiss on a complaint that you're indicating you are going to seek leave to amend" and decided that amendment should precede the motion to dismiss [Transcript of Telecon. 12/2/24 at 11-12]. Permitting defendants to bypass normal motion practice now would improperly short-circuit the adversarial process by deciding merits issues disguised as futility at the amendment stage. *See HCC, Inc. v. R H & M Mach. Co.*, 39 F.Supp.2d 317, 322 (S.D.N.Y. 1999) (holding that denial of amendment on "futility" is a dispositive ruling). As no dispositive motion has yet been filed, there is no benchmark to decide futility upon at this stage.

Even if the Court undertakes futility review before the dispositive motion is filed, Defendants fail to meet their high burden. The standard strongly favors plaintiffs in civil rights cases. In cases asserting futility, leave should be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991). "This principle should be applied with particular strictness when the plaintiff seeks to file an amended complaint charging a violation of his civil rights," as here. *Id*. Far from meeting this standard, the SAC asserts many viable paths to recovery.

## II.   THE PROPOSED SAC PLEADS VIABLE CLAIMS

Defendants' futility argument fails because they mischaracterize both the law and the facts in the proposed SAC. Their opposition rests on improper evidentiary challenges, misstatements of controlling precedent, and a fundamental misunderstanding of the pleading standard.

2

## A. Defendants Improperly Demand Evidence at the Pleading Stage

Defendants argue that "Plaintiffs should be required to produce the entire body of 'evidence' referenced and relied upon in the proposed SAC before the Court rules on Plaintiffs' motion to amend." [MOL at 16]. This would be reversible error. *Ricciuti*, 941 F.2d at 123–24 (reversing lower court's dismissal and holding "a plaintiff is not required to prove his case at the pleading stage. Indeed, 'the pleading of evidence should be avoided.'"). At this stage, the Court must accept the SAC's factual allegations as true and draw all inferences in Plaintiffs' favor.

## B. Defendants Mischaracterize Controlling Precedent

Defendants claim this Court should reject amendments because similar "tired" claims "have already been conclusively rejected by the Second Circuit in *Kane*, 575 F.Supp. 3d 435 (S.D.N.Y. 2021)." [MOL at 16]. This blatantly misrepresents the law. The district court decision defendants cite was reversed by the Second Circuit in *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), which held that plaintiffs not only stated viable free exercise claims but were likely to succeed and entitled to preliminary injunctive relief. If plaintiffs could state claims on that early-stage complaint, the detailed SAC here easily meets futility standards. More recently, in *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. 2024) ("NYFRL"), the Second Circuit also reversed dismissal of two plaintiffs' claims, holding they plausibly pleaded free exercise violations. Plaintiffs' claims in this action should similarly succeed as they are materially similar to the successful NYFRL plaintiffs.

## C. The SAC's Constitutional Claims Are Viable Under Established Standards

Moreover, another core reason that Plaintiffs requested to amend after NYFRL was decided was that the Second Circuit offered novel pleading standards in that case which they now address through the amendments. The proposed amendments establish that the religious accommodation

3

policies were neither neutral nor generally applicable, triggering strict scrutiny of the free exercise claims.

For instance, the proposed SAC details a two-track system that created constitutional violations. Defendants established one track for employees whose beliefs qualified under arbitration standards (the same ones found unconstitutional in *Kane*), and a separate "Citywide Panel" track for others. This created a fundamental constitutional problem: the arbitration policy required accommodation if religious beliefs qualified under the discriminatory standard (in which case employees "shall remain on payroll" regardless of hardship), while the Citywide Panel routinely denied similarly situated employees on alleged "undue hardship" grounds. So hundreds and sometimes thousands of similarly situated employees were accommodated at various agencies while Plaintiffs were not. The only difference was whether their beliefs qualified under the discriminatory arbitration standards.

The SAC also alleges that after the Second Circuit found the arbitration policy unconstitutional in *Kane*, defendants failed to disavow it and even expanded the two-track system citywide. Under *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 138 S.Ct. 1719, 1730 (2018), failure to disavow discriminatory standards defeats neutrality and triggers strict scrutiny. The SAC further alleges a host of other specific facts showing animus and double standards, such as that City officials sent guidance encouraging categorical denial of accommodations for Catholics, Jews, Buddhists, and others based on the content of their beliefs. See SAC ¶¶ 109, 111, 177-211, 223-272. Defendants argue these allegations are "false," but factual disputes have no place in futility analysis where the Court must credit plaintiffs' allegations.

**D.  Defendants' Own Authorities Defeat Their Futility Argument**

4

Defendants further undermine their futility argument by citing cases that survived motions to dismiss and even summary judgment on materially similar claims. For instance, *Vasquez v. City of New York*, No. 22-CV-05068 (HG), ECF No. 83 (E.D.N.Y. June 2, 2025), involved a firefighter denied religious accommodation from the same vaccine mandate. The court denied the City's summary judgment motion and granted partial summary judgment to the plaintiff on his Title VII claims. Similarly, the other cases defendants cite—which they acknowledge involve similar facts (Def. MOL at 17)—demonstrate that these claims routinely survive dispositive motions, as all of those claims did survive.

### III.   Adding Personal Capacity Claims Against Adams and Chokshi is Not Futile.

Defendants' futility argument regarding personal capacity claims against Mayor Adams and Commissioner of Health Chokshi is similarly meritless.

Defendants complain that Plaintiffs' February 2025 status letter to the Court didn't mention personal capacity claims, but this is irrelevant. The letter explicitly stated it was "not exhaustive" and was a status report on amendment negotiations, not a binding limitation on proposed amendments. Moreover, personal capacity amendments were discussed prior to the motion, Federal Rule 15 permits amendment at any time subject to the Court's discretion, and defendants cite no authority requiring pre-disclosure of every potential amendment.

More fundamentally, defendants ask this Court to resolve complex factual questions about personal involvement that are inappropriate for futility analysis. Personal involvement under § 1983 often requires fact-intensive inquiry into officials' knowledge, intent, and actions—precisely the type of analysis better suited for summary judgment after discovery.

 Even under defendants' demanding standard, the SAC alleges sufficient facts. For Commissioner Chokshi, the SAC alleges he sent communications to decision-makers instructing

them to reject religious accommodation requests based on his interpretation of Catholic doctrine, directly violating the Establishment Clause principle that government may not "lend its power to one or other side in controversies over religious authority or dogma." *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990); SAC ¶¶ 99-101. For Mayor Adams, the SAC alleges he personally maintained discriminatory policies due to hostility toward religious objectors, made public statements demonstrating animus, and was directly aware of but failed to stop the systematic religious discrimination by the Citywide Panel. SAC ¶¶ 42-58. As detailed in the SAC, long after all scientific support for the mandates had evaporated, Adams and Chokshi refused to drop the mandate or allow employees to return without violating their faith. Even as the Mayor and Commissioner were publicly announcing that there was no scientific basis to continue mask mandates or bans on large public gatherings or even the private sector employee mandates, they refused to adjust the municipal and DOE mandates. When asked why, the Mayor admitted it was because they did not want to "reward" those who'd failed to violate their faith as instructed. These allegations, accepted as true, sufficiently plead personal involvement in the discriminatory scheme.

Defendants argue the SAC's characterization of the Chokshi letter is incorrect and that the other allegations are overblown. But defendants essentially ask this Court to resolve factual disputes by weighing evidence and making credibility determinations—exactly what courts cannot do at the motion to amend stage. These disputes about what officials actually said and did, and their intent in saying and doing it, are classic jury questions that defeat futility.[1]

## IV.   Adding Title VII Claims is Not Futile

---

[1] Defendants arguments regarding official capacity claims are irrelevant as the FAC already has official capacity claims, so they are not at issue in this motion to amend.

6

Plaintiffs Defendants' challenge to the Title VII claims fails on multiple grounds. Plaintiffs have several independent bases for timeliness, and any factual disputes must be resolved in plaintiffs' favor at this stage.

**A.  Title VII Claims Relate Back Under Rule 15(c)**

Amendments relate back to the date of filing of the original complaint where they arise out of the same facts and circumstances in the original complaint, making them timely even if the amendment is made after the expiration of the statutory period. *See Breyette v. Amedore*, 205 F.R.D. 416, 419 (N.D.N.Y. 2002). Here, Plaintiffs' original complaint—filed years earlier and then stayed—already challenged the same discriminatory practices that form the basis of their Title VII claims and gave notice by adding state human rights claims. Title VII and New York State Human Rights Law claims are substantially the same and are typically found to be sufficiently intertwined to meet the requirements of the relation back doctrine when complaints are amended after the statutory period to add one missing from the original. *Id*.

**B.  American Pipe Tolling Applies**

Additionally, plaintiffs' Title VII claims benefit from American Pipe tolling. *Under American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), the filing of a class action tolls the applicable statute of limitations for all members of the putative class. Here, the *Tunnell* case (1:25-cv-01781-AMD-MMH) was filed as a proposed class action covering the same claims and class members as this case. Plaintiffs' Title VII claims are therefore tolled during the pendency of Tunnell, providing an independent basis for timeliness.

**C.  Defendants' Timing Argument Fails on the Facts**

Defendants argue Plaintiffs failed to seek amendment within ninety days of right-to-sue letters, but this is factually incorrect. Plaintiffs requested amendment at the December 2024 conference,

well before the *Tunnell* right-to-sue letter expired. Ms. Tunnell, a NYFRL member, timely filed her own complaint in March 2025 only because this case's briefing schedule would have caused her deadline to expire. Moreover, this case was stayed for years pending interlocutory appeal, making December 2024 the first opportunity to request amendment. Equitable tolling would therefore apply. *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984).

### D. The Holowecki Standard Is Satisfied

Finally, defendants argue that the right-to-sue letters fail to provide "some indication that the grievance affects a group of individuals" as required by *Holowecki v. Federal Express Corp.*, 440 F.3d 558, 564 (2d Cir. 2006). The SAC alleges otherwise (¶ 728), and any factual dispute must be resolved in plaintiffs' favor at this stage.

### V. Adjusting the Named Class Representatives and Parties is Not Futile.

Defendants challenge to the new named Plaintiffs should also fail. Plaintiffs filed this action in 2022 before most terminations occurred and now seek to adjust the named representatives to ensure proper class representation.

### A. Kouame's Claims Are Timely

Adjoua Kouame's claims are not time-barred for three independent reasons. First, as a proposed class member, her claims were tolled by this lawsuit's filing. Second, her claims did not accrue in 2021 as defendants allege, but in 2022 when the Citywide Panel's denial became "final and binding." Like successful plaintiff Natasha Solon in this case's interlocutory appeal, Ms. Kouame was promised fresh review under lawful standards but never received a decision in time for her February 2022 deadline. Third, Ms. Kouame's claims continued accruing through 2023 due to defendants' ongoing failures to accommodate and repeated retaliation. SAC ¶¶ 512-39.

### B. Jurado's Claims Are Timely

8

Mildred Jurado's Title VII claims are timely for the same reasons detailed in Section IV—relation back, *American Pipe* tolling from the pending *Tunnell* class action, and equitable tolling. Even if Title VII claims were somehow untimely, defendants concede her other claims are timely, making her addition proper.

### C. Smith's Claims Are Not Barred

Brian Smith's claims are not precluded by res judicata from his prior Article 78 proceeding. Article 78 and plenary federal claims involve different standards of review and do not bar subsequent federal litigation. *Whitfield v. City of New York*, 96 F.4th 504, 528-29 (2d Cir. 2024).

### VI.    The Proposed SAC Complies with Rule 8

Last, the SAC does not violate Rule 8. Defendants' prolixity argument ignores both the complexity of this case and the specific pleading requirements imposed by NYFRL. In *New Yorkers for Religious Liberty, Inc*, 125 F.4th at 333, the Second Circuit held that "[n]one of these plaintiffs can make out a constitutional claim for religious discrimination without first making a more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual." This requires plaintiffs to anticipate and rebut the undue hardship affirmative defense at the pleading stage—an unusual requirement that necessitates detailed factual allegations. To comply with this binding precedent, the SAC includes extensive factual allegations demonstrating that the City's undue hardship determinations were both erroneous and pretextual, including evidence that the City accommodated thousands of similarly situated employees while denying religious objectors, failed to conduct individualized assessments, ignored well-established scientific evidence, failed to advance any of their own data or science, and applied unlawful standards.

Similarly, in NYFRL, the Court also provided guidance for establishing animus, requiring Plaintiffs to either show that the City had a meaningful role in the discrimination that took place

9

in the original process or that the Citywide Panel was impacted by a lack of neutrality. Here, the SAC incorporates substantial evidence discovered during the three-year stay from related litigation that directly supports both of these allegations.

Ultimately, this is also a complex civil rights case involving systematic discrimination across dozens of City agencies, *Monell* liability requiring detailed policy allegations, and class certification requiring comprehensive factual development. Defendants fail to identify which specific allegations are unnecessary or how the SAC violates Rule 8's 'short and plain statement' requirement. The allegations are organized, relevant, and necessary to meet both Rule 8 standards and the heightened requirements imposed by NYFRL.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to file their proposed Second Amended Complaint to ensure full and fair adjudication of their claims on the merits.

Dated: Ithaca, NY
September 26, 2025

/s/ Sujata S. Gibson
Sujata S. Gibson
Gibson Law Firm, PLLC
120 E Buffalo St., Ste. 2
Ithaca, NY 14850
*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Counsel of Record hereby certifies that pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the enclosed memorandum of law contains approximately 2,759 words, which is less than the total words permitted by the rules of the Court. Counsel relies on the word count function of the computer program used to prepare this brief.

Dated: Ithaca, New York
September 26, 2025

/s/ Sujata S. Gibson
Sujata S. Gibson
Gibson Law Firm, PLLC
120 E Buffalo St., Ste. 2
Ithaca, NY 14850
*Counsel for Plaintiffs*