UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORKERS FOR RELIGIOUS LIBERTY, INC., et al.,<br><br>Plaintiffs,<br><br>-versus-<br><br>THE CITY OF NEW YORK, et al.,<br><br>Defendants. | **REPORT AND RECOMMENDATION**<br><br>22-CV-752 (DG) (CHK) |

**CLAY H. KAMINSKY**, United States Magistrate Judge:

This case arises against the backdrop of the COVID-19 pandemic and New York City's efforts to combat the spread of the virus by establishing vaccine requirements for municipal employees (the "Vaccine Mandates" or "Mandates"). Plaintiffs are primarily New York City public sector employees who objected to receiving the COVID-19 vaccine on religious grounds. Plaintiffs sought, but were denied, religious accommodations. They have sued the City of New York (the "City") and officials responsible for promulgating its public health policies, challenging the Vaccine Mandates and the processes by which their requests for religious accommodations were denied.

The initial phase of this litigation, which was filed in February 2022, focused on Plaintiffs' motion for a preliminary injunction, which the Court denied. This action was subsequently stayed while an interlocutory appeal proceeded in the Court of Appeals, which affirmed this Court's decision and provided guidance on the

sufficiency of the pleadings. *See New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. 2025) ("*NYFRL*").

Now before the Court is Plaintiffs' motion to amend their Complaint, ECF No. 147, which the Honorable Diane Gujarati has referred to me. Before the Court had ruled on the motion to amend, Plaintiffs moved to substitute a revised version of their proposed Second Amended Complaint. ECF No. 152. It is this revised version (ECF No. 152-1, the "SAC") that the Court considers herein.

In brief, Plaintiffs allege that the City and individual Defendants discriminated against their exercise of religious freedom by, *inter alia*, instructing officials who reviewed applications for reasonable accommodation from the Mandates to presume that religious objections to the vaccines based on their connection to aborted fetal cells were not sincerely held. They allege that their employers discriminated against them for exercising these beliefs and in so doing infringed on their religious freedoms. They allege that the Mandates themselves, the processes by which they were enforced, and the procedures for seeking accommodation were all impermissibly tainted by animus against personally held religious beliefs and all but a select few organized religious beliefs. They seek to amend their complaint to add new Plaintiffs, new Defendants, and new claims. Defendants oppose all of these amendments, and the reassertion of the original causes of action, as futile. *See* ECF Nos. 148, 153.

For the reasons that follow, I recommend that the Motion to Amend be granted in part and denied in part. Specifically, I recommend that Plaintiffs be denied leave

to include in their complaint facial claims under the Free Exercise Clause; claims under the Establishment Clause; claims against newly proposed Defendants; and claims against Defendants Eric Adams and Dave Chokshi in their personal capacities. I recommend that they be granted leave to add Adjoua Kouame, Brian Smith, and Mildred Jurado as Plaintiffs and to include in their Complaint as-applied Free Exercise Clause claims; claims under the Equal Protection Clause, Title VII, the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL"); and claims for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

BACKGROUND

**Factual Background**

From August 2021 through February 2023, departments and agency subdivisions of the City of New York instated the series of vaccine-mandating policies that form the subject of this action. SAC ¶¶ 47–51.[1] The first of these Mandates, including the Mandate issued by the Department of Education (the "DOE"), took effect in September 2021 and did not provide for the possibility of religious or medical accommodation. *Id.* ¶¶ 49, 67. Formal objections from employees of various agencies in the form of lawsuits and labor disputes led the agencies to offer such accommodations almost immediately, and many employees applied for such accommodations and exemptions to the Mandates. *Id.* ¶¶ 68–75.

[1] All well-pleaded allegations in the SAC are assumed to be true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The first requests for accommodation, based on an action initiated by the United Federation of Teachers, were routed to arbitration proceedings, which included the City and DOE as well as the employees represented by UFT and several other labor unions. *Id.* ¶¶ 69–72. However, in setting the standard for how employers were to assess claims of religious accommodation, Arbitrator Martin F. Scheinman, of Scheinman Arbitration and Mediation Services ("SAMS"), issued an opinion containing several facially unconstitutional recommendations. The institution of a clergy approval requirement and the naming of a specific religious organization as an exemplar of a meritorious exemption request are of particular note.[2]

These recommendations, which the SAC refers to as the "Stricken Standards," were indeed quickly challenged in related litigation and struck down. On November 28, 2021, the Second Circuit Court of Appeals determined that, although the DOE Vaccine Mandate itself was "neutral and generally applicable," the accommodation standards applied by arbitrators "likely violated the First Amendment." *Kane v. De Blasio*, 19 F.4th 152, 164, 167 (2d Cir. 2021) ("*Kane I*"); *see* SAC ¶¶ 171–74. The Second Circuit ordered the City to "reconsider the *Kane I* appellants' religious accommodation requests" by constituting a "central citywide panel, which would

[2] "Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists)." Opinion of Arbitrator Martin F. Scheinman Re: Impact Bargaining, ECF No. 147-5, at 9.

adhere to the standards of, *inter alia*, Title VII . . . rather than the challenged criteria set forth in the Arbitration Award." *NYFRL*, 125 F.4th at 324 (cleaned up).

The City responded by creating the City of New York Reasonable Accommodation Appeals Panel (the "Citywide Panel" or "Panel") and tasking it with reviewing the appealed requests for accommodation that had been denied under the Stricken Standards. SAC ¶¶ 175–77. The Citywide Panel was composed of three rotating members, each from a separate City department or agency: one from the Law Department, one from the Department of Citywide Administrative Services, and one from the Commissioner of Human Rights. *Id.* ¶ 258. Employees who had requested and been denied accommodation under the Stricken Standards were directed to submit an appeal to the Panel, where the three sitting panelists would vote on the question of whether an appeal should proceed or be denied, and a simple majority of two panelists would prevail. *Id.* ¶¶ 252–59.[3] Often, but not in every instance, the panelists recorded notes about their reasons for voting as they did in a spreadsheet; many of these notes have been produced during this litigation. *Id.* ¶ 271.

The individual Plaintiffs in this action are current and former City employees from various City agencies, including the Department of Education (Plaintiffs Sabrina Kolenovic and Adjoua Kouame); the Department of Corrections (Plaintiff Gennaro Agovino); the Department of Sanitation (Plaintiff Curtis Cutler); the Department of Investigation (Plaintiff Liz Delgado); the Fire Department ("FDNY,"

[3] Employees were also offered the option to appeal to SAMS. Of the named Plaintiffs, only Sabrina Kolenovic and Adjoua Kouame appear to have opted for this route. SAC ¶¶ 478, 513.

Plaintiffs Brendan Fogarty, Krista O'Dea, Dennis Pillet, and Brian Smith); the Police Department (Plaintiffs Dean Paolillo and Mildred Jurado); the Department of Buildings (Plaintiff Frank Schimenti); and the Department of Parks and Recreation (Plaintiff James Schmitt). *Id.* ¶¶ 9–21.

Plaintiff New Yorkers for Religious Liberty, Inc. is a New York not-for-profit corporation established in February 2022 that, according to its certificate of incorporation, aims "to educate the public and to advocate for religious freedom of all persons, regardless of belief or creed." *Id.* ¶ 8. Its members include "some of the plaintiffs along with many other similarly situated New York City employees and impacted persons." *Id.*

Individually and on behalf of others similarly situated, Plaintiffs allege numerous violations of their religious rights stemming from both the initial denials of their accommodation and exemption requests and both SAMS's and the Panel's denials of their appeals. They allege, *inter alia*, that the City and its agencies "enforced the Stricken Standards policy in a way to maximize the burden on religious applicants," summarily denying applications for accommodations and exemptions without even cursory review. *Id.* ¶¶ 88, 97–98. Plaintiffs point to Mayor Adams' and Mayor Bill de Blasio's statements on their views of the propriety of exemptions to the Mandates as evidence of "animus" and "discriminatory intent." *Id.* ¶¶ 56, 154–61.

Plaintiffs specifically allege that, as part of the appeals process, the Panel was instructed to reject, and in fact systemically rejected, accommodation requests that were based on religious objections to the use of aborted fetal cells in the COVID-19

vaccines as part of an "official policy" of religious discrimination intended to discriminate against all religions except for Christian Scientists and Jehovah's Witnesses. *Id.* ¶¶ 102, 104, 149. This broad allegation centers on a September 21, 2021 letter that Dave Chokshi, then Commissioner of the City's Department of Health and Mental Hygiene, sent to Arbitrator Scheinman (the "Letter" or "Chokshi Letter," ECF No. 149-3). SAC ¶¶ 118–48. Plaintiffs allege that the Letter "instructed decision-makers to deny religious beliefs based on an objection to the vaccines' connection to abortion." SAC ¶ 108. They further allege that the Letter "asserted that religious objection was unwarranted" and "suggested that no one could therefore have sincerely held objections to the vaccines." *Id.* ¶¶ 109, 110. Plaintiffs also rely on a September 20–22, 2021 email chain, obtained in unredacted form through litigation under New York's Freedom of Information Law in the case *Matter of Wagner*, 250 N.Y.S. 3d 182 (2026), on February 2, 2026. In the email chain City officials discussed creating a document to address objections to the Mandates on the grounds that "fetal tissue and/or certain animal products were used in the research, development, and/or actual formula for the COVID-19 vaccines." Motion to Substitute Proposed Second Amended Complaint ("Mot. to Sub."), ECF No. 152, at 2. The Letter and the *Matter of Wagner* emails are incorporated into the Complaint by reference and are therefore before the Court on the instant motion.

**<u>Procedural History</u>**

Plaintiffs NYFRL, Agovino, Cutler, Delgado, Fogarty, Kolenovic, O'Dea, Paolillo, Pillet, Schimenti, and Schmitt commenced this action against the City,

Mayor Eric Adams, Commissioner Chokshi, and New York State Labor Commissioner Roberta Reardon on February 10, 2022. ECF No. 1.[4]

The original Complaint asserted five causes of action by all Plaintiffs against all Defendants: (i) facial and as-applied challenges to the Mandates under the Free Exercise Clause of the First Amendment; (ii) a facial challenge to the Mandates under the Establishment Clause of the First Amendment; (iii) a hybrid rights claim for violation of substantive due process rights under the First and Fourteenth Amendments; (iv) equal protection claims under the Fourteenth Amendment; and (v) a claim for violations of the Supremacy Clause and the various federal statutory provisions governing the processes and protections of clinical trials using human subjects. *Id.* ¶¶ 342–93.

On the same day the original Complaint was filed, Plaintiffs moved this Court for both a temporary restraining order and a preliminary injunction against the Mandates. ECF No. 7. Defendants opposed, ECF No. 33, and Judge Gujarati held a hearing on the issue the next day, February 11, 2022, in which she denied the motion for a temporary restraining order and set a schedule for supplemental briefing on the motion for a preliminary injunction. ECF No. 34. After that briefing had concluded, Judge Gujarati granted Plaintiffs limited discovery on the Citywide Panel's process as it related to the individual Plaintiffs. Soon after, Plaintiffs signaled their intention to file an amended complaint, which they did on June 17, 2022. ECF No. 77.

---

[4] Janine DeMartini, Matthew Rivera, and Laura Satira were also originally listed as Plaintiffs, but they have been removed from the SAC.

The now-operative First Amended Complaint ("FAC") did not change the composition of the parties or the class claims but added several new factual allegations and four new causes of action, for a total of nine, including: (vi) a declaratory judgment claim against New York State Department of Labor Commissioner Roberta Reardon; (vii) a 42 U.S.C. § 1983 claim; (viii) a claim for violations of the NYCHRL; and (ix) a claim for violations of the NYSHRL. FAC ¶¶ 593–665, ECF No. 77. Shortly afterwards, on June 27, 2022, Plaintiffs again moved for a temporary restraining order and preliminary injunction based on the new operative complaint. ECF No. 85. After another round of briefing, Plaintiffs voluntarily dismissed Commissioner Reardon as a Defendant. ECF No. 106. Soon thereafter, on August 11, 2022, Judge Gujarati heard oral argument on the motion for preliminary injunction and denied the motion. ECF No. 107. Plaintiffs immediately appealed that denial by filing an interlocutory appeal with the Second Circuit Court of Appeals, ECF No. 109, and the Court stayed discovery pending resolution of the appeal. 08/19/2022 Order.

The Second Circuit consolidated the appeal in this case with another factually similar case from the Southern District of New York and delivered its ruling on November 13, 2024 (amended January 10, 2025). It rejected facial challenges to the Vaccine Mandate under both the Free Exercise and Establishment Clauses of the First Amendment, for the same reason previously stated in *Kane I*: "the City's Vaccine Mandate, in all its iterations, was neutral, generally applicable, and facially constitutional." *NYFRL*, 125 F.4th at 330 (internal citations omitted). The Second

Circuit nevertheless reversed the dismissal, in the Southern District case, of the as-applied challenges of two plaintiffs who had been denied religious exemptions on the basis that their religious beliefs were deemed to "purely personal" or "too idiosyncratic to be religious in nature." *Id.* at 334–35. It explained: "the Citywide Panel [or other City agency] could deny accommodations if it concluded a claimant was not personally devout in the belief underlying the objection, but it could not deny accommodations because it cast judgment on the nature of the religious objection raised." *Id.* at 332–33. Finally, the Second Circuit affirmed the dismissal, in the Southern District case, of the as-applied challenges of plaintiffs who had been denied accommodations for reasons that did not implicate the nature of their religious beliefs—such as denials on the basis that accommodating them would cause undue hardship to the City, holding that, because the Vaccine Mandate was neutral and generally applicable, "rational basis review applies" and "[n]one of these plaintiffs can make out a constitutional claim for religious discrimination without first making a more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual." *Id.* at 333.

**The Proposed Second Amended Complaint**

Plaintiffs moved to amend their complaint for a second time on September 29, 2025. ECF No. 147. That version of the proposed Second Amended Complaint, which ran 86 pages and over 730 paragraphs, reflected the dismissal of Commissioner Reardon from the case while adding the personal capacities of Mayor Adams and Commissioner Chokshi as Defendants, added Adjoua Kouame, Brian Smith, and

Mildred Jurado as named Plaintiffs, added a cause of action under Title VII of the Civil Rights Act of 1964, and removed the causes of action against Reardon and for hybrid rights. *Id.* Defendants immediately opposed granting leave to amend, principally on futility grounds, criticizing the proposed SAC as "essentially an entirely new complaint" as well as "comprised of nothing more than conclusory allegations of unlawful conduct." Mem. in Opp'n re Mot. to Amend ("2025 Defs.' Opp'n"), ECF No. 148, at 8, 17. Judge Gujarati referred the motion to amend to me on October 28, 2025. 10/28/2025 Order.

On April 23, 2026, before the Court had ruled on their original motion to amend the FAC, Plaintiffs filed the instant motion to amend. *See* Mot. to Sub., ECF No. 152. Plaintiffs allege that this was necessary because "in February 2026 . . . a state appellate court order compelled Defendants to produce a September 2021 email chain . . . [which] is the source of the limited additional allegations in the revised proposed SAC." *Id.* at 1. (referring to *Matter of Wagner*, 246 A.D.3 751 (2d Dep't 2026). The instant proposed SAC runs 95 pages and over 760 paragraphs and seeks to add five new individual Defendants—Nellie Afshar, Steven Banks, Jackie Bray, Jay Varma, and Eric Eichenholtz—and a newly asserted theory of municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

In all, Plaintiffs now allege six causes of action against Defendants:

(i) Free Exercise Clause claims, both facial and as applied, by each Plaintiff against each Defendant;

(ii) Establishment Clause claims by each Plaintiff against each Defendant;

(iii) Equal Protection Clause claims, both facial and as applied, by each Plaintiff against each Defendant;

(iv) Title VII failure to accommodate, discrimination, and retaliation claims, by each Plaintiff against the City;

(v) NYCHRL claims for applying the wrong standard for determining when accommodation was warranted, failing to engage in cooperative dialogue with employees, and retaliation and harassment, by each Plaintiff against each Defendant; and

(vi) NYSHRL claims for applying the wrong standard for determining when accommodation was warranted, failing to engage in cooperative dialogue with employees, and retaliation and harassment, by each Plaintiff against each Defendant.

SAC ¶¶ 723–61. Defendants oppose each of these claims. Response in Opp'n to Mot. to Amend ("2026 Defs.' Opp'n"), ECF No. 153. Specifically, Defendants argue that each claim is futile either because it is time-barred or because it would not survive a motion to dismiss under Rule 12. *Id.*

## LEGAL STANDARD

A decision to grant or deny a motion to amend is within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Federal Rule of Civil Procedure 15(a)(2) instructs that a court considering a motion for leave to amend "should freely give leave when justice so requires." However, "[w]hile leave to amend should be freely granted, the district court has the discretion to deny leave if there was a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015), *as amended* (Dec. 17, 2015) (cleaned up). "Proposed amendments are futile if they would fail to cure prior

deficiencies or to state a claim under Rule 12(b)(6). Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (cleaned up). "Although the Court may decline to engage in a detailed futility analysis where the Court finds that these arguments are better suited for consideration in the context of a motion to dismiss," the Court may also exercise its discretion to conduct such detailed futility analysis. *Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, 809 F. Supp. 3d 33, 61 (E.D.N.Y. 2025), *motion for relief from judgment denied*, No. 23-CV-7052-SJB-LGD, 2026 WL 961337 (E.D.N.Y. Feb. 23, 2026) (internal citation omitted).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Under this plausibility standard, a plaintiff need not plead "detailed factual allegations," but she must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). The Court must accept all well-pleaded allegations as true and draw all inferences in Plaintiffs' favor in determining whether they have stated valid claims. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S.at 570. "However, the Court need not credit legal conclusions

in a claim or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. Moreover, the Court is not bound to accept as true legal conclusion couched as factual allegation." *Turner v. New York Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d 161, 167 (E.D.N.Y. 2015) (internal citations omitted). "If a complaint merely offers labels and conclusions, a formulaic recitation of the elements, or naked assertions devoid of further factual enhancement, it will not survive a motion to dismiss." *Id.* (internal citations omitted).

In addition to the allegations in a complaint, courts may consider relevant documents that are attached to the complaint, are incorporated by reference in the complaint, are integral to the complaint, or involve matters as to which judicial notice can be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 571 n.2 (S.D.N.Y. 2025).

## DISCUSSION

After reviewing all versions of the Complaint, I conclude that Plaintiffs should be granted leave to amend as to many of their proposed claims, but that leave to amend should be denied as to other claims that are untimely or that are not supported by factual allegations that allow the Court to draw the reasonable inference that the Defendant is liable as alleged.

### I. Prolixity

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Second Circuit has explained that "[t]he statement should be short

because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks omitted). A court that finds that a complaint does not comply with Rule 8's "short and plain statement" requirement "has the power . . . to strike any portions that are redundant or immaterial, or to dismiss the complaint." *Id.* (internal citations omitted).

Defendants have argued that the previous iteration of Plaintiffs' Second Amended Complaint, which spanned 737 paragraphs and 87 pages, should be rejected as impermissibly prolix. 2025 Defs.' Opp'n at 8–9 (citing several cases from within the Second Circuit rejecting similar-length pleadings). As the current version of the SAC is even longer than the version Defendants argued was prolix, at 768 paragraphs and 95 pages, attention to this argument is warranted. It is certainly arguable that the several hundred pages of collected Complaints that Plaintiffs have filed in this case have placed an unjustified burden on both the Court and Defendants to find and select the relevant material needles from the proverbial pleadings haystack.

Yet a step as extreme as rejection or dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42. That is not the case here. Although the SAC is repetitive and contains irrelevant and confusing sections, it does not rise to the level of "so confused, ambiguous, vague, or otherwise unintelligible" that it is not possible for the Court or

Defendants to discern its true substance. At least some of the considerable page count is attributable to the number of Plaintiffs bringing claims, the number and complexity of those claims, and the convoluted circumstances that have brought them to court. Even considering that this concern takes on a heightened valence "where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible," *id.*, I conclude that Plaintiffs' request for leave to file the SAC should not be denied for prolixity.

## II. <u>New Parties</u>

For organizational purposes, I consider the issues surrounding the most-recently-added parties—Defendants Afshar, Banks, Bray, Varma, and Eichenholtz; the official capacities of Defendants Adams and Chokshi; and Plaintiffs Kouame, Smith, and Jurado—before moving to the claims themselves. The relation back analysis under Rule 15, the personal capacity analysis for Adams and Chokshi, and the tolling analysis as to Plaintiffs' Title VII claims are all distinct from the legal sufficiency of the claims themselves.

### A. Defendants Afshar, Banks, Bray, Varma, and Eichenholtz

Plaintiffs seek to add five new Defendants—Nellie Afshar, Steven Banks, Jackie Bray, Jay Varma, and Eric Eichenholtz—based on the production of a September 2021 email chain that they claim shows that "Chokshi's letter was concocted by high level City policy makers and intentionally disseminated to advise and assist arbitrators in discriminating against sincerely held religious beliefs, particularly those involving abortion or tainted blood." SAC ¶ 121.

Defendants argue, *inter alia*, that "any claims against the five newly proposed defendants are time-barred and cannot be saved under Fed. R. Civ. P. 15's relation back provision." 2026 Defs.' Opp'n at 4. I agree.

As an initial matter, it is clear from the face of the SAC that Plaintiffs' claims against the new Defendants are time-barred if not subject to relation back. Three years is the longest statute of limitations for any claims pleaded in this case,[5] and therefore Plaintiffs' attempt to add new parties in an April 2026 motion based on conduct that occurred in 2021 and 2022 are untimely unless saved by relating the claims back to the date of an earlier pleading.

The SAC addresses the issue of relation back in two paragraphs, paragraphs 30 and 31. The first of the two, labeled "Notice and Relation Back," states that the "Individually Named Defendants received constructive notice of this action upon its original filing via the Office of the Corporation Counsel [and] knew or should have known that, but for a mistake concerning the identity of the proper parties, this action would have been brought against [them]." SAC ¶ 30. The second, labeled "Defendants are Responsible for the Delayed Identification of Individual Liability," alleges:

---

[5] "The NYSHRL and NYCHRL statutes of limitations are three years." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir. 2007)). "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law. A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (internal citations omitted). "For a Title VII claim arising in New York to be timely, a plaintiff must file the charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly unlawful employment practice." *Baroor v. N.Y.C. Dep't of Educ.,* 362 F. App'x 157, 159 (2d Cir. 2010). For further analysis of the timeliness of Plaintiffs' Title VII claims, *see* **II.C. Plaintiffs Kouame, Smith, and Jurado**, *infra*.

> Moreover, Defendants have improperly concealed documents, including the unredacted emails referenced in Paragraph [6] and knew, or should have known, that the emails would give rise to individual capacity claims for the persons referenced in the emails, and others, like Eric Eichenholtz, who was upon information and belief one of the highest level City attorneys exercising the policy choice to improperly conceal the emails and other factual discovery revealing animus by City actors.

*Id.* ¶ 31.

Rule 15(c)(1)(C) provides that an amendment that seeks to add a new party relates back to the date of the original pleading when "the party to be brought in by amendment . . . (i) received such notice of the action that it will not be prejudiced in defending on the merits; *and* (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added).

Plaintiffs' allegations do not satisfy either conjunct of Rule 15(c)(1)(C). First, the allegation that the newly proposed Defendants had "constructive notice" of this lawsuit is a legal conclusion couched as a factual allegation. Second, the allegation they "knew or should have known" that they would have been sued but for mistakes concerning the identity of the proper parties is wholly conclusory. No true "mistake" is alleged; only a lack of knowledge. When new names are added "not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996); *accord Hogan v. Fischer*, 738 F.3d 509, 517–18 (2d Cir. 2013). Plaintiffs did not name the wrong parties initially and now seek to

name the correct ones; rather, they did not name these proposed Defendants in either of their 2022 pleadings but now wish to bring them into this case. Rule 15(c) does not permit them to do so.

Nor does Plaintiffs' vague allegation that "Defendants" (collectively) have "improperly concealed documents," change the analysis. SAC ¶ 31. This threadbare accusation is not a factual allegation from which the Court could draw the plausible inference that is required: *i.e.*, that each newly proposed Defendant knew or should have down that they would have been named as Defendants but for an error, such that they are not now prejudiced by being required to defend this action more than four years after it was filed. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548–49 (2010).[6]

I therefore recommend that Plaintiffs be denied leave to join Afshar, Banks, Bray, Varma, and Eichenholtz as Defendants.

### B. Personal Capacities of Defendants Adams and Chokshi

Plaintiffs also seek to add the personal capacities of Mayor Adams and Commissioner Chokshi as Defendants as to all claims in the SAC, except the Title VII claims, which cannot be brought against individuals, *see, e.g.*, *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 Fed. App'x. 60, 61–62 (2d Cir. 2016); *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012).

---

[6] Eichenholtz was not even a participant in the email chain at issue. Rather Plaintiffs allege "on information and belief" that he was "one of the highest level City attorneys exercise the policy choice to improperly conceal the emails." SAC ¶ 31.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Rather, a plaintiff must plead that each government-official defendant, "through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Similarly, "[a]n action may not be brought against an individual under the NYSHRL if he is not shown to have . . . any power to do more than carry out personnel decisions made by others." *Burger v. Litton Indus., Inc.*, No. 91-CIV-0918 (WK)(AJP), 1996 WL 421449, at *19 (S.D.N.Y. Apr. 25, 1996), *report and recommendation adopted*, 1996 WL 609421 (S.D.N.Y. Oct. 22, 1996) (quoting *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542 (1984)) (cleaned up). And the NYCHRL allows for liability against individuals only "where an individual defendant actually participates in the conduct giving rise to the plaintiff's discrimination or retaliation claim. Furthermore, as recently clarified by the New York Court of Appeals, a plaintiff must allege that an individual defendant had 'some supervisory role over the victim of their discrimination.'" *De Souza v. New York*, 824 F. Supp. 3d 336, 372 (S.D.N.Y. 2026) (quoting *Russell v. New York University*, 42 N.Y.3d 377, 389–90 (2024)). The SAC fails each of these standards.

The SAC alleges that Adams, in his personal capacity, "acted outside the scope of his lawful authority and/or violated clearly established constitutional rights." SAC ¶ 23. It further alleges that, when asked at a press conference whether he would repeal the Mandates, Adams "admitted the reason was . . . animus to those who

refused to comply." *Id.* ¶ 56. The SAC then quotes the former Mayor at that press conference as saying:

> The overwhelming number of New Yorkers, city employees did the right thing – the overwhelming number. It sends the wrong message to those New Yorkers who stated, even if I was reluctant, I'm going to follow the rules. That is what we are doing. We can't send the wrong message that when we say something, we're going to change and vacillate. That is what was stated people understood, particularly those who took the job with that understanding, we are people who took the job with the understanding and refused to comply. And so the information was clear. People have to follow the rules.

*Id.* Plaintiffs assert in their Reply that this and other statements from Adams not only "demonstrat[ed] animus" but also that Adams "personally maintained discriminatory policies due to hostility towards religious objectors . . . and was directly aware of but failed to stop the systematic religious discrimination by the Citywide Panel." Reply in Support of Mot. to Amend, ("Pls.' Reply"), ECF No. 150.

These are precisely the type of allegations relating to supervisory behavior that the Second Circuit has held do not suffice to state a claim for constitutional violations against supervising officials following *Iqbal*; they also do not show personal involvement sufficient to state NYSHRL or NYCHRL claims against Adams in his personal capacity. Apart from the conclusory statement that Adams personally maintained discriminatory policies, Plaintiffs point only to Adams' "fail[ure] to stop systematic religious discrimination" and statements purportedly evincing animus (which, notably, do not reference religious beliefs at all) but do not "plead any tangible connection between the statements" and the violations alleged. Pls.' Reply at 6; *NYFRL*, 125 F.4th at 331. As discussed in greater detail in **III. Free Exercise**

**Claims**, *infra*, the Second Circuit has repeatedly rejected the argument that "certain government officials' statements purportedly preferring certain faiths [a]re relevant to the neutrality of the Mandate and exemption standards under the First Amendment." *Id.* Plaintiffs must do more than state that certain public officials personally discriminated against religious objectors to the vaccines, particularly by making general public statements: they must plead facts that tie instances of such alleged discrimination to the injuries they claim. They have not done so as to former Mayor Adams.

The SAC also alleges that Commissioner Chokshi "wrote a letter *instructing* the DOE and arbitrators to deny religious objections based on a concern about the use of aborted fetal cell lines" and that in the same letter Chokshi "*instructed* decision-makers to deny religious beliefs based on an objection to the vaccines' connection to abortion." SAC ¶¶ 107–08 (emphases added). Both the SAC and Plaintiffs' Reply repeatedly allege that Chokshi, through this Letter, instructed or directed City officials to discriminate against anyone who objected to the vaccines on religious grounds. *Id.* ¶¶ 107–17; Pls.' Reply at 5–6. Plaintiffs' most recent Motion to Amend further alleges that the *Matter of Wagner* emails "show Commissioner Chokshi personally participating in and approving discriminatory guidance used to adjudicate religious accommodation requests." Mot. to Sub. at 3.

Had Chokshi written a letter instructing City officials to discriminate in this way, he would have committed a direct violation of the Constitution that would allow him to be sued in his personal capacity. But even drawing all reasonable inferences

in favor of Plaintiffs, the Chokshi Letter and the *Matter of Wagner* emails do not establish Chokshi's personal involvement in the constitutional violations alleged.

The Letter, ECF No. 149-3, is dated September 21, 2021, addressed to Arbitrator Scheinman, and a single page in length. It notes at the top of the page that "[s]ome people have expressed concerns about the use of fetal cells in the development and production of the COVID-19 vaccines." *Id.* It then states in bold that "[n]one of the COVID-19 vaccines authorized or approved by the US Food and Drug Administration contain fetal tissue or fetal cells." *Id.* It describes how a fetal cell line was used to grow the adenovirus used in the Johnson & Johnson/Janssen vaccine and how the Pfizer and Moderna vaccines used a fetal cell line in their early research phases to test their safety and efficacy. *Id.* It states that "[n]o fetal cells, fetal tissue, or fetal cell lines are used to produce the Pfizer or Moderna vaccines." *Id.* It mentions that the vaccines contain no animal biproducts, latex, or preservatives. *Id.* It notes that "[a]n array of religious groups have stressed the importance of COVID-19 vaccination to save lives from COVID-19 and have called on all people to get vaccinated," giving the example of the Catholic Church's "clear statement that Roman Catholics can in good faith receive COVID-19 vaccines that use fetal cell lines in development." *Id.* It concludes by exhorting that "[v]accination is the most important thing people can do protect themselves and others from COVID-19" and providing a hyperlink to a webpage with additional information. *Id.*

In short, the Letter lays out Chokshi's official position, as the City Commissioner of the Department of Health and Mental Hygiene, that New Yorkers

should receive one of the COVID-19 vaccines and that religious objections to the vaccines based on their use of fetal cells are either misunderstandings or addressable by avoiding a specific vaccine. Nowhere in the Letter does Chokshi "instruct" decision-makers to deny religious objections or beliefs; the Letter does not instruct, direct, or call on anyone, including its named recipient, to take any specific action at all. Neither the fact that it is addressed to an arbitrator hearing religious accommodation requests nor the fact that it was allegedly sent to other decision-makers hearing those requests render its author personally involved in the downstream constitutional violations Plaintiffs allege. SAC ¶¶ 107, 111–12.

Plaintiffs dispute several of the particular claims Chokshi makes in the Letter, as when they argue that the Catholic Church is not as clearly comfortable about the use of fetal cells in the vaccines as the Commissioner claims and when they allege that Tylenol did not use fetal cell lines for testing pre-licensure. *Id.* ¶¶ 109, 113, 114. But the Letter clearly belies Plaintiffs' allegation that Chokshi "asserted that religious objection was unwarranted" or "suggested that no one could therefore have sincerely held objections to the vaccines," or, more generally, that Chokshi personally executed or directed the harms they allege. *Id.* ¶¶ 109–10.

Plaintiffs also point to the *Matter of Wagner* email chain as evidence of animus and discrimination. In the message that began the chain, Former Deputy Commissioner and General Counsel for the Office of Labor Relations Steven Banks[7]

---

[7] No relation to current Corporation Counsel for the City of New York, Steven Banks.

states that he hopes to produce a document that "essentially makes the argument as to why this is BS . . . I'm looking for basically a point by point analysis of why the potential claims that taking this would violate the rights of someone who religiously opposes abortion . . . is not consistent with the science of the virus." *Matter of Wagner* Email Thread, ECF No. 152-3, at 8. Bray adds in a subsequent email that "this will absolutely be subject to litigation and will go far." *Id.* at 6. Plaintiffs assert that these emails establish that the chain participants, including Commissioner Chokshi, "had direct or personal involvement in the constitutional deprivations Plaintiffs allege" and thus refute Defendants' argument that the SAC fails to plead such personal involvement in the alleged scheme to deny religious accommodations to disfavored groups. Mot. to Sub. at 2–3.

Defendants do not dispute that the Chokshi Letter was a direct result of the discussion on this email thread, characterizing the emails as "pre-decisional discussions" that led to the Letter's promulgation. 2026 Defs.' Opp'n at 3.

Chokshi contributed three messages to the chain. The first, sent at 8:02 p.m. on September 21, 2021, reflects that he had no objection to the content of the Letter as drafted or the fact that it would bear his name ("this looks fine to me and no issues with it coming from me"); asks why a section about pork and animal products had been removed after being discussed; and notes that "fetal" was misspelled as "feral" in a single instance. *Matter of Wagner* Email Thread at 2. The second, sent two minutes later (8:04 p.m. on September 21, 2021) in response to Afshar responding that she would make the revisions Chokshi proposed, reads "Thank you!!" *Id.* at 1.

The final message, sent the next morning, September 22, 2021 at 8:13 a.m., reads "Thanks—looks good." *Id.*

These three messages show that Chokshi was likely aware of the discussions regarding the large number of accommodation requests on grounds related to religious objection to abortion and the use of fetal cells and that he approved of the content of the Letter and consented to have his name attached to it. But even when taken together with the Letter and construed in the light most favorable to Plaintiffs, they do not support the inference that Chokshi "through [his] own individual actions," *Tangreti*, 983 F.3d at 618, violated their rights or "actually participate[d]" in such violations. *De Souza*, 824 F. Supp. 3d at 372. Plaintiffs have not pleaded facts that allow the Court to draw the reasonable inference that Chokshi is personally responsible and liable for the harms that they allege in a way that would allow Plaintiffs to sue the Commissioner in his personal capacity. *Iqbal,* 556 U.S. at 678.

I therefore conclude that all proposed claims against Adams and Chokshi in their personal capacities fail to state a claim and recommend that Plaintiffs be denied leave to amend their complaint to include those capacities as Defendants.

### C. Plaintiffs Kouame, Smith, and Jurado

I recommend that Plaintiffs be given leave to add Adjoua Kouame, Brian Smith, and Mildred Jurado as named Plaintiffs.

Defendants argue that these Plaintiffs' claims are futile because they are time-barred and because Plaintiffs did not satisfy specific statutory prerequisites to

bringing suit under Title VII. *See* 2025 Defs.' Opp'n at 12–13. Plaintiffs respond that tolling under *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) renders the claims of the new Plaintiffs timely and that all members of the proposed class may take advantage of the single filing rule and "piggyback" on Notice of Right to Sue letters received by other class members. Pls.' Reply at 7–8; SAC ¶ 751.

Plaintiffs are correct that the statutes of limitations for all members of the purported class were tolled by the filing of this lawsuit. In *American Pipe*, the Supreme Court ruled that the "policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights . . . are satisfied" when a class action defendant has been notified of the substantive claims being brought against them along with the general number and identities of all potential plaintiffs. 414 U.S. at 554–55 (internal citation omitted). The Supreme Court specifically reasoned that defendants who were provided "the essential information necessary to determine both the subject matter and size of the prospective litigation" are not unfairly prejudiced by needing to defend claims from class members whose claims would have been untimely filed had the class action not tolled the statute of limitations. *Id.* at 555.

Defendants in this case were unquestionably on notice that they were being sued for violating the religious rights of a class of their employees. All potential class members whose claims would otherwise be time-barred thus had their limitations period tolled based on the date this lawsuit was filed. As all three proposed new Plaintiffs were and are members of the purported class, their claims were tolled by the filing of this action and are not barred by the relevant statutes of limitations.

Defendants also point out that a plaintiff bringing claims under Title VII must have either received a Notice of Right to Sue directly from the EEOC or "piggyback" on another individual's Notice of Right to Sue which provides "some indication that the grievance [as reported to the EEOC] affects a group of individuals" that includes them. *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 564 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008); *see also* 42 U.S.C. § 2000e-2(a)(1). They argue that Plaintiffs have failed to satisfy either of these statutory prerequisites because no Plaintiff received a Notice of Right to Sue from the EEOC and because no Plaintiff actually filed suit within the 90-day statutory period. 2025 Defs.' Opp'n at 11.

However, courts in this Circuit have consistently allowed plaintiffs who bring discrimination suits before receiving EEOC Notices of Right to Sue to add Title VII claims after receiving a Notice where the claims all arise out of the same transaction or occurrence. "Where a plaintiff has pleaded non-Title VII claims alongside a Title VII claim, he may file suit on the non-Title VII claims and then amend the complaint to include the Title VII claim after receiving a right-to-sue letter." *Sughrim v. New York*, 503 F. Supp. 3d 68, 95 (S.D.N.Y. 2020) (citing *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 41 (2d Cir. 1992)). They have also held that Title VII claims relate back to the filing of the original complaint and are not untimely if added more than 90 days after the plaintiff has received their Notice of Right to Sue. *See McBeth v. City of New York*, No. 23-CV-10389, 2025 WL 951439, at * 9 (S.D.N.Y. Mar. 28, 2025) (even though the amended complaint which added Title VII claims was filed more than 90 days after plaintiff received his Right to Sue letter, the fact that the original

complaint was filed within 90 days of receipt rendered the Title VII claims timely). Moreover, the Supreme Court has explicitly held that *American Pipe* extends the statutory period following receipt of a Notice of Right to Sue. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353–54 (1983) (plaintiff alleging racial harassment and discrimination, who did not intervene in action where he would have been a member of the alleged class before the district court had denied the motion for class certification, had his claims tolled under *American Pipe* and could sue based on Notice of Right to Sue that had been issued almost two years earlier).

Finally, although piggybacking on another individual's Notice of Right to Sue "is not allowed unless the filed charge provides some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim," *Holowecki*, 440 F.3d at 564, the SAC alleges that the Notices it seeks to piggyback onto provide this indication. SAC ¶ 751. As all factual disputes must be resolved in Plaintiffs' favor at this stage, they have satisfied this prerequisite.

I also take this opportunity to address Defendants' argument, made in their original Opposition, that proposed Plaintiff Brian Smith's claims are barred by *res judicata*. 2025 Defs.' Opp'n at 13. Although Defendants correctly note that Smith's claims were adjudicated and dismissed in New York state court, *see Matter of Smith v. New York City Fire Dep't*, 239 A.D.3d 870 (2025), their argument that his claims are barred fails because that was a proceeding under Article 78 of the New York Civil Practice Law and Rules. As Plaintiffs point out, Article 78 proceedings are subject to

different standards of review from federal claims. And as the Second Circuit recently stated in reversing a finding of claim preclusion against a plaintiff who had brought an Article 78 proceeding in New York state court, "[b]ecause New York law calls for doubts to be resolved against imposing claim preclusion . . . claim preclusion should apply only if it is clear that the state court treated the prior proceeding as one in which plenary relief was available." *Whitfield v. City of New York*, 96 F.4th 504, 529 (2d Cir. 2024). Both the Supreme Court and the Appellate Division took note of the fact that Smith had brought his claims in the form of an Article 78 proceeding. Circuit precedent dictates that Smith's claims are not barred.

I therefore recommend that the Plaintiffs be granted leave to include claims by the proposed new Plaintiffs Kouame, Smith, and Jurado.

## III. <u>Free Exercise Claims</u>

We turn to the claims by each Plaintiff against each Defendant under the Free Exercise Clause of the First Amendment. That constitutional provision "protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 514 (S.D.N.Y. 2023), *aff'd sub nom. Algarin v. New York City Health & Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (quoting *Kane I*, 19 F.4th at 163–64). However, "[t]he protection 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'" *Algarin*, 678 F. Supp. 3d at 514 (quoting *Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 879 (1990)).

Thus, a plaintiff may state a claim under the Free Exercise Clause either by showing that the law they challenge is not neutral—and is therefore subject to strict scrutiny on its face—or by establishing that it has not been generally applied and therefore triggers strict scrutiny as applied to them. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281–284 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) *("We The Patriots I")*. Plaintiffs may demonstrate that a law or policy is not neutral by showing that it "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukimi Babalu Aye, Inc. v. Hilaeh*, 508 U.S. 520, 532 (1993). Plaintiffs may demonstrate that a policy is not generally applicable by showing that either "(1) it forbids religious conduct while permitting 'comparable' religious conduct, or (2) it creates a system of individualized exemptions through which administrators 'will use their discretion to exempt individuals from complying with the law for secular reasons, but not religious reasons." *De Souza*, 824 F. Supp. 3d at 377 (quoting *We The Patriots I*, 17 F.4th at 284–88). A policy provides a "mechanism for individualized exemptions" where it gives "government officials discretion to decide whether a particular individual's reasons for requesting exemption are meritorious." *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev. ("We The Patriots II")*, 76 F.4th 130, 150 (2d Cir. 2023) (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533, (2021)). However, "absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct," the mere existence of an exemption process "is not a mechanism for individualized exemptions and thus

does not trigger strict scrutiny. Thus, where a policy . . . [does] not invite the government to decide which reasons for not complying with the policy are worthy of solicitude, rational basis review applies." *De Souza*, 824 F. Supp. 3d at 377 (quoting *We The Patriots I*, 17 F.4th at 288; *Kane I*, 19 F.4th at 165–66 (cleaned up)).

Plaintiffs argue that the Mandates are neither neutral nor generally applicable and are thus unconstitutional both facially and as applied. SAC ¶ 724.

The Second Circuit has considered several challenges to COVID-19 vaccine mandates. In addition to *Kane I* and *NYFRL*, the Court of Appeals has also considered Free Exercise Clause challenges to the enforcement of COVID-19 Vaccine Mandates in the *We The Patriots* cases: *We The Patriots I*, 17 F.4th 266 (2d Cir. 2021) (healthcare workers under New York emergency rule Section 2.61) and *We The Patriots II*, 76 F.4th 130 (2d Cir. 2023) (Connecticut's repeal of its exemption for religious objectors to vaccine requirements for students and participants in childcare programs). In these cases, the Second Circuit has repeatedly upheld the Mandates as constitutional against facial Free Exercise Clause (and Establishment Clause) attacks. *We The Patriots I*, 17 F.4th at 280–90; *Kane I*, 19 F.4th at 161–67; *We The Patriots II*, 76 F.4th at 147–56; *NYFRL*, 125 F.4th at 330–32. Nonetheless, Plaintiffs allege that the *Matter of Wagner* emails and other evidence not before the Second Circuit in any of these cases render the Mandates tainted by animus against religious objections to the vaccines and thus establish that they are not neutral and subject to strict scrutiny. SAC ¶¶ 107, 149.

### A. Facial Challenge

I conclude that neither the *Matter of Wagner* emails nor the other conduct allegedly not before the Second Circuit in prior cases establishes a sufficient connection to the harms alleged to allow Plaintiffs to maintain a facial challenge to the Mandates.[8]

As discussed *supra*, the email chain between Banks, Bray, Varma, Afshar, and Chokshi discussed the fact that the City's agencies were receiving more religious exemption requests than the policymakers had anticipated, many on the grounds that the vaccines contained or used fetal tissue. Plaintiffs argue that these emails show that the Chokshi Letter "was concocted to lend the Commissioner's weight to negatively resolve whether religious objections were valid—a forbidden government pronouncement on the content of religious doctrine." Mot. to Sub. at 3–4. They further allege that the Letter was "intentionally disseminated to advise and assist arbitrators in discriminating against sincerely held religious beliefs," but they provide no specific allegations of either intentional dissemination for these purposes or arbitrator discrimination on this basis. SAC ¶ 121. Defendants rejoin that the emails are, "[u]ltimately . . . a complete red herring . . . which argues against the

[8] I also conclude that Plaintiffs have not shown that the Citywide Panel process constituted a "mechanism for individualized exemptions" triggering strict scrutiny under *We The Patriots II*, in large part because they have not alleged that secularly motivated conduct was impermissibly favored over religiously motivated conduct. *See De Souza*, 824 F. Supp. 3d at 377. Their allegations that certain religions and religious beliefs were impermissibly favored over others are discussed at **V. Equal Protection Clause, Title VII, New York State Human Rights Law, and New York City Human Rights Law Claims**, *infra*.

misunderstanding that all the available COVID-19 vaccines contained fetal tissue or fetal cells." 2026 Defs.' Opp'n at 3.

I cannot agree that these emails are "a complete red herring." Banks, at the very least, expresses skepticism and arguably hostility towards the concept of religious objections to the COVID-19 vaccines on the basis of their connection to abortion, and some other contributors to the chain demonstrate that they share his skepticism of these objections. But the Second Circuit requires plaintiffs claiming religious animus on the basis of statements by public officials to plead a tangible connection between those statements and the policies they claim are infected with that animus. *Kane I*, 19 F.4th at 165; *NYFRL*, 125 F.4th at 331. And although Plaintiffs insist that these emails constitute "smoking gun evidence" establishing direct evidence of discrimination, Mot. to Sub. at 2, they fail to plead facts tying the language to the harms that they actually allege.

The *Matter of Wagner* emails were exchanged September 20–22, 2021, between the enactment of the Mandates and the Second Circuit's pronouncements in *Kane I* that the Stricken Standards were likely unconstitutional and should be rectified by forming the Citywide Panel. They reflect their contributors' views of requests for accommodation to the Mandates on religious grounds relating to abortion at that particular moment in time. They do not reflect the views of the officials who enacted and enforced the accommodations policies writ large, let alone reveal more broadly held motivations behind either the Mandates themselves or the Citywide Panel appeals process, which would not be contemplated for another several weeks.

Plaintiffs also allege that the City, unbeknownst to the Second Circuit in previous cases, "provided arbitrators and DOE representatives with instructions and articles supporting their official policy to categorically exclude all Catholics, Jews, Buddhists, Seventh Day Adventists and many others." SAC ¶ 149. Specifically, Plaintiffs claim that "DOE representatives and arbitrators also cited these articles for why applicants were being denied accommodation," and that Jewish, Christian, and Muslim applicants were all told they were entirely ineligible for accommodation. *Id.* ¶¶ 150–53. Yet they provide no specific allegations about any article, its contents, or its recipients that would allow this Court to reasonably infer the existence of an official policy to exclude adherents of several major world religions from eligibility for religious accommodations to the Mandates.

The allegations in the proposed SAC simply do not allow the Court to draw the reasonable inference that the Defendants mounted a concerted effort to discriminate. Plaintiffs have not adequately alleged that the COVID-19 Vaccine Mandates and the procedures instituted to provide accommodation from them "discriminate[d] against some or all religious beliefs or regulate[d] or prohibit[ed] conduct because it [wa]s undertaken for religious reasons" and were therefore non-neutral and deserving of strict scrutiny. *Lukimi*, 508 U.S. at 532. They have instead "offered no more than conclusory allegations that the [City or] Citywide Panel was applying unconstitutional standards or was infected with religious animus." *NYFRL*, 125 F.4th at 330.

I therefore conclude that Plaintiffs' facial Free Exercise Clause challenge to the Mandates fails to state a claim and recommend that Plaintiffs be denied leave to reassert this claim in their amended complaint.

**B. As-Applied Challenges**

On the issue of Plaintiffs' as-applied challenges under the Free Exercise Clause, Defendants assert categorically that the SAC "is comprised of nothing more than conclusory allegations of unlawful conduct" and "offers no actual facts that support the causes of action they now seek to bring." 2025 Defs.' Opp'n at 17. I disagree.

The dividing doctrinal line between permissible denial of a religious accommodation request and impermissible discrimination on the basis of religion is whether the official decision-maker based their decision on the contents of the beliefs at issue. The Second Circuit previously explained in this case:

> Whether an applicant has a (1) sincere and (2) religious belief regarding vaccination are questions of fact that are subject to examination when an employment accommodation is sought. However, we do not sit in judgment on the verity of an adherent's religious beliefs. Rather, our task is to determine whether religious beliefs are sincerely held. Importantly, [l]ocal boards and courts . . . are not free to reject beliefs because they consider them incomprehensible.

*NYFRL*, 125 F.4th at 332 (internal citations and quotations omitted). "In other words, the Citywide Panel could deny accommodations if it concluded a claimant was not personally devout in the belief underlying the objection, but it could not deny accommodations because it cast judgment on the nature of the religious objection

raised." *Id.* at 332–33. Because the Court is bound to accept all well-pleaded allegations as true at this stage, Plaintiffs need only to allege that the relevant decision-maker improperly considered the content of their religious objection when denying it to state a claim under the Free Exercise Clause. Those Plaintiffs who had accommodation requests and appeals denied on the basis that accommodating them would present an undue hardship to the City cannot make out a claim of religious discrimination "without first making a more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual." *Id.* at 333.

I conclude that the individual Plaintiffs have pleaded sufficient facts to meet these burdens at this stage. Some had their requests for accommodations denied for reasons directly touching on the contents of their beliefs. Plaintiff Cutler, for instance, submitted a statement referencing specific Bible verses on which he based his objections to the vaccines, but was nonetheless denied because all three Panelists who heard his appeal determined that he did not establish that his objection to vaccines was religious rather than personal. SAC at 57–58, ¶¶ 429–32. Others had their requests denied on the basis that accommodating them would present an undue hardship to their employer, but have pleaded more-than-conclusory allegations that this finding was erroneous or pretextual. Plaintiff O'Dea, for example, was hired to work as a paramedic in New Jersey after being terminated by the FDNY and in that capacity can respond to emergencies in New York City pursuant to a mutual aid agreement. *Id.* ¶¶ 554–55. The facts that her new employer did not find that accommodating her would present an undue hardship and that she is able to do

precisely the same work she performed for the FDNY under a new employer allow the Court to reasonably infer that the finding of undue hardship was erroneous in her case.

I therefore recommend that all Plaintiffs be given leave to include as-applied Free Exercise Clause claims in their amended complaint. If Defendants believe that any individual Plaintiff has failed to plead sufficient facts for this cause of action, they may make those arguments in subsequent motion practice.

## IV. Establishment Clause Claims

"The Establishment Clause prevents the enactment of laws that have the 'purpose' or 'effect' of 'advancing or inhibiting religion.'" *NYFRL*, 125 F.4th at 330 (quoting *Agostini v. Felton,* 521 U.S. 203, 222–23 (1997)). It also prohibits laws from granting a "denominational preference" by preferring one religion over another. *NYFRL*, 125 F.4th at 330; *see also Larson v. Valente*, 456 U.S. 228, 244–46 (1982).

Plaintiffs allege that the Mandates and their implementing religious accommodation policies granted denominational preferences. SAC ¶¶ 730–37. They claim that the City engaged in a campaign to "preference orthodox religious beliefs over unorthodox or personally held beliefs, specifically preferencing Christian Scientists in their written policy as well as in practice," *id.* ¶ 731, before forming a "two-track system" in which certain religious beliefs were favored and others were infringed upon, thereby violating the Establishment Clause again. *Id.* ¶¶ 733–34.

They reference the Chokshi Letter and animus towards minority religions and instructions to apply discriminatory standards. *Id.* ¶¶ 732, 734–35.

These allegations do not distinguish this case from those previous cases in which the Second Circuit has considered this very question. At risk of repetition, the Court of Appeals has repeatedly upheld the Mandates and several related policies as constitutional against facial attacks under both the Free Exercise Clause and the Establishment Clause. *We The Patriots I*, 17 F.4th at 280–90; *Kane I*, 19 F.4th at 161–67; *We The Patriots II*, 76 F.4th at 147–56; *NYFRL*, 125 F.4th at 330–32. Plaintiffs assert that the accommodation scheme at issue here involving the Citywide Panel has not been before the Circuit in some of those cases and that the specifics of its processes distinguish this case from those, but not only *has* it been raised in some of them, it was created by the Circuit's own directive. Plaintiffs further argue that the revelation of the *Matter of Wagner* emails demands that the conclusions of those previous decisions be reconsidered. But, as discussed in **III.A. Facial Challenge**, *supra*, Plaintiffs still fail to plead the "tangible connection between the statements and the Panel's processes" that the Second Circuit found was missing in *NYFRL*. *NYFRL*, 125 F.4th at 331.

At bottom, Plaintiffs still have not presented facts that plausibly allege that the government engaged in an effort to discriminate against religions it disfavored. They have sufficiently alleged that City decision-makers infringed on their rights as individuals, but they have not plausibly alleged that the government personnel who allegedly infringed on their rights did so at the direction of an official or *de facto* policy

or a final policymaker, or that the government expressed and enforced a denominational preference against religious groups that they belong to.

I therefore recommend that Plaintiffs be denied leave to include any Establishment Clause claims in their amended complaint.

## V. <u>Equal Protection Clause, Title VII, New York State Human Rights Law, and New York City Human Rights Law Claims</u>

Plaintiffs also claim that "[t]he religious accommodation policies adopted by the City violate the Equal Protection Clause because they categorically discriminate against most religions, and preference Christian Scientists over those with personally held or idiosyncratic religious views." SAC ¶ 739. They make analogous claims under Title VII, SAC ¶¶ 745–51; the New York State Human Rights Law, SAC ¶¶ 759–61; and the New York City Human Rights Law, SAC ¶¶ 753–57.

Defendants object broadly that the SAC fails to state a claim for "any of the violations Plaintiffs allege." 2025 Defs.' Opp'n at 15–20. They assert that "the proposed SAC is patently deficient" as to these claims and that the SAC "is comprised of nothing more than conclusory allegations of unlawful conduct" that "offers no actual facts that support the causes of action they now seek to bring." *Id.* at 16–17.

As they involve substantially similar standards, I analyze these claims together. In the Second Circuit, "employment discrimination claims brought under the Equal Protection Clause are analyzed using the familiar three-step *McDonnell Douglas* burden shifting test developed for Title VII employment discrimination claims." *Flaherty v. Massapequa Pub. Sch.*, 752 F. Supp. 2d 286, 295–96 (E.D.N.Y.

2010), *aff'd,* 462 Fed. App'x. 38 (2d Cir. 2012) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Courts in this Circuit also treat Title VII and NYSHRL discrimination claims as subject to the same analysis and regularly consider these claims together when both are presented. *Algarin*, 678 F. Supp. 3d at 507 (citing *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (the Second Circuit typically treats Title VII and NYSHRL claims as "analytically identical"); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) (same)). Furthermore, where a plaintiff states a valid claim under Title VII, "the parallel claim brought under New York City law also states a claim, as 'the NYCHRL . . . applies a more lenient standard than Title VII to discrimination . . . claims.'" *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 424 (S.D.N.Y. 2022) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017)).

Under these statutes, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas,* at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (referring to Title VII claims). "Rather, because a temporary presumption of discriminatory motivation is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84 (citing *Littlejohn v. City of New York,* 795 F.3d 297, 306, 311 (2d Cir. 2015) (same)).

Drawing all reasonable inferences in Plaintiffs' favor, I cannot conclude that the individual Plaintiffs' Equal Protection, Title VII, NYSHRL, and NYCHRL claims

are futile. They have given "plausible support to a minimal inference of discriminatory motivation" for substantially the same reasons that they have stated as-applied Free Exercise Clause claims. Defendants advance no reasoned argument to the contrary.

I therefore recommend that Plaintiffs be granted leave to include their Equal Protection, Title VII, NYSHRL, and NYCHRL claims in their amended complaint.

## VI. *Monell* Claims

Finally, Defendants argue that Plaintiffs' newly added theory of *Monell* liability must be rejected because all claims under the theory are time barred and unlikely to survive dismissal under Rule 12(b)(6). 2026 Defs.' Opp'n at 5. Plaintiffs have not had the opportunity to respond to these arguments yet, and Defendants' own briefing on the issue is limited to two paragraphs. I therefore recommend that Plaintiffs be permitted to plead *Monell* liability in their amended complaint in order to allow the parties to address this claim on a motion to dismiss, if any.

## RECOMMENDATIONS

For the foregoing reasons, I recommend that Plaintiff's motions to amend be granted in part and denied in part. My specific recommendations are as follows:

I recommend that Plaintiffs be denied leave to include in their amended complaint any facial claim under the Free Exercise Clause; any claim under the Establishment Clause; any claims against Defendants Banks, Bray, Afshar, Varma,

and Eichenholtz; and any claims against Adams and Chokshi in their personal capacities.

I recommend that all Plaintiffs be granted leave to include in an amended complaint claims against all remaining Defendants under the Equal Protection Clause, Title VII, NYSHRL, and NYCHRL. I also recommend that all Plaintiffs be granted leave to include as-applied Free Exercise Clause claims against the City and Adams and Chokshi in their official capacities.

Finally, to avoid further prolixity, I recommend that Plaintiffs' amended complaint be limited to 15,000 words.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision") (quotation marks omitted).

**SO RECOMMENDED.**

/s/ Clay H. Kaminsky
Clay H. Kaminsky, U.S.M.J.

Dated: Brooklyn, New York
July 31, 2026